## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| The Armenian Assembly of America, Inc., and the Armenian Genocide Museum & Memorial, Inc., <br><br>      Plaintiffs, <br><br><br> v. <br><br> Gerard L. Cafesjian, individually and as Trustee and President of the Armenian Genocide Museum and Memorial, Inc. and President and Director of the Cafesjian Family Foundation, Inc.; John J. Waters, Jr., individually and as Secretary/Treasurer of the Armenian Genocide Museum and Memorial, Inc., President of the TomKat Limited Partnership, and Secretary and Director of the Cafesjian Family Foundation, Inc.; The Cafesjian Family Foundation, Inc; and the TomKat Limited Partnership, <br><br>      Defendants. | Civil File No. 1:08-cv-255 (CKK) <br><br><br><br> **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS, OR IN THE ALTERNATIVE TO TRANSFER** |

## <u>INTRODUCTION</u>

The Armenian Assembly of America, Inc. ("Assembly") yearns to take the money and run. In the face of contracts and charter documents mandating donor involvement in Armenian Genocide Museum & Memorial, Inc. ("AGM&M") planning and development, the Assembly – led by AGM&M trustees Hirair Hovnanian and his sidekick, Van Krikorian – wants to usurp Cafesjian's $17.85 million grant and preclude his participation in the undertaking. Plaintiffs' accusations – replete with misstatements and omissions intended to mislead about the parties' relationship, these disputes, and ongoing settlement negotiations – confirm that this second-filed action cannot proceed. This litigation is admittedly identical to the first-filed Minnesota action;

this lawsuit therefore constitutes a compulsory counterclaim that must be pursued in the context of the first-filed action.    Plaintiffs' allegations alone establish the propriety of personal jurisdiction in Minnesota.  Equitable considerations further support a Minnesota forum.  On top of that, the parties' forum selection agreement specifies a Minnesota venue.

**THE REAL FACTS AND PROCEDURAL HISTORY**

**A.    Cafesjian, the Assembly, and AGM&M**

In the late 1990s, the Assembly approached Cafesjian about developing an institution dedicated to the memory and study of Armenian Genocide.  (Waters Aff. ¶ 17.)  Strapped for cash, the Assembly could not acquire the property upon which to site the project.  Cafesjian saved the day by contributing $3.5 million and loaning an additional $500,000 to purchase the bank building.  (*Id.* ¶ 21.)  Cafesjian also fronted the other $3.5 million so that the transaction could close; he was later reimbursed when Anoush Mathevosian, the project's other significant donor, funded her pledge.  (Supplemental  Borg Aff. Ex. 10 § 2.)

The  terms  of  Cafesjian's  contribution  were  memorialized  in  a  letter  grant  agreement exchanged between CFF and Assembly Chairman Hirair Hovnanian; the loan was evidenced by a  promissory  note.   (Supplemental  Borg  Aff.  Ex.  10;  Carey  Aff.  Ex.  1.)   The  initial  grant agreement guaranteed Cafesjian project input.  (Supplemental Borg Aff. Ex. 10.)  Without that empowerment Cafesjian would not have given one penny.  As plaintiffs are want to emphasize, Cafesjian insists upon exercising control over the fruits of his generosity.  For better or worse, this was the deal, and the Assembly eagerly took it.

The project crept forward after the bank property acquisition.  Unfortunately, momentum was  soon  squandered,  and  the  project  stalled  under  the  Assembly's  stewardship.    That organization lacked the means and was burdened by too much baggage and too many distractions to get the job done.  While the Assembly floundered, Cafesjian acquired the adjacent properties

that were necessary for a proper museum.  As soon as the real estate assemblage was complete Cafesjian announced that the four additional parcels would be donated for the benefit of the AGM&M project.  (*See* Waters Aff. ¶ 22; *see also* Carey Aff. Ex. 6.)  At about the same time the parties recognized the campaign had lost its way as a result of Assembly ineptitude and discord. To emerge from that funk, the parties decided to incorporate an independent entity with the singular purpose of creating and managing the museum and memorial.

The AGM&M concept was discussed at length at the Assembly's 2002 Trustee meeting and the May 2002 AGM&M meeting.  (Supplemental Borg Aff. Exs. 11-12.)  Throughout the remainder of 2002, the parties formulated the mission statement and charter documents that would serve the founder's purposes.  All committed supporters were afforded input into AGM&M's existence and governance.  Those who gave birth to AGM&M wanted to ensure that the new organization did not become burdened by the same problems that hampered Assembly effectiveness.  (*See id.*)

In January 2003, the Assembly acknowledged that the realization of the museum and memorial dream required the creation of an entity separate and distinct from the Assembly. Peter Vosbikian, the Chairman of the Assembly Board of Directors, challenged Cafesjian and Hovnanian to overcome the malaise into which the Assembly had become engulfed:

> The Armenian Assembly of America has reached a point of crisis . . . we have become an organization that lacks clear, decisive direction; and, in the eyes of many, we have lost our punch and drive . . . We must launch the AGM&M.  This initiative has evolved into a quagmire of confusion and uncertainty.  Clearly, the Assembly must spin off the AGM&M in order to assure its funding requirements; and, thereby, its future success . . . The time has come to act!  No more inconclusive meetings . . . no more confusion . . . no more indecision.  We must act now!

(Supplemental Borg Aff. Ex. 13.)  AGM&M was finally incorporated in October 2003.  The suggestion that Cafesjian forced the parties to create AGM&M is belied by Chairman Vosbikian's demand for the new entity to be launched.  (*Id.*)

In conjunction with AGM&M's birth, Cafesjian memorialized the terms of his additional donations.  Consistent with the 2000 grant agreement, Cafesjian's magnanimity was conditioned on his continuous and significant involvement in project planning and development.  (*See* Carey Aff. Ex. 6.)  The Grant Agreement's reversionary clause ensured that Cafesjian would have a say about how his donations were used: the grant property – which includes the bank building – could "only be used as part of the AGM&M," and the project could only be developed pursuant to plans approved by the board of trustees, which necessarily included Cafesjian or his designee. (*Id.* § 3.1.)

This reversionary clause was not included to enable Cafesjian to reap a windfall benefit; instead the prospect of grant rescission ensured that Cafesjian could not be excluded from decisions about the fate of the property.  And the suggestion that the entire gift was a ploy to manipulate a profit while enjoying tax benefit (Pls.' Br. at 7) is ridiculous on its face.  There are much more tax efficient means of investing in real estate.

Besides subjecting the gift to reversionary conditions the Grant Agreement[1] required the $500,000 promissory note – which remained outstanding – be reissued:

> (A)    The Assembly must issue a new promissory note (the "Promissory Note") to replace the promissory note issued on March 17, 2000 by the Assembly in favor of the Foundation in the amount of $500,000.

---

[1]    The Grant Agreement and Transfer Agreement were negotiated and drafted by the parties and counsel for AGM&M.  The Assembly – clearly sophisticated in business dealings – had at least three attorneys on its board at the time AGM&M, Inc. was formed and had every opportunity to seek legal advice.  Besides that, both of the Assembly's designated trustees to AGM&M, Robert Kaloosdian and Van Krikorian, are lawyers.

> (B)    The new note must be interest free and mature on December 31, 2005.
>
> (C)    If the Promissory Note is still outstanding at the time the Transfer Agreement is executed, it must be transferred to AGM&M, Inc. as part of the transfer of the Assembly's assets.

(Carey Aff. Ex. 6 § 5.4.)  With the exception of an extended maturity, the promissory note's terms were to remain the same.  (*Id.*)  Accordingly, the forum selection provision would continue to specify Minnesota.[2]  (*See id.*)  Even if the note was not replaced as required by the Grant Agreement, the original forum selection clause remains in effect.

If the forum agreement were not sufficient to afford jurisdiction, AGM&M's early corporate life provided more than requisite contacts with the Minnesota.  "After the incorporation of the AGM&M and between 2003 and 2006, Cafesjian and Waters, in their capacities as President and Acting Secretary-Treasurer, respectively, took primary responsibility for managing AGM&M."  (Pls.' Br. at 8; *see also* April 18, 2008 Carey Aff. Ex. 2 ¶ 16 ("Between November 1, 2003 and the fall of 2006, the AGM&M was effectively operated, managed, and in fact, controlled by Cafesjian and John J. Waters, Jr.") ("Second Carey Aff.").)  As plaintiffs incessantly complain, AGM&M's day-to-day activities were carried out from CFF's Minneapolis offices.

According to AGM&M's tax returns[3] – which were prepared by a Minneapolis accounting firm[4] – AGM&M's and CFF's telephone numbers were one and the same: 612-359-

---

[2]    The Assembly's 2004 tax return and AGM&M's 2003, 2004 and 2005 tax returns confirm that the note obligation remains outstanding.  (Second Carey Aff. Ex. 4; Supplemental Borg Aff. Ex. 14.)

[3]    The 2003, 2004 and 2005 AGM&M tax returns are attached as Exhibit 4 to the Second Carey Affidavit.  For clarity, defendants refer to a particular page of this exhibit in accord with the ECF page number stamp on the top right corner of the document.

8991.[5]  (*See*, *e.g.*, Second Carey Aff. Ex. 4 at 2, 19 and 37.)  As with where the telephone was answered, the tax returns report that all AGM&M "books are in the care of John Waters Jr." at "15 South Fifth Street, Suite 900, Minneapolis, MN." (*Id.* at 6, 23 and 43.)  The records were in Minnesota because in 2004 and 2005, AGM&M "receive[d] accounting and management services at no charge from GLC Enterprises, a taxable entity with which Gerard Cafesjian, a substantial contributor and board member, is affiliated with." (*Id.* at 34 and 54.)

The IRS submissions also disclose that Waters, who lives and works in Minnesota, devoted 200 annual hours in 2004 and 5 hours per week in 2005 to AGM&M; in contrast the other non-Minnesota principals spent just 40 annual hours in 2004 and one hour per week in 2005 on AGM&M business.  (Second Carey Aff. Ex. 4 at 22, 41.)  Waters' substantial services for AGM&M were performed from CFF's Minneapolis office.  (Waters Aff. ¶¶ 25-36.)

Waters' duties on AGM&M's behalf were significant.  AGM&M invoices and bills were submitted for approval and payment to CFF's Minneapolis office.  (*See id.*)  Communications between project development firms and other contractors were initiated or received by Waters and other CFF personnel in Minnesota.  (*See id.*)  Board meeting schedules, agendas and details were routinely formulated by Waters and others in Minnesota.  (*See id.*)  They also oversaw AGM&M's cash flow and banking activities.  (*See id.*)  Simply put, Cafesjian's generosity enabled AGM&M to function.

Waters' work in Minnesota on AGM&M's behalf was not a matter of convenience for him, as plaintiffs contend.  (Pls.' Br. at 8).  On the contrary, there was no where else and no one

---

[4]    Notably, the AGM&M tax returns submitted by plaintiffs have obscured the name and address of the Minneapolis accounting firm preparer.  (Compare Second Carey Aff. Ex. 4 at 7 and 22 with Supplemental Borg Aff. Exs. 15 and 16.)

[5]    Area code 612 is assigned to Minneapolis, Minnesota.  *See* www.whitepages.com/maps/MN.

else to conduct AGM&M's affairs.  The performance of AGM&M duties in Minnesota was a matter of necessity, not convenience.  (*See* Waters Aff. ¶¶ 25-36.)  Tellingly, none of the other trustees ever objected to Cafesjian's unparalleled support of the organization, and none were unaware that this support was coming from the North Star state.  (*Id.* ¶ 32.)

In 2006, board dissention caused the project to lapse into a hopeless stalemate, as the Assembly's scheme to disenfranchise Cafesjian was hatched.  Cafesjian development proposals were blocked at every turn.  (Waters Aff. ¶ 34.)  The trustees became deadlocked:  if Cafesjian proposed it; Hovnanian and his sycophants were against it.  (*Id.*)  Recognizing that the parties had divergent visions for the museum and memorial – on the one hand a grand development that encompassed all five parcels and on the other a paltry undertaking that would be limited to the bank building – Cafesjian decided to give up his leadership role in hopes of achieving accord.  (Carey Aff. Ex. 18.)  The remaining trustees, reluctant to lose the four adjacent parcels and the primary source of project funds, dissembled about sharing Cafesjian's vision and urged him "to bring the project to fruition in accordance with his concept."  (Carey Aff. Ex. 19.)  Cafesjian agreed to continue board representation, but stepped down as AGM&M chairman.  (Carey Aff. Ex. 21.)

Following an October 2006 board meeting, the parties decided to transfer AGM&M administrative and managerial functions to the Assembly.  In December 2006, AGM&M's materials were forwarded to the Assembly.  For the first time since AGM&M's inception, the corporate records left Minnesota, and AGM&M routine business began to be administered by someone other than Waters or a GLC employee in Minneapolis.

Having gained control over the checkbook, the Assembly's stratagem to ostracize Cafesjian swung into full gear.  The Assembly and Hovnanian plotted to keep Cafesjian's

AGM&M donations while denying him a voice. At the May 7, 2007 board meeting, Assembly factotum Van Krikorian spearheaded the banishment. (Waters Aff. ¶¶ 39-40.) Since this meeting, the project's largest donor – and founding father – has been frozen out. (*Id.* ¶ 41.) The Cafesjian interests have neither been included nor informed about project planning and development – despite a judicial directive that defendants be advised. (*Id.*) This intransigence is the cause of the protracted litigation over AGM&M direction and control. As for Cafesjian's input, it is plaintiffs' way or the highway.

### B.    Procedural History

In April 2007, Cafesjian and CFF first sued to enforce the Grant Agreement. *See Cafesjian v. Armenian Assembly of America, Inc.*, No. 07-2079 (D. Minn.). Neither TomKat nor Waters joined in that action, and AGM&M was not named as a defendant. (*See id.*) The complaint was dismissed without prejudice: based upon an undeveloped record the Court concluded that personal jurisdiction over AGM&M – as it pertained only to CFF and Cafesjian and the finite issue of Grant Agreement rescission – was lacking.[6]  (*See* Borg Aff. Ex. 8.) Notably, the Court opined that neither Cafesjian nor CFF were parties to the Transfer Agreement and perforce could not have been bound its terms, including the arbitration provision. (*Id.* at 13.) Besides that – unlike in this case – the conduct that gave rise to that lawsuit – did not occur in Minnesota. CFF complained about the Assembly's failure to issue the note. No alleged wrongdoing by Waters or his Minnesota colleagues was implicated.

In contrast, plaintiffs' September 2007 arbitration demand challenged the propriety of conduct that could only have occurred in Minnesota. Not having agreed to alternative dispute

---

[6]    The district court rubber-stamped the Report and Recommendation, and the Cafesjian interests have appealed to the Eighth Circuit. *Cafesjian v. Armenian Assembly of America, Inc.*, No. 08-1744. The Assembly has not cross-appealed.

resolution, the Cafesjian interests objected to arbitral jurisdiction.  *See Waters v. AGM&M,* No. 07-4212 (D. Minn.).  In order to preserve jury trial rights, defendants refused to participate in proceedings before the American Arbitration Association ("AAA") and sued to enjoin the arbitration.  Plaintiffs served Waters in Minnesota with the arbitration papers, which would have had the effect of abrogating his Seventh Amendment rights.  (*See id.*)

On January 7, 2008, the parties mediated before Magistrate Judge Kay.  (Thornton Aff. ¶ 2.)  Following this conference <u>plaintiffs</u> asked that all litigation be put on hold until February 6, 2008.  (*Id.* ¶ 4 ("As a sign of mutual good faith, we are suggesting that the pending matters be stayed to permit negotiations on the settlement to proceed without interruption for a reasonable period, until February 6, 2008.").)  During this time, defendants – convinced that a global settlement was possible – agreed to an armistice.  (*Id.* ¶ 5.)  During the ensuing stand-down defendants proffered settlement proposal after settlement proposal; plaintiffs rebuffed each offer insisting that any resolution be their way.[7]  (*Id.* ¶ 3.)  Not only did plaintiffs fail to negotiate, they failed to consider any proposal that did not steal the property and kick Cafesjian out of the organization.

When negotiations broke down, plaintiffs abandoned their arbitration gambit and demanded dismissal of the action seeking to enjoin the arbitration.  (Borg. Aff. Ex. 7.)  At the

---

[7]     Plaintiffs' accusations that defendants failed to negotiate in good faith are belied by plaintiffs' deceptive tactics.  During the March 27, 2008 settlement conference before Magistrate Judge Kay, Assembly representative Van Krikorian snuck out of the ongoing mediation – where the parties were bargaining over the fate of Cafesjian's donation – to appear before the District of Columbia Historical Review Preservation Board.  (Supplemental Borg Aff. Ex. 17.)  That hearing was convened to consider the proposed development of the donated property.  The Assembly <u>never</u> informed the Cafesjian interests that plan approval was being sought.  This conduct defied Judge Roberts' directive that the parties and the court be kept apprised of all project developments.  If Cafesjian had known about the meeting he would have been represented.  Charges of bad faith are unseemly when they come from parties who stoop to operating in secret.

same time plaintiffs refused to acknowledge the absence of an arbitration agreement or commit to foregoing arbitration in the future. (Supplemental Borg Aff. Ex. 18.) With the threat of arbitration still very much alive, defendants were not about to surrender their lawsuit. (*Id.*) Because the plaintiffs' accusations about mismanagement and breach of duties significantly impeded resolution of the disputes over corporate governance and property disposition, defendants brought a declaratory judgment action in Minnesota to determine whether the complained of Minnesota conduct was wrongful. (Borg Aff. Ex. 2.) Two days later, plaintiffs scrambled into this Court with this tardy action.

## ARGUMENT

## I.     PLAINTIFFS' LAWSUIT IS A COMPULSORY COUNTERCLAIM

Plaintiffs defy the mandates of Rule 13(a) and insist that the Court must disregard the Cafesjian interests' choice of forum as well as the first-filed rule. Importantly, plaintiffs do not dispute that their claims are mirror images of the Minnesota Declaratory Action. (Pls.' Br. at 16 n. 5.) Because Rule 13(a) "compel[s] a counterclaim in such instances unless an exception applies," plaintiffs should have asserted their claims in response to defendants' first-filed Minnesota complaint. *Columbia Plaza Corp. v. Security Nat'l Bank*, 525 F.2d 620, 626 (D.C. Cir. 1975) (enjoining second-filed action as compulsory counterclaims to first-filed suit). Dismissal pursuant to Rule 13(a) is warranted.

Perverting Rule 13(a)'s purpose, plaintiffs brand the Minnesota Declaratory Action as a "preemptive strike" deserving of disregard. (Pls.' Br. at 13-16.) The first-filed rule is not a matter of mechanical application, but "[f]or more than three decades the rule in this circuit has been that where two cases between the same parties on the same cause of action are commenced in two different Federal courts, the one which is commenced first is to be allowed to proceed to its conclusion first." *Wash. Metro Area Transit Authority v. Ragonese*, 617 F.2d 828, 830

(D.D.C. 1980) (internal quotations omitted); *see also Speed Prods. Co. v. Tinnerman Prods.*, 171 F.2d 727, 729 (D.C. Cir. 1948). Even if defendants' lawsuit were preemptive, their choice of forum warrants deference unless "equitable concerns so merit." *Lewis v. Nat'l Football League*, 813 F. Supp. 1, 4 (D.D.C. 1992). The first-filed compulsory counterclaim rule must prevail for three reasons.

First, the Minnesota Declaratory Action is not an attempt to preempt anything. The complaint was filed only after plaintiffs made breach of duty charges and then abruptly withdrew their arbitration demand but nevertheless refused to concede that the disputes were not arbitrable. In order to foreclose any subsequent arbitration scam (talk about forum shopping), defendants sought to have their compliance with common law, statutory and contractual obligations vindicated. Defendants' – as plaintiffs in the Minnesota action and as at least one Minnesota resident accused of misfeasance in Minnesota – choice of forum is entitled to considerable weight. *See*, *e.g.*, *Sierra Club v. Van Antwerp*, 523 F. Supp. 2d 5, 11 (D.D.C. 2007) ("Courts ordinarily accord significant deference to a plaintiff's choice of forum.").

Second, defendants have always maintained that Minnesota was the place for these disputes to be sorted out. CFF and Cafesjian first sued in Minnesota in April 2007; when plaintiffs attempted to launch an unjustified arbitration assault on constitutional rights, defendants sought relief from Minnesota courts; and when plaintiffs refused to disavow any obligation to arbitrate, defendants again sought judicial relief in Minnesota. From the outset, defendants have turned to the Minnesota courts based upon the Assembly and AGM&M's substantial and continuous contacts with that forum.

Finally, equitable considerations support deferral to the first-filed action. The convenience of the parties, convenience of the witnesses and the interests of justice favor

Minnesota.  Judge Ericksen has set the parallel Minnesota litigation for hearing on June 27, 2008.  Initial discovery has proceeded in one of the Minnesota cases.  Most of the witnesses are Minnesota residents:  the only people who could have observed Waters' supposed corporate mismanagement, theft of corporate secrets and waste of corporate assets are GLC Minnesota based employees and consultants.

Defendants conducted substantial AGM&M business operations from Minnesota – and plaintiffs' allegations in this suit specifically challenge the propriety of actions and the discharge of duties that could only have occurred in Minnesota.  Plaintiffs' claims arise from and relate to their contacts with Minnesota:  the claims and counterclaims stem from the Assembly's initial solicitation of Cafesjian in Minnesota and defendants' subsequent conduct of activities on behalf of the Assembly and AGM&M in Minnesota.  Plaintiffs' challenge to defendants' Minnesota based conduct distinguishes this case from the rescission lawsuit against the Assembly that was based upon Grant Agreement non-performance in D.C.

## II.    <u>MINNESOTA COURTS HAVE JURISDICTION</u>

Minnesota courts can "acquire" jurisdiction over the parties.  *See* Fed. R. Civ. P. 13(a). Plaintiffs tout Magistrate Judge Graham's decision in *Cafesjian v. Armenian Assembly of America, Inc.* and incorrectly assert that the question of personal jurisdiction is definitively answered by the doctrine of collateral estoppel.  (Pls.' Br. at 16-21.)  Yet, no Court has addressed the specific jurisdictional question presented by these pleadings, and the complaint demonstrates that a Minnesota court has personal jurisdiction over the claims and parties in this litigation.

"The D.C. Circuit has articulated a three-step test to decide whether collateral estoppel bars further litigation of an issue: 1) the same issue now being raised must have been contested by the parties and submitted for judicial determination in the prior case; 2) the issue must have been actually and necessarily determined by a court of competent jurisdiction in that prior case;

and 3) preclusion in the second case must not work a basic unfairness to the party bound by the first determination." *Jewish War Veterans of the United States of America, Inc. v. Gates*, 506 F. Supp. 2d 30, 39 (D.D.C. 2007). Issue preclusion "bars relitigation only by those parties who actually litigated the issue in the prior proceeding." *Alabama Rivers Alliance v. FERC*, 325 F.3d 290, 295 n. 7 (D.C. Cir. 2003). "[T]he concept of collateral estoppel cannot apply when the party against whom the earlier decision is asserted did not have a full and fair opportunity to litigate that issue in the earlier case." *Allen v. McCurry*, 449 U.S. 90, 95 (1980) (internal quotations omitted).

The prior personal jurisdiction decision only applied to CFF and Cafesjian's claims against the Assembly for breach of the Grant Agreement.[8] Waters, TomKat and AGM&M did not join in that litigation.[9] The complaint therefore did not present any facts regarding AGM&M, its contacts with Minnesota or AGM&M and the Assembly's relationship to Waters or TomKat. Neither Waters, a Minnesota resident, nor TomKat, a Minnesota based business, had the opportunity to litigate the jurisdictional issue. *See Alabama Rivers Alliance*, 325 F.3d at 295 n. 7 (one of three petitioners did not participate in prior litigation thereby precluding the application of collateral estoppel); *Jewish War Veterans of the United States of America, Inc.*, 506 F. Supp. at 39 (collateral estoppel not brought to bear because all parties did not participate in prior proceeding).

---

[8]    Magistrate Judge Graham concluded that jurisdiction over the Assembly was proper. (Borg Aff. Ex. 8 at 10.) Plaintiffs have not appealed this decision.

[9]    Although the Magistrate concluded that AGM&M was an indispensable party, the Magistrate noted that this determination was dependent on the relief sought by Cafesjian and CFF – rescission – and not necessarily dependent on the cause of action asserted. (Borg Aff. Ex. 8 at 17.) Thus the Magistrate's R&R does not foreclose a determination that AGM&M can be sued in Minnesota.

This dispute is manifestly distinguishable from the recently dismissed Minnesota action: the dueling complaints involve different acts, different wrongs, different parties, different situses of the complained about actions, and different causes of action – and necessarily, different evidence.  (*See* Compl.)  In this case and in the Minnesota Declaratory Action, the exercise of defendants' trustee, officer and volunteer duties as well as their contractual performance are at issue.  (Pls.' Br. at 22.)  Plaintiffs further charge that defendants engaged in self-dealing, project mismanagement and inadequate fundraising.  (*Id*.)

In the context of these never before averred allegations, the controlling facts and legal principles that emerge are substantially different from the issues joined in the recently dismissed Minnesota action – which only took the Assembly to task for failing to issue a replacement note. Waters and TomKat have not been provided a full and fair opportunity to litigate the question of personal jurisdiction – particularly under the facts upon which the breach of duties claims are based – fundamental unfairness precludes the collateral estoppel application.  *See Alabama Rivers Alliance*, 325 F.2d at 295 n.7.

Importantly, plaintiffs' own allegations establish AGM&M's significant contacts with Minnesota.  Plaintiffs deny that their claims have any connection to Minnesota; but the underlying conduct sought to be redressed could take place nowhere other than Minnesota. Waters, a Minnesota resident, performed his CFF, TomKat and AGM&M duties from CFF's Minneapolis office.  From 2003 through 2006, all AGM&M records were prepared and maintained in Minnesota.  Waters oversaw all AGM&M daily activities – including cash management, accounts payable, and project development.  Waters, in his various capacities on behalf of TomKat, CFF and AGM&M, negotiated the purchase and transfers of the grant properties – almost always from Minneapolis.  Waters and Cafesjian's staff spent more time on

AGM&M affairs than anyone else – including specifically any AGM&M principal or agent residing or working in the District. AGM&M's federal tax returns confirm that Minnesota was the place from which AGM&M's business was conducted. (Second Carey Aff. Ex. 4.)

In the aggregate, these allegations demonstrate that plaintiffs' "conduct and connection with [Minnesota] are such that [they] should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Plaintiffs have undeniably reached "out beyond one state and create[d] continuing relationships and obligations with citizens" of Minnesota and purposefully availed themselves of the privilege of conducting business in Minnesota. *Burger King v. Rudzewicz*, 471 U.S. 462, 473-75 (1985). These contacts are sufficient and continuous enough to allay any due process concerns. The Court need look no further than the complaint to conclude that Minnesota is a proper forum.

## III.    THE FORUM SELECTION CLAUSES MANDATES TRANSFER

Even without Rule 13(a), the forum selection clause in the note that provides the foundation for the parties' relationship designates Minnesota. (Carey Aff. Ex. 1.) Forum selection clauses are presumptively valid and should be honored so as to give effect to agreements about the venue for dispute resolution. *M/S Bremem v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972). Such provisions are enforced "in all but the most exceptional cases." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 28-29 (2005).[10] The dispositive question is whether the

---

[10] A forum selection clause should be enforced "unless the opposing party demonstrates that (1) formation of the clause was tainted by fraud or overreaching; (2) enforcement would effectively deprive the complaining party of his day in court or deprive him of any remedy; or (3) enforcement would contravene a strong public policy of the forum state." *Marra v. Papandreou*, 59 F. Supp. 2d 65, 70 (D.D.C. 1999). None of these factors bear on this case: there is no allegation of fraud, plaintiffs are fully capable of prosecuting their claims in Minnesota and public policy favors forum selection enforcement. *See id.* at 74-75.

complaint presents claims "arising directly or indirectly from the relationship created by" Cafesjian's promissory note. (Carey Aff. Ex. 1.) The answer must be yes.

The bank building was identified as an ideal site for the AGM&M project, but the Assembly lacked the means to close the deal. Cafesjian came to the rescue by matching Anoush Mathevosian's $3.5 million pledge with a like infusion of cash. The Assembly, still short of the necessary funds, turned to Cafesjian for the rest. The remaining $500,000, exchanged for a promissory note, enabled the Assembly to close the deal. Without the loan, the bank building would have been lost. And the bank property, its ownership and control are at the vortex of this dispute.

After the property was acquired, the parties turned to AGM&M planning. All development proposals and disagreements swirled the bank building, which but for the promissory note would never have been secured. Cafesjian's subsequent four-parcel contribution enhanced the opportunity. These significant contributions came, however, with conditions, including the promise that the Assembly would replace the original note with one maturing on December 31, 2005 and transfer that instrument to AGM&M. All other note terms – including the forum selection clause – remain unchanged. (Carey Aff. Ex. 6 § 5.4.)

In accepting the transfer of the Grant Properties AGM&M committed to be bound by all obligations to Cafesjian and CFF. (Carey Aff. Ex. 5 § 1.2(A).) That assumption necessarily encompasses consent to the jurisdiction of the Minnesota courts. Although the first note matured on May 16, 2000, the associated conditions – including forum selection – never lapsed. (*See* Second Carey Aff. Ex. 4 (recognizing that the promissory note obligation continued).)

Plaintiffs' allegations establish the relationship between the parties and the promissory note:

> Plaintiffs' claims arise from Defendants' duties as trustees, officers
> or volunteers of AGM&M and the Assembly, as well as their
> obligations under the Grant and Transfer Agreements.  For
> example, Plaintiffs allege that Cafesjian and Waters engaged in
> self-dealing, failed to secure a realistic development plan, failed to
> use reasonable efforts to secure funding, failed to address carrying
> costs or obtain tax exemptions for real estate, failed to maintain
> adequate records, [] were responsible for other wrongful acts or
> omissions . . . [and] spent down the assets of AGM&M and
> obstructed the organization's development efforts.

(Pls.' Br. at 22.)  Without the promissory note, there would have been no bank building to develop or real estate to pay taxes on – indeed there would have been no AGM&M.  If the bank building had not been acquired, the adjacent four parcels would not have been assembled and donated for the benefit of the AGM&M.  And the Grant Agreement which reflects the conveyance and is invoked in the pleadings specifically references the note.  In the absence of these transactions, plaintiffs' complaints against defendants could not have arisen.  There would have been nothing for Waters to have mismanaged.  Hence, plaintiffs' claims indisputably "arise indirectly or directly from the relationship created by [the promissory] note."  (Carey Aff. Ex. 1.)

The District of Minnesota gave effect to a similarly broad forum selection provision – even though the parties' dispute did not arise out of the contract specifying venue.  *Knutson v. Rexair, Inc.*, 749 F. Supp. 214, 217 (D. Minn. 1990).  The venue directive applied to "[a]ny cause of action, claim, suit or demand by Plaintiff, allegedly arising from or related to the terms of this agreement or the relationship of the parties."  *Id.* at 215.  The plaintiff brought a state franchise act claim but did not invoke the distributor contract containing the forum selection provision.  *Id.*  Despite this failure the forum agreement broadly applied to all claims based upon the parties' business relationship; as a result the clause's scope encompassed causes of action that were not contractually based as long as they arose from the parties' relationship.  *Id.* at 217.  Like in *Knutson*, the claims in this case arise directly and indirectly from a relationship that was

spawned by the promissory note.[11]    This action must therefore proceed as agreed:    in

Minnesota.[12]

      Fairness and convenience concerns line up exactly with the forum selection agreement.

Plaintiffs never deny that witness convenience favors Minnesota.  (*See* Pls.' Br.)  How could

they:  the complaint challenges the propriety of defendants' conduct – acts and omissions that

could only have been committed in Minnesota, mostly by Minnesota residents.  Certainly

Minnesota has an interest in providing its residents a forum in which to be vindicated.  The

expense of litigation is minimized by engaging where the misfeasance supposedly occurred, the

records were maintained and the finances were managed.  None of the players have a significant

tie to the District: the corporate plaintiffs are incorporated under D.C. law; none of the principals,

however, can be found in D.C.

---

[11]    By committing to comply with Grant Agreement obligations – including the promissory note issuance and abidance – AGM&M became sufficiently immersed in the underlying relationship to be bound by the note forum selection clause. *Kotan v. Pizza Outlet, Inc.*, 400 F. Supp. 2d 44, 46-49 (D.D.C. 2005).

[12]    Plaintiffs insist that their claims do not require a direct interpretation of the promissory note, and for that reason the forum selection clause is said to be inapplicable. (Pls.' Br. at 23-24.)  The cited cases, however, do not support the argument.  The forum selection clauses in *Navajo Nation v. Peabody Holding Co., Inc.*, 209 F. Supp. 2d 269 (D.D.C. 2002) (assessing the scope of an arbitration provision) and *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. United Trans. Union Ins. Ass'n*, No. Civ. A H-05-4159, 2006 WL 456267 (S.D. Tex. Feb. 23, 2006) (forum selection clause applied to all claims "in respect of" the agreement) did not involve language as broad as the note in this case.  The forum designation was restricted to the agreement as opposed to the relationship engendered by the agreement.  The *Farmland Industries, Inc. v. Frazier-Parrott Commodities, Inc.* court concluded that Missouri public policy prohibited forum selection enforcement.  806 F.2d 848 (8th Cir. 1986).  Finally, the issue in *Smith v. Lucent Technologies* concerned whether the forum selection clause extended to tort claims as well as contractual causes of action.  *See* No. Civ. A. 02-0481, 2004 WL 515769 (E.D. La. Mar. 16, 2004).  None of plaintiffs' precedents bear on this case.

This dispute undeniably arises "directly or indirectly from the relationship" created by the promissory note. Under such circumstance, the Court should enforce the forum choice that the parties made when they signed the note.

## IV.    A STAY IS APPROPRIATE

Plaintiffs finally complain that a stay would prejudicially postpone resolution of this dispute. (Pls.' Br. at 26.) This Court – the second venue in which this dispute has been aired – should defer any ruling until pending Minnesota motions have been decided. *See Republic Precious Metals, Inc. v. Republic Precious Metals, Corp.*, 575 F. Supp. 1256, 1259 (D. Minn. 1984). A hearing is set in the Minnesota Declaratory Action for June 27, 2008; as the later-filed forum this Court should allow the Minnesota action to proceed without the risk of duplicitous litigation and inconsistent results. Accordingly, as an alternative to dismissal, the Court should stand down until the Minnesota court decides.

## CONCLUSION

Rule 13(a) requires that compulsory counterclaims be joined in the first-filed action. These claims belong where the litigation over defendants' supposed breach of duties began: Minnesota can acquire jurisdiction over all parties; and the gravamen of the complaint is the propriety of defendants' Minnesota conduct.  If that were not enough, the forum selection agreement calls for a Minnesota forum to resolve disputes arising out of the relationship born of the transactions enabled by the promissory note.

Dated: April 25, 2008

**BRIGGS AND MORGAN, P.A.**

By:    /s/ Molly M. Borg
       Timothy R. Thornton (Minn. #109630)
       Molly M. Borg (Minn. #0331922)
       2200 IDS Center
       80 South Eighth Street
       Minneapolis, MN 55402-2157
       (612) 977-8400

**AND**

**HOGAN AND HARSTON LLP**

By:    /s/ Peter C. Lallas
       Ty Cobb (DC Bar No. 270736)
       Peter C. Lallas (D.C. Bar No. 384062)
       555 Thirteenth Street, N.W.
       Washington, D.C. 20004-1109
       Tel:  (202) 637-5600

**COUNSEL FOR DEFENDANTS**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| The Armenian Assembly of America, Inc., and the Armenian Genocide Museum & Memorial, Inc.,<br><br>        Plaintiffs,<br><br>v.<br><br>Gerard L. Cafesjian, individually and as Trustee and President of the Armenian Genocide Museum and Memorial, Inc. and President and Director of the Cafesjian Family Foundation, Inc.; John J. Waters, Jr., individually and as Secretary/Treasurer of the Armenian Genocide Museum and Memorial, Inc., President of the TomKat Limited Partnership, and Secretary and Director of the Cafesjian Family Foundation, Inc.; The Cafesjian Family Foundation, Inc; and the TomKat Limited Partnership,<br><br>        Defendants. | Civil File No. 1:08-cv-255 (CKK)<br><br><br><br>**AFFIDAVIT OF**<br>**TIMOTHY R. THORNTON** |

COUNTY OF HENNEPIN )
                                          ) ss
STATE OF MINNESOTA    )

        Timothy R. Thornton, under oath state as follows:

        1.        I am admitted *pro hac vice* and make this affidavit in support of defendants' Motion to Dismiss, or in the Alternative to Transfer.

        2.        The parties have participated in settlement negotiations with Magistrate Judge Kay on three occasions:  January 7, 2008; February 25, 2008; and March 27, 2008.  *See* Minute Entries dated 1/10/08, 2/29/08 and 4/09/08 in *AGM&M v. Cafesjian Family Foundation et al.*, No. 07-1259 (CKK) (D.D.C.).  Each time defendants have come prepared to make a deal.

3.     Plaintiffs have accused defendants of unduly delaying litigation by participating in settlement negotiations in bad faith.  (Pls.' Br. at 2, 11.)  Yet defendants have made multiple proposals, most of which have not even been acknowledged by plaintiffs.

4.     On January 9, 2008, plaintiffs' counsel, Arnold Rosenfeld, wrote to me requesting a halt to the current proceedings.  Rosenfeld's letter stated "As a sign of mutual good faith, we are suggesting that the pending matters be stayed to permit negotiations on the settlement to proceed without interruption for a reasonable period, until February 6, 2008."  Because this letter contains confidential settlement communications, it is not attached as an exhibit.

5.     As a result, all litigation was stayed pursuant to the parties' agreement.  *See* Clerk Doc. Nos. 58-59 in *Cafesjian v. Armenian Assembly of America, Inc.*, No. 07-2079 (D. Minn.); Clerk Doc. Nos. 39-40 in *Waters v. AGM&M, Inc.*, No. 07-4212 (D. Minn.).

*s/ Timothy R. Thornton*
Timothy R. Thornton

Subscribed and sworn to before me
this 24th day of April, 2008.

*s/ Paula M. Volk*
Notary Public
My Commission Expires: January 31, 2010

2169029v1

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| The Armenian Assembly of America, Inc., and the Armenian Genocide Museum & Memorial, Inc., | Civil File No. 1:08-cv-255 (CKK) |
| Plaintiffs, | |
| v. | **SUPPLEMENTAL AFFIDAVIT OF MOLLY M. BORG** |
| Gerard L. Cafesjian, individually and as Trustee and President of the Armenian Genocide Museum and Memorial, Inc. and President and Director of the Cafesjian Family Foundation, Inc.; John J. Waters, Jr., individually and as Secretary/Treasurer of the Armenian Genocide Museum and Memorial, Inc., President of the TomKat Limited Partnership, and Secretary and Director of the Cafesjian Family Foundation, Inc.; The Cafesjian Family Foundation, Inc; and the TomKat Limited Partnership, | |
| Defendants. | |

COUNTY OF HENNEPIN    )
                     ) ss.
STATE OF MINNESOTA    )

I, Molly M. Borg, under oath states as follows:

1.      I am an attorney admitted to practice in the State of Minnesota and in the United States District Court for the District of Minnesota and am admitted *pro hac vice* in this matter.  I am counsel for defendants.

2.      I have personal knowledge of the facts set forth in this affidavit.  The documents attached to this affidavit were either provided to me by defendants and maintained in the

ordinary course of business, personally received, prepared, or filed by me, or are publicly available.

3.      Attached as Exhibit 10 is a photocopy of the documents bates stamped CFF/Waters 00436-00440, the Grant Agreement, which has been produced in *AGM&M v. Cafesjian Family Foundation, Inc.*, No. 07-1259 (D.D.C.) (hereinafter "Quiet Title Action").

4.      Attached as Exhibit 11 is a photocopy of the documents bates stamped CFF/Waters 00963-00965, an AGM&M Proposed Preliminary Agenda, which has been produced in the Quiet Title Action.

5.      Attached as Exhibit 12 is a photocopy of the documents bates stamped CFF/Waters 00990-00992, a Memo of Record, which has been produced in the Quiet Title Action.

6.      Attached as Exhibit 13 is a photocopy of a Memorandum from Peter Vosbikian to Gerry Cafesjian, Hirair Hovnanian and Carolyn Mugar dated January 21, 2003.

7.      Attached as Exhibit 14 is a photocopy of the Armenian Assembly of American's 2004 tax return, which is publicly available at http://204.203.220.33/EINS/521614093/521614093_2004_01C78F25.PDF.

8.      Attached as Exhibit 15 is a photocopy of the AGM&M, Inc.'s 2003 tax return, which is publicly available at http://204.203.220.33/EINS/200344096/200344096_2003_01500fc7.PDF..

9.      Attached as Exhibit 16 is a photocopy of the AGM&M, Inc.'s 2004 tax return, which is publicly available at http://204.203.220.33/EINS/200344096/200344096_2004_01dd6354.PDF.

10.    Attached as Exhibit 17 is a photocopy of the AGM&M, Inc. press release dated March 28, 2008, which is publicly available at http://www.armeniangenocidemuseum.org/HPRB.pdf

11.    Attached as Exhibit 18 is a photocopy of a letter dated February 14, 2008 from me to Naoka Carey.

                                        s/ Molly M. Borg
                                        Molly M. Borg

Subscribed and sworn to me
this 25th day of April, 2008

s/ Barbara J. McNabb
My Commission Expires: January 31, 2010

# THE CAFESJIAN FAMILY FOUNDATION

4001 Tamiami Trail North, Suite 425
Naples, Florida 34103

**JOHN J. WATERS, Jr.**
*Secretary/Treasurer*

February 16, 2000

Mr. Hirair Hovnanian
Armenian Assembly of America, Inc.
122 C. Street NW, Suite 300
Washington, D.C. 20001

Re:    Grant Agreement

Dear Hirair:

Congratulations to the Armenian Assembly of America, Inc. ("Assembly") on concluding the negotiations for the purchase of the National Bank of Washington building ("Property"). The Cafesjian Family Foundation, Inc., ("Foundation") believes that this signature building, located at the heart of our Nation's capital, represents a unique opportunity to consolidate the Foundation's vision for a memorial commemorating the Armenian Genocide, Anoush Mathevosian's vision for an Armenian Genocide museum and the resources of the Assembly and its affiliate, the Armenian National Institute. Inc., ("ANI"), in one central location which will serve as a national center for the Armenian American community. For convenience and clarity, this letter will refer to the entire process of acquiring the Property, renovating and developing the Property to accommodate the uses described below, and establishing a contribution and endowment program to fund such activities and the ongoing operation of the Property as the "Project". This letter will confirm our agreement regarding the nature of the financial support the Foundation will provide to the Assembly in connection with the Project.

1.    Grant.

(a)    The Foundation will make a grant ("Grant") to the Assembly in the aggregate amount of $2,500,000 in accordance with the terms and conditions of this letter. As you know, the Foundation contributed $1,000,000 to the Assembly on February 4, 2000 to fund the Assembly's earnest money deposit for the purchase of the Property. The Foundation will contribute the remaining $1,500,000 of the Grant on or before the closing date for the purchase of the Property (which is currently scheduled for February 16, 2000). We understand that the Assembly has also received a commitment for another $1,000,000 from the Vanguard Charitable Endowment Program - Cafesjian Family Foundation Charitable Fund.

CFF/WATERS 00436

**EXHIBIT 10**

Mr. Hirair Hovnanian
February 16, 2000
Page 2

(b)    The Foundation will also make a contribution to the Assembly, from time to time upon the Assembly's request, as and when needed, in an amount equal to the cost of designing and installing a memorial commemorating the Armenian Genocide to be included in the Project and located in the Property, which is discussed in more detail below.

2.    Loan.    Recognizing the accelerated timing of the acquisition of the Property, the Foundation is also prepared to make a bridge loan ("Loan") to the Assembly in the amount of $4,000,000 to enable the Assembly to close on the purchase of the Property before receiving all necessary pledges. This loan will be due in 90 days, will be non-interest bearing and will be evidenced by a promissory note.

3.    Use of Funds.    The proceeds of the Grant and the Loan will be used solely to fund the acquisition of the Property and the related transaction costs.

4.    Use of the Property and Scope of the Project; Committee.

(a)    We understand that (i) the Property will be used as a memorial and museum for the Armenian Genocide, as office space for the Assembly and the ANI, and for other commercial uses permitted by the applicable zoning and use laws, (ii) design and renovation of the Property shall commence shortly after the closing of its purchase, and (iii) completion of all renovation activities is expected by March 2002.

(b)    The ultimate use of the Property and scope of the Project shall be determined by the Assembly's Memorial and Museum Planning and Development Committee ("Committee"), a new subcommittee of the Board of Trustees of the Assembly ("Board"). The Committee shall be comprised of one representative of each donor who contributes at least $1,000,000 (including the Foundation) with respect to the Project and one representative of each of the Assembly and ANI. All decisions of the Committee shall be made with the unanimous consent of all members of the Committee. The Committee shall be responsible for (i) establishing the vision for the Project and the Property, (ii) preparing and adopting a site redevelopment plan (and material modifications thereto), which shall address the design, development, renovation, potential expansion and initial utilization of the Property, and submitting such plan to the Assembly's Board for approval on or before December 1, 2000 and (iii) adopting and executing a contribution and endowment program to fund the completion of the redevelopment plan and the operation of the memorial and the museum. Recognizing our prior conversations regarding the Foundation's vision, the Committee shall consider including in the Project a labyrinth, a portion of the Cafesjian Collection and a suitable restaurant in any commercial portion of the Property's ground floor. The term of the Committee shall expire on December 31 of the year following the year in which the grand opening of the Property occurs. The Foundation recognizes that all final decisions

CFF/WATERS 00437

Mr. Hirair Hovnanian
February 16, 2000
Page 3

will rest with the Assembly and its participation in the Committee is designed to further the charitable purposes for which the Foundation's funds are being used. In the event the Assembly forms a new, wholly owned subsidiary to operate the museum, the Foundation shall have the right to designate one member to the Board of Directors of the new subsidiary.

     5.    <u>Memorial</u>.

        (a)    The Assembly will make available space acceptable to the Foundation in the Property that is suitable for the memorial. The design of the memorial commemorating the Armenian Genocide has not yet been finalized, pending identification of the final site and an analysis of the site's unique characteristics. At this time, the initial concept consists of a walk-in, contemplative, chapel-like space, with interior walls of native Armenian stone and a glass sculpture by Stanislav Libensky as the focal point. As we have discussed, examples of suitable space in the Property would include a structure to be built on the vacant expansion site south of the building or on the Main Hall level of the building. This space is not expected to be less than 1,200 square feet of floor space or not less than 40,000 cubic feet and shall have the necessary structural support and ready access to adequate external lighting.

        (b)    The Assembly will cooperate with the Foundation's design firm, artist and other representatives to assure the successful completion of the memorial.

        (c)    After installation, (i) the Foundation shall have the right to participate in all material decisions regarding the memorial, (ii) the Assembly shall operate and maintain the memorial in perpetuity in its original condition (ordinary wear and tear excepted) and shall be solely responsible for all operating and maintenance costs, (iii) the Assembly shall not make any alteration to the memorial, the Libensky sculpture or the Property in a way which adversely affects the memorial or the sculpture without the Foundation's prior written approval and (iv) in the event the parties decide to alter the memorial in a way that diminishes or eliminates the role the Libensky sculpture plays in the memorial, the legal rights to the sculpture shall be assigned, at no consideration, to the Foundation and the Foundation shall have the right, at its expense, to remove the sculpture.

     6.    <u>Conditions</u>. The Foundation's obligation to make the Grant and the Loan are subject to the following conditions:

        (a)    The Assembly shall have received firm pledges for the Project, for which at least $7,000,000 is available for the acquisition of the Property (including the Grant and the $1,000,000 Vanguard contribution referred to above), evidenced by documentation in form reasonably acceptable to the Foundation. Any pledge that can only be used for the renovation of the Property or the operation or endowment for the museum shall not be considered for purposes of satisfying this condition.

CFF/WATERS 00438

Mr. Hirair Hovnanian
February 16, 2000
Page 4

(b)    The memorial shall be named the "Gerard L. Cafesjian Memorial" or such other name acceptable to the Foundation. The Foundation shall have the right to participate in any other lead donor naming rights established by the Assembly in connection with the Project.

(c)    The Assembly shall be a tax-exempt organization described in Section 501(c)(3) of the Internal Revenue Code of 1986, as amended, and shall not be a private foundation. The Assembly shall deliver to the Foundation a copy of its IRS determination letter and such other documentation reasonably requested by the Foundation including, without limitation, evidence that the Grant and the other contributions expected in connection with the Project (including those described in paragraph 5(a) above) shall cause not it to be treated as a private foundation.

(d)    The Assembly shall provide the Foundation with evidence, reasonably satisfactory to the Foundation, that the Assembly is in the process of satisfying the terms and conditions of this letter.

7.    <u>Representations</u>.    The Assembly represents and warrants to the Foundation as follows:

(a)    The acquisition, renovation and utilization of the Property will be solely in furtherance of the Assembly's stated charitable purposes.

(b)    The Assembly's status as an organization described in Section 501(c)(3) of the Internal Revenue Code and an organization which is not a private foundation is in full force and effect and there is no IRS reexamination of such status pending or, to the Assembly's knowledge, threatened.

8.    <u>Ongoing Covenants</u>.

(a)    The Assembly shall make available suitable space in the Property for the memorial, as discussed above.

(b)    Until completion of the Project and operation of the completed facility for 12 months, the Assembly will provide written reports to the Foundation at least quarterly. Such reports shall include details on (i) the amount and nature of the expenditures made from the Grant and the Loan and (ii) the progress made in acquiring, designing, renovating, and utilizing the Property and completing the Project. In such reports, an officer of the Assembly shall certify the Assembly's compliance with the terms and conditions of the Grant and the Loan. The Assembly shall maintain complete records of receipts and expenditures relating to the Project and the acquisition, design and renovation of the Property for at least four years

CFF/WATERS 00439

Mr. Hirair Hovnanian
February 16, 2000
Page 5

after the Grant and the Loan have been expended by the Assembly, and such records shall be available to the Foundation and its representatives for inspection and copying at all reasonable times.

    9.    Miscellaneous.  In the event the purchase of the Property has not been consummated by March 15, 2000, this letter agreement shall be void and of no further obligation to any party; provided, however, that the Assembly shall return all proceeds of the Grant and the Loan that have not been used to fund expenses incurred in connection with the acquisition of the Property to the Foundation on or before March 20, 2000.

    If the foregoing accurately sets forth our agreement regarding the above-described matters, please execute this letter in the space provided below.

    We are thrilled with the prospect of this project and look forward to working with you, members of the Assembly's staff and the other donors toward its completion.

THE CAFESJIAN FAMILY FOUNDATION, INC.

John J. Waters, Jr.

Acknowledged and agreed this ___ day of March, 2000:

ARMENIAN ASSEMBLY OF AMERICA, INC.

    By: _____

    Its: _____

CFF/WATERS 00440

# ARMENIAN GENOCIDE MUSEUM AND MEMORIAL

122 C STREET NW • SUITE 360 • WASHINGTON, DC 20001
(202) 423-3434 • FAX: (202) 383-9012

## AGMM Meeting
Naples, FL
May 2 & 3, 2002

### Proposed Preliminary Agenda

| Subject | Enclosure |
|---|---|
| -Analysis of and Closure on AGMM Resolved/Announced Issues at the 2002 AAA Trustees Meeting | 1 |
| -Draft AGMM By-Laws | 2 |
| -Draft AGMM Tables of Organization, with Pre-Occupancy Committee Mandates | 8 |
| -AGMM Board of Trustee Prospect List | 3 |
| -Revised Budget and Project Plans, 2002 | 4 |
| -Estimated AGMM Project Costs | 5 |
| -Concord Partners Proposal for Selection of Architectural and Exhibit Design Firms | 6 |
| -Status of Resolved/Unresolved Issues | 7 |

### Notes on the Proposed Preliminary Agenda

1- Analysis of and Closure on AGMM Resolved/Announced Issues at the 2002 AAA Trustees Meeting:

   -Consequences for the AGMM by making it an independent entity as announced
   -Consequences for the Assembly by severing its subsidiary control of AGMM as announced
   -Consequences for the Assembly by severing its subsidiary control of ANI as announced

CFF/WATERS 00963

**EXHIBIT 11**

-Consequences for ANI by serving as the academic/research/educational arm of the AGMM as contemplated, or, consequences of the AGMM serving as a subsidiary of ANI as an alternative

2- Draft AGMM By-Laws:

-As drafted, document assumes a large, self-generating Board of Trustees composed of community leaders, other Armenian notables and non-Armenian notables. Formal institutional representation is **not** proposed. Even if these approaches are acceptable, the prospect list requires careful review – inevitably assume that there omissions of important Armenian and non-Armenian prospects (for example Benon Sevan, a Greek, an Assyrian, etc.)

-Other issues that should be reviewed are the purpose, amendment and dissolution clauses.

-Also note that the by-laws leaves to the governing members the responsibility for resolving staggered terms and the election of officers.

3- Draft AGMM Tables of Organization & Pre-Occupancy Mandates:

-While the Table of Organization is straightforward, the committee mandates contain a good deal of delegated powers and mandated interdependence among the main and supporting committees. This should be reviewed carefully to insure that there is consensus.

4- AGMM Board of Trustee Prospect List

-The list is presented in ballot form. Should agreement be reached on the 1st and 2nd agenda items, time needs to be invested in reaching a consensus on the initial list of desired Trustees. If this is not done in Naples, recruitment cannot commence.

5- Revised Budget and Project Plans, 2002:

-This document must be reviewed in detail in Naples. We are beginning the 5th month of the 2002 budget year without an approved budget.

-Without an approved budget, AGMM cannot competitively hire the architectural & exhibit design firms, fund the post-hiring site study, pay the CFF loan, and hire my replacement (these are only the major items – see point below).

-Against the total estimated expenses of $1.3 million, AGMM has only $200,000 from H. Hovnanian.

CFF/WATERS 00964

6- Estimated AGMM Project Costs:

-As the project footprint has expanded so has the estimate to renovate the bank building, clear the adjacent properties, build new space on the cleared site, design/install the museum and memorial, and endow operations & core programs. The new public number is $75 million. Gerry has talked about $100 million. We will not have more reliable site specific numbers until we hire the trades and they complete the site study typical of any large scale museum initiative.

-Please note the assumptions about and exclusions from the document submitted. Inevitably, costs will increase as assumptions are clarified and the excluded costs are calculated. Continuing to assume that the operating/core program budget will be approximately $4 million annually and ideally will be endowed, Gerry's $100 million could be realistic.

7- Concord Partners Proposal: Per our request, this is the 3rd formal proposal from Concord. The attached proposes to represent the AGMM in the trade selection process, which cannot begin without your authorization. In addition to your authorization, you need to (a) accept that the to be formed AGMM Board of Trustees will decide who ultimately selects the trades, or, (b) identify and delegate the same powers to others prior to launching the AGMM as an independent entity.

8- Status of Resolved/Unresolved Issues: Additional, major unresolved issues include:

-for the Assembly: Formal concurrence on all or portions of the above questions; identification of and concurrence on conditions desired for gifting the bank building and vacant lot to the AGMM (assumes it is an independent entity); creation of gifting document with conditions.

-for the CFF: Creation of gifting document to the AGMM with conditions for the three properties adjacent to the vacant lot; completion and presentation of a side letter to the AAA on issues not relevant to the AGMM.

-for both AAA and CFF: timing for recruitment of AGMM Board of Trustees prospects and convening of 1st meeting; identification of search/selection committee for Museum Director; funds to complete adopted 2002 expenses; decision on any other naming rights options prior to forming AGMM entity and board (my primary concern is for Carolyn and Hirair); and, generally, analysis of decisions that can be taken prior to the launch of the AGMM Board of Trustees without adverse consequences (this has been an ongoing concern of Hirair's).

CFF/WATERS 00965

MAY-09-2002  14:46      ARMENIAN NATIONAL INST           202 383 9012   P.02/04

*Hirair: Your changes in bold – items 2, 3, 4, 5 + 7*
*Original of Washington Post article*
*mailed today*
*Ross*

## REVISED DRAFT

MEMO OF RECORD
RE:       AGMM Meeting among G. Cafesjian, H. Hovnanian, A Kaloosdian, R.
          Vartian and J. Waters on 5/2/02
DATE:     5/9/02
BY:       R. Vartian

The above individuals met in Naples, Florida on 5/2/02 to review the status of the
AGMM initiative and to assess the consequences of AGMM plans as announced at the
AAA's 2002 Trustees meeting.

A seven point preliminary agenda was presented by R. Vartian (see attached).  The
attendees allocated most of the day long meeting to:

1- Analysis of and closure on AGMM decisions as announced at the AAA Trustees'
2002 Annual Meeting.

2- AGMM Board of Trustees prospect list.

3- Selection of an architect.

4- AAA and CFF gifting conditions.

5- Project plans for 2002

Throughout the meeting, the attendees assessed the positive and negative consequences -
from AAA, ANI, CFF and community perspectives - of affirming the prior overall
decision to re-launch the AGMM as an independent entity.

Some of the following conclusions require confirmation by AAA and ANI governing
bodies.  H. Hovnanian accepted the responsibility for the AAA and A. Kaloosdian for
ANI.

1- The AGMM will become an independent entity with its own 501 c 3 status as soon as
it is possible to do so responsibly and sustainably.

2- Ending its subsidiary relationship with the AAA, ANI will become an integral and
prominent component of the independent AGMM entity, preserving its current
management structure, aims & purposes, collections and endowed funds. **Once
integrated, ANI's core budget would become part of the overall AGMM budget.**

3- CFF will memorialize its gifting conditions to the AGMM **via the AAA** for the three
properties adjacent to the vacant lot.

CFF/WATERS 00990

**EXHIBIT 12**

4- AAA will memorialize its gifting conditions to the AGMM for the bank building, the adjacent vacant lot and **any funds & pledges made to the AAA for the AGMM.**

5- G. Cafesjian agreed to channel **his current and** any further contributions to the AGMM via the AAA.

6- H. Hovnanian agreed to channel his contemplated contribution to the AGMM via the AAA.

7- Other potential, major Assembly donors will be **given the opportunity** to also channel their AGMM contributions via the AAA.

8- The architectural search process will consist of a request for qualifications announcement to a select number of firms – combined with a public announcement to the community – and followed by one or more rounds of design competition. A not to exceed budget of $200,000 was established for this effort.

9- CFF will present a "side letter" to the AAA on select issues not directly relevant to the re-launch of the AGMM as an independent entity and to the gift of CFF properties to the AGMM.

10- AAA, ANI and CFF will jointly prepare tentative AGMM by-laws, articles of incorporation and a governance system for review and consideration of the to be formed AGMM Board of Trustees.

11- Individuals from the AAA, ANI and CFF will be represented on the initial list of the AGMM Board of Trustees and its pre-occupancy implementing committees (Executive, Building, Content and Development), as well as on the AGMM's post-occupancy governing board and implementing committees.

12- Initial prospects for the to be formed AGMM Board of Trustees were identified.

13- In anticipation of R. Vartian's 9/26 departure from DC, a museum director staff position will be filled by 8/1/02.

14- With the exception of securing AAA and ANI review of some of the above decisions, R. Vartian and J. Waters were assigned implementation responsibility and authority for the remaining decisions. They were also tasked to deal with agenda subjects not covered during the 5/2/02 Naples meeting.

15- It was generally agreed that all current AGMM implementation elements needed to proceed in a coordinated, but roughly simultaneous manner. Current priorities include:

CFF/WATERS 00991

-review by AAA and ANI governing bodies.
-briefing of A. Mathevosian
-recruitment of key AGMM Board of Trustees prospects.
-selection of architect and exhibit design firms.

Subsequent to the Naples meeting, R. Vartian conferred with J. Waters to clarify some of the above points and to address the AGMM's 2002 cash flow challenge. J. Waters advised that G. Cafesjian had decided to advance funds necessary to complete work scheduled for 2002, recovering the advanced funds from future contributions.

CFF/WATERS 00992

MEMORANDUM
TO:        Gerry Cafesjian
           Hirair Hovnanian
           Carolyn Mugar

FROM:      Peter Vosbikian
RE:        TIME FOR ACTION
DATE:      January 21, 2003


I believe that the Armenian Assembly of America has reached a point of crisis. I further believe that the downward spiral that we are faced with began March of 2000 when we announced our AGM&M initiative. Although the news of this great new project was exhilarating, it resulted in certain decisions that have negatively impacted our organization.

Later in 2000, Ross Vartian left his Executive Director position with the Assembly to assume his new role with the AGM&M. I am a firm believer in transitioning the leadership of an organization at the appropriate time; however, transition planning was totally absent from the process. This has resulted in a "rudderless ship" attempting to navigate in very troubled waters.

Our inability to secure an effective Executive Director over the past three years is an embarrassment and reflects poorly on the leadership of our organization. In my opinion, we have become an organization that lacks clear, decisive direction; and, in the eyes of many, we have lost our punch and drive.

Over the same three-year period, there are several other factors that have compromised our position as the leading Armenian advocacy organization in America. Two of these factors are the TARC fiasco, and our failed attempt to bring the AGM&M to market.

The Armenian Assembly of America is at a crossroads. We can continue on the course of the "rudderless ship"; or we can fix the problem and travel the "straight and strong road" into the future. Assuming we all agree that the first course is not an option, the following are my recommendations:

Bring Ross Vartian back as our Executive Director with the understanding that he will mentor and train our Executive Director of the future. It is my opinion that the person we are seeking as our new Executive Director does not exist; therefore, we need to create this individual. This can be achieved by first selecting the right candidate and then training him/her into the position. I, together with Anthony Barsamian, would make certain that our strategy is clearly communicated to Ross and the "new person." Furthermore, we would make certain that the plan is properly implemented in an effective and timely fashion.

There is no one in our organization better qualified to mentor and train our next Executive Director than Ross Vartian. Over the past ten months, I have had the opportunity to

**EXHIBIT 13**

interface with many of our members. After spending three days with our constituency in Southern California, I can state, without hesitation, that Ross Vartian is admired and respected by our membership. He possesses great historical knowledge of the Assembly. His analytical skills are excellent, together with his understanding of the issues and process of advocacy. Finally, he is a great communicator; and, undeniably, the best spokesperson in our ranks.

Ross' return, at this point in time, will accomplish two very important things…first, he will help steady the ship and get us back on course; and, second, he will spearhead the succession planning process for the Executive Director position.

We must launch the AGM&M. This initiative has evolved into a quagmire of confusion and uncertainty. Clearly, the Assembly must spin off the AGM&M in order to assure its funding requirements; and, thereby, its future success. In addition, ANI belongs with the AGM&M. The Armenian Assembly of America must receive eternal recognition for giving birth to these two great entities; but we must also make the right decisions now to insure they survive and grow into the future.

We must launch our Five Year Plan. On June 20th and 21st of last year, we convened in New York City and created a new Vision and Mission for our organization. If we do not put these words into action, the meeting in June becomes an exercise in futility, instead of a positive turning point in the history of the Assembly. The Five Year Plan that was presented to you on January 8th provides a "road map" for our future. Certainly, this plan needs refinement; but the prerequisite is your support of the plan, both in principal and financially.

The time has come to act! No more inconclusive meetings…no more confusion… no more indecision. We must act now! If you agree with the thoughts that I have outlined in this memo, then I propose that I present them for approval at our Board of Directors Meeting on February 28th in Delray Beach, Florida. Obviously, the spin-off of the AGM&M would need final approval from the Armenian Assembly Board of Trustees. Furthermore, the merging of ANI into the AGM&M would require final approval from the ANI Board of Trustees.

Over the past thirty years, the Armenian Assembly of America has accomplished many great things. The past three years have been difficult, both internally, as I have stated above; and externally, as it relates to global political and economic conditions. I have no personal agenda other than the fact that I want to see our great organization become an even greater element, contributing to the successful evolution of Armenia and Nagorno Karabagh. In order to accomplish this, we must act now! We must bring the three issues stated above to a positive conclusion prior to our Board of Directors Meeting in February. If we can do this, then we will "hit the ground running" on Monday, March 3rd.  Most importantly, we will be running together in one clear direction.

I would appreciate your comments as soon as possible.

| Form **990** | **Return of Organization Exempt From Income Tax** | OMB No. 1545-0047 |
|---|---|---|
| | Under section 501(c), 527, or 4947(a)(1) of the Internal Revenue Code (except black lung benefit trust or private foundation) | **2004** |
| Department of the Treasury Internal Revenue Service | ▶ The organization may have to use a copy of this return to satisfy state reporting requirements. | Open to Public Inspection |

**A** For the 2004 calendar year, or tax year beginning _____ and ending _____

| **B** Check if applicable | Please use IRS label or print or type. See Specific Instructions | **C** Name of organization | | **D** Employer identification number |
|---|---|---|---|---|
| [X] Address change | | ARMENIAN ASSEMBLY OF AMERICA, INC. | | 52-1614093 |
| [ ] Name change | | Number and street (or P.O. box if mail is not delivered to street address) | Room/suite | **E** Telephone number |
| [ ] Initial return | | 1140 19TH STREET, NW | 600 | 202-393-3434 |
| [ ] Final return | | City or town, state or country, and ZIP + 4 | | **F** Accounting method [ ] Cash [X] Accrual |
| [ ] Amended return | | WASHINGTON, DC  20036 | | [ ] Other (specify) ▶ |
| [ ] Application pending | | | | |

● **Section 501(c)(3) organizations and 4947(a)(1) nonexempt charitable trusts must attach a completed Schedule A (Form 990 or 990-EZ).**

**G** Website: ▶ WWW.AAAINC.ORG

**J** Organization type (check only one) ▶ [X] 501(c) ( 3 ) ◄ (insert no.) [ ] 4947(a)(1) or [ ] 527

**K** Check here ▶ [ ] if the organization's gross receipts are normally not more than $25,000. The organization need not file a return with the IRS; but if the organization received a Form 990 Package in the mail, it should file a return without financial data. **Some states require a complete return.**

**H** and **I** are not applicable to section 527 organizations.

**H(a)** Is this a group return for affiliates? [ ] Yes [X] No
**H(b)** If "Yes," enter number of affiliates ▶ _____
**H(c)** Are all affiliates included? **N/A** [ ] Yes [ ] No (If "No," attach a list.)
**H(d)** Is this a separate return filed by an organization covered by a group ruling? [ ] Yes [X] No

**I** Group Exemption Number ▶ _____

**M** Check ▶ [ ] if the organization is not required to attach Sch. B (Form 990, 990-EZ, or 990-PF).

**L** Gross receipts: Add lines 6b, 8b, 9b, and 10b to line 12 ▶ 6,426,171.

### Part I | Revenue, Expenses, and Changes in Net Assets or Fund Balances

| | | | | |
|---|---|---|---|---|
| 1 | Contributions, gifts, grants, and similar amounts received: | | | |
| a | Direct public support | 1a | 4,152,458. | |
| b | Indirect public support | 1b | | |
| c | Government contributions (grants) | 1c | 643,316. | |
| d | **Total** (add lines 1a through 1c) (cash $ 4,795,774. noncash $ _____ ) | | 1d | 4,795,774. |
| 2 | Program service revenue including government fees and contracts (from Part VII, line 93) | | 2 | 27,500. |
| 3 | Membership dues and assessments | | 3 | |
| 4 | Interest on savings and temporary cash investments | | 4 | 1,204. |
| 5 | Dividends and interest from securities | | 5 | 544,289. |
| 6 a | Gross rents | 6a | | |
| b | Less: rental expenses | 6b | | |
| c | Net rental income or (loss) (subtract line 6b from line 6a) | | 6c | |
| 7 | Other investment income (describe ▶ _____ ) | | 7 | |
| 8 a | Gross amount from sales of assets other than inventory | (A) Securities 799,230. | (B) Other | 8a |
| b | Less: cost or other basis and sales expenses | 673,635. | | 8b |
| c | Gain or (loss) (attach schedule) | 125,595. | | 8c |
| d | Net gain or (loss) (combine line 8c, columns (A) and (B)) STMT 2 | | 8d | 125,595. |
| 9 | Special events and activities (attach schedule). If any amount is from gaming, check here ▶ [ ] | | | |
| a | Gross revenue (not including $ 0. of contributions reported on line 1a) | 9a | 207,123. | |
| b | Less: direct expenses other than fundraising expenses | 9b | 207,123. | |
| c | Net income or (loss) from special events (subtract line 9b from line 9a) SEE STATEMENT 3 | | 9c | 0. |
| 10 a | Gross sales of inventory, less returns and allowances | 10a | | |
| b | Less: cost of goods sold | 10b | | |
| c | Gross profit or (loss) from sales of inventory (attach schedule) (subtract line 10b from line 10a) | | 10c | |
| 11 | Other revenue (from Part VII, line 103) | | 11 | 51,051. |
| 12 | **Total revenue** (add lines 1d, 2, 3, 4, 5, 6c, 7, 8d, 9c, 10c, and 11) | | 12 | 5,545,413. |
| 13 | Program services (from line 44, column (B)) | | 13 | 3,489,414. |
| 14 | Management and general (from line 44, column (C)) | | 14 | 898,258. |
| 15 | Fundraising (from line 44, column (D)) | | 15 | 399,548. |
| 16 | Payments to affiliates (attach schedule) | | 16 | |
| 17 | **Total expenses** (add lines 16 and 44, column (A)) | | 17 | 4,787,220. |
| 18 | Excess or (deficit) for the year (subtract line 17 from line 12) | | 18 | 758,193. |
| 19 | Net assets or fund balances at beginning of year (from line 73, column (A)) | | 19 | 24,256,178. |
| 20 | Other changes in net assets or fund balances (attach explanation) SEE STATEMENT 4 | | 20 | -7,305,305. |
| 21 | Net assets or fund balances at end of year (combine lines 18, 19, and 20) | | 21 | 17,709,066. |

*(left margin vertical: SCANNED SEP 0 9 2005)*
*(stamp: RECEIVED AUG ___ 2005 OGDEN, UT)*
*(left side: Revenue / Expenses / Net Assets labels)*

423001 01-13-05    LHA    **For Privacy Act and Paperwork Reduction Act Notice, see the separate instructions.**    Form **990** (2004)

G13        13

1

**EXHIBIT 14**

ARMENIAN ASSEMBLY OF AMERICA, INC.     52-1614093

| **Part II** Statement of Functional Expenses | | (A) Total | (B) Program services | (C) Management and general | (D) Fundraising |
|---|---|---|---|---|---|

All organizations must complete column (A). Columns (B), (C), and (D) are required for section 501(c)(3) and (4) organizations and section 4947(a)(1) nonexempt charitable trusts but optional for others.     Page 2

*Do not include amounts reported on line 6b, 8b, 9b, 10b, or 16 of Part I*

| | | (A) Total | (B) Program services | (C) Management and general | (D) Fundraising |
|---|---|---|---|---|---|
| 22 Grants and allocations (attach schedule) (cash $543,502. noncash $ | 22 | 543,502. | 543,502. | STATEMENT 8 | |
| 23 Specific assistance to individuals (attach schedule) | 23 | | | | |
| 24 Benefits paid to or for members (attach schedule) | 24 | | | | |
| 25 Compensation of officers, directors, etc. | 25 | 125,000. | 73,725. | 45,416. | 5,859. |
| 26 Other salaries and wages | 26 | 1,676,841. | 1,106,167. | 496,889. | 73,785. |
| 27 Pension plan contributions | 27 | | | | |
| 28 Other employee benefits | 28 | 134,207. | 80,019. | 52,026. | 2,162. |
| 29 Payroll taxes | 29 | 105,884. | 69,926. | 31,543. | 4,415. |
| 30 Professional fundraising fees | 30 | | | | |
| 31 Accounting fees | 31 | 25,378. | 13,845. | 11,533. | |
| 32 Legal fees | 32 | 3,588. | 1,725. | 1,863. | |
| 33 Supplies | 33 | 34,154. | 16,398. | 15,932. | 1,824. |
| 34 Telephone | 34 | 83,430. | 41,194. | 39,347. | 2,889. |
| 35 Postage and shipping | 35 | 111,986. | 41,968. | 24,751. | 45,267. |
| 36 Occupancy | 36 | 250,249. | 69,365. | 180,884. | |
| 37 Equipment rental and maintenance | 37 | 33,332. | 29,700. | 3,632. | |
| 38 Printing and publications | 38 | 16,123. | 7,735. | 8,388. | |
| 39 Travel | 39 | 272,252. | 198,846. | 40,573. | 32,833. |
| 40 Conferences, conventions, and meetings | 40 | 46,369. | 6,684. | 35,779. | 3,906. |
| 41 Interest | 41 | | | | |
| 42 Depreciation, depletion, etc. (attach schedule) | 42 | 37,724. | 8,981. | 28,743. | |
| 43 Other expenses not covered above (itemize): | | | | | |
| a | 43a | | | | |
| b | 43b | | | | |
| c | 43c | | | | |
| d | 43d | | | | |
| e SEE STATEMENT 5 | 43e | 1,287,201. | 1,179,634. | -119,041. | 226,608. |
| 44 Total functional expenses (add lines 22 through 43). Organizations completing columns (B)-(D), carry these totals to lines 13-15 | 44 | 4,787,220. | 3,489,414. | 898,258. | 399,548. |

Joint Costs Check ▶ ☐ if you are following SOP 98-2.
Are any joint costs from a combined educational campaign and fundraising solicitation reported in (B) Program services?   ▶ ☐ Yes ☒ No
If "Yes," enter (i) the aggregate amount of these joint costs $ _____ ; (ii) the amount allocated to Program services $ _____ ;
(iii) the amount allocated to Management and general $ _____ ; and (iv) the amount allocated to Fundraising $ _____

| **Part III** Statement of Program Service Accomplishments | |
|---|---|

What is the organization's primary exempt purpose? ▶ SEE STATEMENT 6

All organizations must describe their exempt purpose achievements in a clear and concise manner. State the number of clients served, publications issued, etc. Discuss achievements that are not measurable. (Section 501(c)(3) and (4) organizations and 4947(a)(1) nonexempt charitable trusts must also enter the amount of grants and allocations to others.)

Program Service Expenses (Required for 501(c)(3) and (4) orgs., and 4947(a)(1) trusts, but optional for others.)

**a** ARMENIAN GENOCIDE MUSEUM AND MEMORIAL - THE ASSEMBLY ACQUIRED LAND AND A BUILDING FOR USE AS THE POSSIBLE FUTURE SITE OF THE ARMENIAN GENOCIDE MUSEUM AND MEMORIAL.
(Grants and allocations $ )   258,139.

**b** ARMENIA'S TREE PROJECT- HELPS ADVANCE ARMENIA'S ECONOMIC AND SOCIAL DEVELOPMENT BY WORKING TO FUND RESTORATION, THEREBY PROVIDING FOOD, FUEL, WOOD , ENVIRONMENTAL BENEFITS AND OPPORTUNITIES FOR ECONOMIC GROWTH.   (Grants and allocations $ )   1,445,366.

**c** SEE STATEMENT 7

(Grants and allocations $ )   643,316.

**d** PUBLIC AFFAIRS - AGGRESSIVELY SUPPORTS THE ASSEMBLY'S PROGRAMS, PARTICULARY GOVERNMENT AFFAIRS, THROUGH PROACTIVE COORDINATION AND REGULAR COMMUNICATION WITH MAINSTREAM AND ARMENIAN-AMERICAN MEDIA.   (Grants and allocations $ )   380,019.

**e** Other program services (attach schedule)   STATEMENT 9   (Grants and allocations $ )   762,574.

**f** Total of Program Service Expenses (should equal line 44, column (B), Program services) ▶   3,489,414.

423011
01-13-05
Form 990 (2004)

16420707 745960 18186        2004.05060 ARMENIAN ASSEMBLY OF AMERIC 18186___1

Form 990 (2004)     ARMENIAN ASSEMBLY OF AMERICA, INC.     52-1614093    Page 8

## Part IV   Balance Sheets

Note: *Where required, attached schedules and amounts within the description column should be for end-of-year amounts only.*

| | | | | (A) Beginning of year | | (B) End of year |
|---|---|---|---|---|---|---|
| Assets | 45 | Cash - non-interest-bearing | | 951,424. | 45 | 896,616. |
| | 46 | Savings and temporary cash investments | | | 46 | 29,019. |
| | 47 a | Accounts receivable | 47a  98,898. | | | |
| | b | Less: allowance for doubtful accounts | 47b | 210,636. | 47c | 98,898. |
| | 48 a | Pledges receivable | 48a  935,000. | | | |
| | b | Less: allowance for doubtful accounts | 48b  93,500. | 839,715. | 48c | 841,500. |
| | 49 | Grants receivable | | | 49 | |
| | 50 | Receivables from officers, directors, trustees, and key employees | | | 50 | |
| | 51 a | Other notes and loans receivable | 51a | | | |
| | b | Less: allowance for doubtful accounts | 51b | | 51c | |
| | 52 | Inventories for sale or use | | | 52 | |
| | 53 | Prepaid expenses and deferred charges | | 3,935. | 53 | 17,089. |
| | 54 | Investments - securities STMT 10 STMT 11 ▶ ☐ Cost ☒ FMV | | 15,971,635. | 54 | 16,988,284. |
| | 55 a | Investments - land, buildings, and equipment: basis | 55a | | | |
| | b | Less: accumulated depreciation | 55b | | 55c | |
| | 56 | Investments - other | | | 56 | |
| | 57 a | Land, buildings, and equipment: basis | 57a  966,482. | | | |
| | b | Less: accumulated depreciation  STMT 12 | 57b  818,594. | 7,535,725. | 57c | 147,888. |
| | 58 | Other assets (describe ▶  SEE STATEMENT 13 ) | | 167,541. | 58 | 126,793. |
| | 59 | **Total assets** (add lines 45 through 58) (must equal line 74) | | 25,680,611. | 59 | 19,146,087. |
| Liabilities | 60 | Accounts payable and accrued expenses | | 265,443. | 60 | 110,777. |
| | 61 | Grants payable | | | 61 | |
| | 62 | Deferred revenue | | 86,805. | 62 | 259,897. |
| | 63 | Loans from officers, directors, trustees, and key employees | | | 63 | |
| | 64 a | Tax-exempt bond liabilities | | | 64a | |
| | b | Mortgages and other notes payable | | 500,000. | 64b | |
| | 65 | Other liabilities (describe ▶  SEE STATEMENT 14 ) | | 572,185. | 65 | 1,066,347. |
| | 66 | **Total liabilities** (add lines 60 through 65) | | 1,424,433. | 66 | 1,437,021. |
| Net Assets or Fund Balances | | Organizations that follow SFAS 117, check here ▶ ☒ and complete lines 67 through 69 and lines 73 and 74. | | | | |
| | 67 | Unrestricted | | 5,648,880. | 67 | 5,934,905. |
| | 68 | Temporarily restricted | | 3,816,793. | 68 | 3,484,382. |
| | 69 | Permanently restricted | | 14,790,505. | 69 | 8,289,779. |
| | | Organizations that do not follow SFAS 117, check here ▶ ☐ and complete lines 70 through 74. | | | | |
| | 70 | Capital stock, trust principal, or current funds | | | 70 | |
| | 71 | Paid-in or capital surplus, or land, building, and equipment fund | | | 71 | |
| | 72 | Retained earnings, endowment, accumulated income, or other funds | | | 72 | |
| | 73 | **Total net assets or fund balances** (add lines 67 through 69 or lines 70 through 72; column (A) must equal line 19; column (B) must equal line 21) | | 24,256,178. | 73 | 17,709,066. |
| | 74 | **Total liabilities and net assets / fund balances** (add lines 66 and 73) | | 25,680,611. | 74 | 19,146,087. |

Form 990 is available for public inspection and, for some people, serves as the primary or sole source of information about a particular organization. How the public perceives an organization in such cases may be determined by the information presented on its return. Therefore, please make sure the return is complete and accurate and fully describes, in Part III, the organization's programs and accomplishments.

423021
01-13-05

Form 990 (2004)    ARMENIAN ASSEMBLY OF AMERICA, INC.    52-1614093    Page 4

| **Part IV-A** | **Reconciliation of Revenue per Audited Financial Statements with Revenue per Return** | | |
|---|---|---|---|
| a | Total revenue, gains, and other support per audited financial statements ▶ | a | 5,714,661. |
| b | Amounts included on line a but not on line 12, Form 990: | | |
| (1) | Net unrealized gains on investments $ 169,248. | | |
| (2) | Donated services and use of facilities $ | | |
| (3) | Recoveries of prior year grants $ | | |
| (4) | Other (specify): _____ $ | | |
| | Add amounts on lines (1) through (4) ▶ | b | 169,248. |
| c | Line a minus line b ▶ | c | 5,545,413. |
| d | Amounts included on line 12, Form 990 but not on line a: | | |
| (1) | Investment expenses not included on line 6b, Form 990 $ | | |
| (2) | Other (specify): _____ $ | | |
| | Add amounts on lines (1) and (2) ▶ | d | 0. |
| e | Total revenue per line 12, Form 990 (line c plus line d) ▶ | e | 5,545,413. |

| **Part IV-B** | **Reconciliation of Expenses per Audited Financial Statements with Expenses per Return** | | |
|---|---|---|---|
| a | Total expenses and losses per audited financial statements ▶ | a | 4,787,220. |
| b | Amounts included on line a but not on line 17, Form 990: | | |
| (1) | Donated services and use of facilities $ | | |
| (2) | Prior year adjustments reported on line 20, Form 990 $ | | |
| (3) | Losses reported on line 20, Form 990 $ | | |
| (4) | Other (specify): _____ $ | | |
| | Add amounts on lines (1) through (4) ▶ | b | 0. |
| c | Line a minus line b ▶ | c | 4,787,220. |
| d | Amounts included on line 17, Form 990 but not on line a: | | |
| (1) | Investment expenses not included on line 6b, Form 990 $ | | |
| (2) | Other (specify): _____ $ | | |
| | Add amounts on lines (1) and (2) ▶ | d | 0. |
| e | Total expenses per line 17, Form 990 (line c plus line d) ▶ | e | 4,787,220. |

| **Part V** | **List of Officers, Directors, Trustees, and Key Employees** (List each one even if not compensated) | | | |
|---|---|---|---|---|
| **(A) Name and address** | **(B) Title and average hours per week devoted to position** | **(C) Compensation (If not paid, enter -0-.)** | **(D) Contributions to employee benefit plans & deferred compensation** | **(E) Expense account and other allowances** |
| SEE STATEMENT 15 | | 149,746. | 0. | 0. |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

75  Did any officer, director, trustee, or key employee receive aggregate compensation of more than $100,000 from your organization and all related organizations, of which more than $10,000 was provided by the related organizations? If "Yes," attach schedule. ▶    ☐ Yes  ☒ No

423031 01-13-05    Form 990 (2004)

07020729 745960 18186        2004.05060 ARMENIAN ASSEMBLY OF AMERIC 18186    1

Form 990 (2004)    ARMENIAN ASSEMBLY OF AMERICA, INC.    52-1614093    Page 5

| Part VI | Other Information | | Yes | No |
|---|---|---|---|---|
| 76 | Did the organization engage in any activity not previously reported to the IRS? If "Yes," attach a detailed description of each activity | 76 | | X |
| 77 | Were any changes made in the organizing or governing documents but not reported to the IRS? | 77 | | X |
| | If "Yes," attach a conformed copy of the changes. | | | |
| 78 a | Did the organization have unrelated business gross income of $1,000 or more during the year covered by this return? | 78a | | X |
| b | If "Yes," has it filed a tax return on **Form 990-T** for this year?                                          N/A | 78b | | |
| 79 | Was there a liquidation, dissolution, termination, or substantial contraction during the year? | 79 | X | |
| | If "Yes," attach a statement | | | |
| 80 a | Is the organization related (other than by association with a statewide or nationwide organization) through common membership, governing bodies, trustees, officers, etc., to any other exempt or nonexempt organization? | 80a | X | |
| b | If "Yes," enter the name of the organization ▶ ARMENIAN NATIONAL INSTITUTE | | | |
| | and check whether it is ☐ exempt or ☒ nonexempt. | | | |
| 81 a | Enter direct or indirect political expenditures. See line 81 instructions | 81a | 0. | |
| b | Did the organization file **Form 1120-POL** for this year? | 81b | | X |
| 82 a | Did the organization receive donated services or the use of materials, equipment, or facilities at no charge or at substantially less than fair rental value? | 82a | | X |
| b | If "Yes," you may indicate the value of these items here. Do not include this amount as revenue in Part I or as an expense in Part II. (See instructions in Part III.) | 82b | N/A | |
| 83 a | Did the organization comply with the public inspection requirements for returns and exemption applications? | 83a | X | |
| b | Did the organization comply with the disclosure requirements relating to quid pro quo contributions? | 83b | X | |
| 84 a | Did the organization solicit any contributions or gifts that were not tax deductible? | 84a | | X |
| b | If "Yes," did the organization include with every solicitation an express statement that such contributions or gifts were not tax deductible? | 84b | N/A | |
| 85 | 501(c)(4), (5), or (6) organizations. **a** Were substantially all dues nondeductible by members? | 85a | N/A | |
| b | Did the organization make only in-house lobbying expenditures of $2,000 or less? | 85b | N/A | |
| | If "Yes" was answered to either 85a or 85b, **do not** complete 85c through 85h below unless the organization received a waiver for proxy tax owed for the prior year. | | | |
| c | Dues, assessments, and similar amounts from members | 85c | N/A | |
| d | Section 162(e) lobbying and political expenditures | 85d | N/A | |
| e | Aggregate nondeductible amount of section 6033(e)(1)(A) dues notices | 85e | N/A | |
| f | Taxable amount of lobbying and political expenditures (line 85d less 85e) | 85f | N/A | |
| g | Does the organization elect to pay the section 6033(e) tax on the amount on line 85f? | 85g | N/A | |
| h | If section 6033(e)(1)(A) dues notices were sent, does the organization agree to add the amount on line 85f to its reasonable estimate of dues allocable to nondeductible lobbying and political expenditures for the following tax year? | 85h | N/A | |
| 86 | 501(c)(7) organizations. Enter: **a** Initiation fees and capital contributions included on line 12 | 86a | N/A | |
| b | Gross receipts, included on line 12, for public use of club facilities | 86b | N/A | |
| 87 | 501(c)(12) organizations. Enter: **a** Gross income from members or shareholders | 87a | N/A | |
| b | Gross income from other sources. (Do not net amounts due or paid to other sources against amounts due or received from them.) | 87b | N/A | |
| 88 | At any time during the year, did the organization own a 50% or greater interest in a taxable corporation or partnership, or an entity disregarded as separate from the organization under Regulations sections 301.7701-2 and 301.7701-3? If "Yes," complete Part IX | 88 | | X |
| 89 a | 501(c)(3) organizations Enter: Amount of tax imposed on the organization during the year under: section 4911▶ 0. ; section 4912 ▶ 0. ; section 4955 ▶ 0. | | | |
| b | 501(c)(3) and 501(c)(4) organizations. Did the organization engage in any section 4958 excess benefit transaction during the year or did it become aware of an excess benefit transaction from a prior year? If "Yes," attach a statement explaining each transaction | 89b | | X |
| c | Enter: Amount of tax imposed on the organization managers or disqualified persons during the year under sections 4912, 4955, and 4958 | ▶ | 0. | |
| d | Enter: Amount of tax on line 89c, above, reimbursed by the organization | ▶ | 0. | |
| 90 a | List the states with which a copy of this return is filed ▶ DC, NY, MA, CA | | | |
| b | Number of employees employed in the pay period that includes March 12, 2004 | 90b | 21 | |
| 91 | The books are in care of ▶ THE ORGANIZATION        Telephone no. ▶ 202-393-3434 | | | |
| | Located at ▶ 1140 19TH STREET, NW, WASHINGTON, DC        ZIP + 4 ▶ 20036 | | | |
| 92 | Section 4947(a)(1) nonexempt charitable trusts filing Form 990 in lieu of **Form 1041** - Check here ▶ ☐ | | | |
| | and enter the amount of tax-exempt interest received or accrued during the tax year ▶ | 92 | N/A | |

423041
01-13-05

Form 990 (2004)

5

16420707 745960 18186        2004.05060 ARMENIAN ASSEMBLY OF AMERIC 18186__1

Form 990 (2004)    ARMENIAN ASSEMBLY OF AMERICA, INC.          52-1614093          Page 6

## Part VII | Analysis of Income-Producing Activities (See page 33 of the instructions.)

| Note: *Enter gross amounts unless otherwise indicated.* | Unrelated business income | | Excluded by section 512, 513, or 514 | | (E) |
|---|---|---|---|---|---|
| | (A) Business code | (B) Amount | (C) Exclusion code | (D) Amount | Related or exempt function income |
| 93 Program service revenue: | | | | | |
| a PROGRAM FEES | | | | | 27,500. |
| b | | | | | |
| c | | | | | |
| d | | | | | |
| e | | | | | |
| f Medicare/Medicaid payments | | | | | |
| g Fees and contracts from government agencies | | | | | |
| 94 Membership dues and assessments | | | | | |
| 95 Interest on savings and temporary cash investments | | | 14 | 1,204. | |
| 96 Dividends and interest from securities | | | 14 | 544,289. | |
| 97 Net rental income or (loss) from real estate: | | | | | |
| a debt-financed property | | | | | |
| b not debt-financed property | | | | | |
| 98 Net rental income or (loss) from personal property | | | | | |
| 99 Other investment income | | | | | |
| 100 Gain or (loss) from sales of assets other than inventory | | | 18 | 125,595. | |
| 101 Net income or (loss) from special events | | | | | |
| 102 Gross profit or (loss) from sales of inventory | | | | | |
| 103 Other revenue: | | | | | |
| a MISCELLANEOUS | | | | | 51,051. |
| b | | | | | |
| c | | | | | |
| d | | | | | |
| e | | | | | |
| 104 Subtotal (add columns (B), (D), and (E)) | | 0. | | 671,088. | 78,551. |
| 105 Total (add line 104, columns (B), (D), and (E)) | | | | ▶ | 749,639. |

Note: *Line 105 plus line 1d, Part I, should equal the amount on line 12, Part I.*

## Part VIII | Relationship of Activities to the Accomplishment of Exempt Purposes (See page 34 of the instructions.)

| Line No. ▼ | Explain how each activity for which income is reported in column (E) of Part VII contributed importantly to the accomplishment of the organization's exempt purposes (other than by providing funds for such purposes). |
|---|---|
| 103A | OTHER REVENUE RELATED TO ORGANIZATION'S EXEMPT PURPOSE |
| | |
| | |
| | |

## Part IX | Information Regarding Taxable Subsidiaries and Disregarded Entities (See page 34 of the instructions.)

| (A) Name, address, and EIN of corporation, partnership, or disregarded entity | (B) Percentage of ownership interest | (C) Nature of activities | (D) Total income | (E) End-of-year assets |
|---|---|---|---|---|
| | % | | | |
| N/A | % | | | |
| | % | | | |
| | % | | | |

## Part X | Information Regarding Transfers Associated with Personal Benefit Contracts (See page 34 of the instructions.)

(a) Did the organization, during the year, receive any funds, directly or indirectly, to pay premiums on a personal benefit contract?      ☐ Yes  ☒ No

(b) Did the organization, during the year, pay premiums, directly or indirectly, on a personal benefit contract?      ☐ Yes  ☒ No

Note: *If "Yes" to (b), file Form 8870 and Form 4720 (see instructions)*

| Please Sign Here | Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than officer) is based on all information of which preparer has any knowledge | | |
|---|---|---|---|
| | ▶ Signature of officer | 7/25/05 Date | ▶ BRYAN ARDOUNY  Exec DIRECTOR Type or print name and title. |

| Paid Preparer's Use Only | Preparer's signature ▶ | Date 7/12/05 | Check if self-employed ▶ ☐ | Preparer's SSN or PTIN |
|---|---|---|---|---|
| | Firm's name (or yours if self-employed), address, and ZIP + 4 | GELMAN, ROSENBERG & FREEDMAN, CPA'S 4550 MONTGOMERY AVE., SUITE 650 NORTH BETHESDA, MARYLAND 20814-2930 | EIN ▶ 52-1392008 | Phone no. ▶ (301) 951-9090 |

423161 01-13-05

Form 990 (2004)

6

16420707 745960 18186          2004.05060 ARMENIAN ASSEMBLY OF AMERIC 18186___1

| SCHEDULE A<br>(Form 990 or 990-EZ)<br><br>Department of the Treasury<br>Internal Revenue Service | **Organization Exempt Under Section 501(c)(3)**<br>(Except Private Foundation) and Section 501(e), 501(f), 501(k),<br>501(n), or Section 4947(a)(1) Nonexempt Charitable Trust<br>**Supplementary Information-(See separate instructions.)**<br>▶ **MUST be completed by the above organizations and attached to their Form 990 or 990-EZ** | OMB No 1545-0047<br><br>**2004** |

| Name of the organization | Employer identification number |
|---|---|
| ARMENIAN ASSEMBLY OF AMERICA, INC. | 52 1614093 |

| **Part I** | **Compensation of the Five Highest Paid Employees Other Than Officers, Directors, and Trustees** |
|---|---|

(See page 1 of the instructions. List each one. If there are none, enter "None.")

| (a) Name and address of each employee paid<br>more than $50,000 | (b) Title and average hours<br>per week devoted to<br>position | (c) Compensation | (d) Contributions to<br>employee benefit<br>plans & deferred<br>compensation | (e) Expense<br>account and other<br>allowances |
|---|---|---|---|---|
| JASON CAUFFELD<br>ALL MAY BE REACHED AT ORG'S ADDRESS | FIELD DIRECTO<br>40 | 66,080. | 0. | 0. |
| DAVID ZENIAN<br> | DIR. PUB. AFF<br>40 | 92,051. | 0. | 0. |
| PARSEH ABAJIAN<br> | DEP. EX. DIR<br>40 | 90,319. | 0. | 0. |
| JEFFREY MARSARJIAN<br> | DIR. PUB. AFF<br>40 | 84,230. | 0. | 0. |
| ARPI VARTANIAN<br> | 40 | 77,487. | 0. | 0. |

| Total number of other employees paid<br>over $50,000 ▶ | 0 | | | |

| **Part II** | **Compensation of the Five Highest Paid Independent Contractors for Professional Services** |
|---|---|

(See page 2 of the instructions. List each one (whether individuals or firms). If there are none, enter "None.")

| (a) Name and address of each independent contractor paid more than $50,000 | (b) Type of service | (c) Compensation |
|---|---|---|
| NONE | | |
| | | |
| | | |
| | | |
| | | |

| Total number of others receiving over<br>$50,000 for professional services ▶ | 0 | |

423101/11-24-04   LHA   For Paperwork Reduction Act Notice, see the Instructions for Form 990 and Form 990-EZ.   Schedule A (Form 990 or 990-EZ) 2004

07020729 745960 18186        2004.05060 ARMENIAN ASSEMBLY OF AMERIC 18186     1

Schedule A (Form 990 or 990-EZ) 2004   ARMENIAN ASSEMBLY OF AMERICA, INC.        52-1614093   Page 2

| **Part III** | Statements About Activities (See page 2 of the instructions.) | | Yes | No |
|---|---|---|---|---|

1  During the year, has the organization attempted to influence national, state, or local legislation, including any attempt to influence public opinion on a legislative matter or referendum? If "Yes," enter the total expenses paid or incurred in connection with the lobbying activities ▶ $ _____ $ __42,341.__ (Must equal amounts on line 38, Part VI-A, or line i of Part VI-B.)   VI-A, LINE 38B

Organizations that made an election under section 501(h) by filing Form 5768 must complete Part VI-A. Other organizations checking "Yes," must complete Part VI-B AND attach a statement giving a detailed description of the lobbying activities.   **1   X**

2  During the year, has the organization, either directly or indirectly, engaged in any of the following acts with any substantial contributors, trustees, directors, officers, creators, key employees, or members of their families, or with any taxable organization with which any such person is affiliated as an officer, director, trustee, majority owner, or principal beneficiary? (If the answer to any question is "Yes," attach a detailed statement explaining the transactions.)

a  Sale, exchange, or leasing of property?   **2a   X**

b  Lending of money or other extension of credit?   **2b   X**

c  Furnishing of goods, services, or facilities?   **2c   X**

d  Payment of compensation (or payment or reimbursement of expenses if more than $1,000)?   SEE PART V, FORM 990   **2d   X**

e  Transfer of any part of its income or assets?   **2e   X**

3 a  Do you make grants for scholarships, fellowships, student loans, etc.? (If "Yes," attach an explanation of how you determine that recipients qualify to receive payments.)   **3a   X**
  b  Do you have a section 403(b) annuity plan for your employees?   **3b   X**
4 a  Did you maintain any separate account for participating donors where donors have the right to provide advice on the use or distribution of funds?   **4a   X**
  b  Do you provide credit counseling, debt management, credit repair, or debt negotiation services?   **4b   X**

| **Part IV** | Reason for Non-Private Foundation Status (See pages 3 through 6 of the instructions.) |
|---|---|

The organization is not a private foundation because it is: (Please check only ONE applicable box.)

5  [  ]  A church, convention of churches, or association of churches. Section 170(b)(1)(A)(i).

6  [  ]  A school. Section 170(b)(1)(A)(ii). (Also complete Part V.)

7  [  ]  A hospital or a cooperative hospital service organization. Section 170(b)(1)(A)(iii).

8  [  ]  A Federal, state, or local government or governmental unit. Section 170(b)(1)(A)(v).

9  [  ]  A medical research organization operated in conjunction with a hospital. Section 170(b)(1)(A)(iii). **Enter the hospital's name, city, and state** ▶ _____

10  [  ]  An organization operated for the benefit of a college or university owned or operated by a governmental unit. Section 170(b)(1)(A)(iv). (Also complete the **Support Schedule** in Part IV-A.)

11a  [ X ]  An organization that normally receives a substantial part of its support from a governmental unit or from the general public. Section 170(b)(1)(A)(vi). (Also complete the **Support Schedule** in Part IV-A.)

11b  [  ]  A community trust. Section 170(b)(1)(A)(vi). (Also complete the **Support Schedule** in Part IV-A.)

12  [  ]  An organization that normally receives: (1) more than 33 1/3% of its support from contributions, membership fees, and gross receipts from activities related to its charitable, etc., functions - subject to certain exceptions, and (2) no more than 33 1/3% of its support from gross investment income and unrelated business taxable income (less section 511 tax) from businesses acquired by the organization after June 30, 1975. See section 509(a)(2). (Also complete the **Support Schedule** in Part IV-A.)

13  [  ]  An organization that is not controlled by any disqualified persons (other than foundation managers) and supports organizations described in: (1) lines 5 through 12 above; or (2) section 501(c)(4), (5), or (6), if they meet the test of section 509(a)(2). (See section 509(a)(3).)

Provide the following information about the supported organizations. (See page 5 of the instructions.)

| (a) Name(s) of supported organization(s) | (b) Line number from above |
|---|---|
|  |  |
|  |  |
|  |  |

14  [  ]  An organization organized and operated to test for public safety. Section 509(a)(4). (See page 5 of the instructions.)

423111
12-03-04                                                                  Schedule A (Form 990 or 990-EZ) 2004

16420707 745960 18186          2004.05060 ARMENIAN ASSEMBLY OF AMERIC 18186___1

Schedule A (Form 990 or 990-EZ) 2004  ARMENIAN ASSEMBLY OF AMERICA, INC.    52-1614093    Page 3

| **Part IV-A** | **Support Schedule** (Complete only if you checked a box on line 10, 11, or 12.) **Use cash method of accounting.** |
|---|---|

Note: *You may use the worksheet in the instructions for converting from the accrual to the cash method of accounting.*

| Calendar year (or fiscal year beginning in) ▶ | (a) 2003 | (b) 2002 | (c) 2001 | (d) 2000 | (e) Total |
|---|---|---|---|---|---|
| **15** Gifts, grants, and contributions received. (Do not include unusual grants. See line 28.) | 14,720,983. | 4,132,554. | 3,266,355. | 11,149,510. | 33,269,402. |
| **16** Membership fees received | | | | | |
| **17** Gross receipts from admissions, merchandise sold or services performed, or furnishing of facilities in any activity that is related to the organization's charitable, etc., purpose | 12,254. | 10,446. | 29,304. | 221,347. | 273,351. |
| **18** Gross income from interest, dividends, amounts received from payments on securities loans (section 512(a)(5)), rents, royalties, and unrelated business taxable income (less section 511 taxes) from businesses acquired by the organization after June 30, 1975 | 643,176. | 328,441. | 566,435. | 637,668. | 2,175,720. |
| **19** Net income from unrelated business activities not included in line 18 | | | | | |
| **20** Tax revenues levied for the organization's benefit and either paid to it or expended on its behalf | | | | | |
| **21** The value of services or facilities furnished to the organization by a governmental unit without charge. Do not include the value of services or facilities generally furnished to the public without charge | | 19,654. | 29,304. | 42,911. | 91,869. |
| **22** Other income. Attach a schedule. Do not include gain or (loss) from sale of capital assets | 15,536. | SEE STATEMENT 16 | | | 15,536. |
| **23** Total of lines 15 through 22 | 15,391,949. | 4,491,095. | 3,891,398. | 12,051,436. | 35,825,878. |
| **24** Line 23 minus line 17 | 15,379,695. | 4,480,649. | 3,862,094. | 11,830,089. | 35,552,527. |
| **25** Enter 1% of line 23 | 153,919. | 44,911. | 38,914. | 120,514. | |

| | | | | |
|---|---|---|---|---|
| **26** Organizations described on lines 10 or 11: **a** Enter 2% of amount in column (e), line 24 | | | ▶ | **26a** | 711,051. |
| **b** Prepare a list for your records to show the name of and amount contributed by each person (other than a governmental unit or publicly supported organization) whose total gifts for 2000 through 2003 exceeded the amount shown in line 26a. **Do not file this list with your return.** Enter the total of all these excess amounts | | | ▶ | **26b** | 0. |
| **c** Total support for section 509(a)(1) test: Enter line 24, column (e) | | | ▶ | **26c** | 35,552,527. |
| **d** Add: Amounts from column (e) for lines: 18 ___2,175,720.___ 19 _____ 22 ___15,536.___ 26b _____ | | | ▶ | **26d** | 2,191,256. |
| **e** Public support (line 26c minus line 26d total) | | | ▶ | **26e** | 33,361,271. |
| **f** Public support percentage (line 26e (numerator) divided by line 26c (denominator)) | | | ▶ | **26f** | 93.8366% |

**27** Organizations described on line 12: **a** For amounts included in lines 15, 16, and 17 that were received from a "disqualified person," prepare a list for your records to show the name of, and total amounts received in each year from, each "disqualified person." **Do not file this list with your return.** Enter the sum of such amounts for each year:  **N/A**

(2003) _____ (2002) _____ (2001) _____ (2000) _____

**b** For any amount included in line 17 that was received from each person (other than "disqualified persons"), prepare a list for your records to show the name of, and amount received for each year, that was more than the **larger of (1)** the amount on line 25 for the year or **(2)** $5,000. (Include in the list organizations described in lines 5 through 11, as well as individuals.) **Do not file this list with your return.** After computing the difference between the amount received and the larger amount described in (1) or (2), enter the sum of these differences (the excess amounts) for each year:  **N/A**

(2003) _____ (2002) _____ (2001) _____ (2000) _____

| | | | | | |
|---|---|---|---|---|---|
| **c** Add: Amounts from column (e) for lines: 15 ____ 16 ____ 17 ____ 20 ____ 21 ____ | | | | ▶ | **27c** | N/A |
| **d** Add: Line 27a total ____ and line 27b total ____ | | | | ▶ | **27d** | N/A |
| **e** Public support (line 27c total minus line 27d total) | | | | ▶ | **27e** | N/A |
| **f** Total support for section 509(a)(2) test: Enter amount on line 23, column (e) | ▶ | **27f** | N/A | | |
| **g** Public support percentage (line 27e (numerator) divided by line 27f (denominator)) | | | | ▶ | **27g** | N/A % |
| **h** Investment income percentage (line 18, column (e) (numerator) divided by line 27f (denominator)) | | | | ▶ | **27h** | N/A % |

**28** **Unusual Grants:** For an organization described in line 10, 11, or 12 that received any unusual grants during 2000 through 2003, prepare a list for your records to show, for each year, the name of the contributor, the date and amount of the grant, and a brief description of the nature of the grant. **Do not file this list with your return.** Do not include these grants in line 15.

423121  12-03-04                                **NONE**                        Schedule A (Form 990 or 990-EZ) 2004

16420707 745960 18186              2004.05060 ARMENIAN ASSEMBLY OF AMERIC 18186__1

Schedule A (Form 990 or 990-EZ) 2004  ARMENIAN ASSEMBLY OF AMERICA, INC.    52-1614093  Page 4

| Part V | **Private School Questionnaire** (See page 7 of the instructions.) | N/A |
|---|---|---|

**(To be completed ONLY by schools that checked the box on line 6 in Part IV)**

| | | | Yes | No |
|---|---|---|---|---|
| 29 | Does the organization have a racially nondiscriminatory policy toward students by statement in its charter, bylaws, other governing instrument, or in a resolution of its governing body? | 29 | | |
| 30 | Does the organization include a statement of its racially nondiscriminatory policy toward students in all its brochures, catalogues, and other written communications with the public dealing with student admissions, programs, and scholarships? | 30 | | |
| 31 | Has the organization publicized its racially nondiscriminatory policy through newspaper or broadcast media during the period of solicitation for students, or during the registration period if it has no solicitation program, in a way that makes the policy known to all parts of the general community it serves? | 31 | | |
| | If "Yes," please describe; if "No," please explain. (If you need more space, attach a separate statement.) | | | |
| 32 | Does the organization maintain the following: | | | |
| a | Records indicating the racial composition of the student body, faculty, and administrative staff? | 32a | | |
| b | Records documenting that scholarships and other financial assistance are awarded on a racially nondiscriminatory basis? | 32b | | |
| c | Copies of all catalogues, brochures, announcements, and other written communications to the public dealing with student admissions, programs, and scholarships? | 32c | | |
| d | Copies of all material used by the organization or on its behalf to solicit contributions? | 32d | | |
| | If you answered "No" to any of the above, please explain. (If you need more space, attach a separate statement.) | | | |
| 33 | Does the organization discriminate by race in any way with respect to: | | | |
| a | Students' rights or privileges? | 33a | | |
| b | Admissions policies? | 33b | | |
| c | Employment of faculty or administrative staff? | 33c | | |
| d | Scholarships or other financial assistance? | 33d | | |
| e | Educational policies? | 33e | | |
| f | Use of facilities? | 33f | | |
| g | Athletic programs? | 33g | | |
| h | Other extracurricular activities? | 33h | | |
| | If you answered "Yes" to any of the above, please explain. (If you need more space, attach a separate statement.) | | | |
| 34 a | Does the organization receive any financial aid or assistance from a governmental agency? | 34a | | |
| b | Has the organization's right to such aid ever been revoked or suspended? | 34b | | |
| | If you answered "Yes" to either 34a or b, please explain using an attached statement. | | | |
| 35 | Does the organization certify that it has complied with the applicable requirements of sections 4.01 through 4.05 of Rev. Proc. 75-50, 1975-2 C.B. 587, covering racial nondiscrimination? If "No," attach an explanation | 35 | | |

Schedule A (Form 990 or 990-EZ) 2004

423131
11-24-04

16420707 745960 18186        2004.05060 ARMENIAN ASSEMBLY OF AMERIC 18186___1

Schedule A (Form 990 or 990-EZ) 2004  ARMENIAN ASSEMBLY OF AMERICA, INC.    52-1614093    Page 5

| Part VI-A | Lobbying Expenditures by Electing Public Charities (See page 9 of the instructions.) |
|---|---|

(To be completed ONLY by an eligible organization that filed Form 5768)

Check ▶ a ☐ if the organization belongs to an affiliated group.    Check ▶ b ☐ if you checked "a" and "limited control" provisions apply.

| | Limits on Lobbying Expenditures<br>(The term "expenditures" means amounts paid or incurred.) | | (a)<br>Affiliated group totals | (b)<br>To be completed for ALL electing organizations |
|---|---|---|---|---|
| | | | N/A | |
| 36 | Total lobbying expenditures to influence public opinion (grassroots lobbying) | 36 | | 0. |
| 37 | Total lobbying expenditures to influence a legislative body (direct lobbying) | 37 | | 42,341. |
| 38 | Total lobbying expenditures (add lines 36 and 37) | 38 | | 42,341. |
| 39 | Other exempt purpose expenditures | 39 | | 4,744,879. |
| 40 | Total exempt purpose expenditures (add lines 38 and 39) | 40 | | 4,787,220. |
| 41 | Lobbying nontaxable amount. Enter the amount from the following table - | | | |

| If the amount on line 40 is - | The lobbying nontaxable amount is - | | | |
|---|---|---|---|---|
| Not over $500,000 | 20% of the amount on line 40 | | | |
| Over $500,000 but not over $1,000,000 | $100,000 plus 15% of the excess over $500,000 | | | |
| Over $1,000,000 but not over $1,500,000 | $175,000 plus 10% of the excess over $1,000,000 | 41 | | 389,361. |
| Over $1,500,000 but not over $17,000,000 | $225,000 plus 5% of the excess over $1,500,000 | | | |
| Over $17,000,000 | $1,000,000 | | | |
| 42 | Grassroots nontaxable amount (enter 25% of line 41) | 42 | | 97,340. |
| 43 | Subtract line 42 from line 36. Enter -0- if line 42 is more than line 36 | 43 | | 0. |
| 44 | Subtract line 41 from line 38. Enter -0- if line 41 is more than line 38 | 44 | | 0. |

**Caution:** *If there is an amount on either line 43 or line 44, you must file Form 4720.*

### 4-Year Averaging Period Under Section 501(h)

(Some organizations that made a section 501(h) election do not have to complete all of the five columns below. See the instructions for lines 45 through 50 on page 11 of the instructions.)

| | | Lobbying Expenditures During 4-Year Averaging Period | | | |
|---|---|---|---|---|---|
| Calendar year (or<br>fiscal year beginning in) ▶ | (a)<br>2004 | (b)<br>2003 | (c)<br>2002 | (d)<br>2001 | (e)<br>Total |
| 45 Lobbying nontaxable amount | 389,361. | 850,092. | | | 1,239,453. |
| 46 Lobbying ceiling amount (150% of line 45(e)) | | | | | 1,859,180. |
| 47 Total lobbying expenditures | 42,341. | 30,375. | | | 72,716. |
| 48 Grassroots nontaxable amount | 97,340. | 212,523. | | | 309,863. |
| 49 Grassroots ceiling amount (150% of line 48(e)) | | | | | 464,795. |
| 50 Grassroots lobbying expenditures | | | | | 0. |

| Part VI-B | Lobbying Activity by Nonelecting Public Charities |
|---|---|

(For reporting only by organizations that did not complete Part VI-A) (See page 11 of the instructions.)    N/A

| During the year, did the organization attempt to influence national, state or local legislation, including any attempt to influence public opinion on a legislative matter or referendum, through the use of: | Yes | No | Amount |
|---|---|---|---|
| a  Volunteers | | | |
| b  Paid staff or management (Include compensation in expenses reported on lines c through h ) | | | |
| c  Media advertisements | | | |
| d  Mailings to members, legislators, or the public | | | |
| e  Publications, or published or broadcast statements | | | |
| f  Grants to other organizations for lobbying purposes | | | |
| g  Direct contact with legislators, their staffs, government officials, or a legislative body | | | |
| h  Rallies, demonstrations, seminars, conventions, speeches, lectures, or any other means | | | |
| i  Total lobbying expenditures (Add lines c through h.) | | | 0. |
| If "Yes" to any of the above, also attach a statement giving a detailed description of the lobbying activities. | | | |

423141
11-24-04

Schedule A (Form 990 or 990-EZ) 2004

16420707 745960 18186        2004.05060 ARMENIAN ASSEMBLY OF AMERIC 18186___1

Schedule A (Form 990 or 990-EZ) 2004  ARMENIAN ASSEMBLY OF AMERICA, INC.            52-1614093   Page 6

| Part VII | Information Regarding Transfers To and Transactions and Relationships With Noncharitable Exempt Organizations (See page 11 of the instructions.) |

**51** Did the reporting organization directly or indirectly engage in any of the following with any other organization described in section 501(c) of the Code (other than section 501(c)(3) organizations) or in section 527, relating to political organizations?

|  |  |  | Yes | No |
|---|---|---|---|---|
| **a** | Transfers from the reporting organization to a noncharitable exempt organization of: |  |  |  |
|  | **(i)** Cash | 51a(i) |  | X |
|  | **(ii)** Other assets | a(ii) |  | X |
| **b** | Other transactions: |  |  |  |
|  | **(i)** Sales or exchanges of assets with a noncharitable exempt organization | b(i) |  | X |
|  | **(ii)** Purchases of assets from a noncharitable exempt organization | b(ii) |  | X |
|  | **(iii)** Rental of facilities, equipment, or other assets | b(iii) |  | X |
|  | **(iv)** Reimbursement arrangements | b(iv) |  | X |
|  | **(v)** Loans or loan guarantees | b(v) |  | X |
|  | **(vi)** Performance of services or membership or fundraising solicitations | b(vi) |  | X |
| **c** | Sharing of facilities, equipment, mailing lists, other assets, or paid employees | c |  | X |

**d** If the answer to any of the above is "Yes," complete the following schedule. Column (b) should always show the fair market value of the goods, other assets, or services given by the reporting organization. If the organization received less than fair market value in any transaction or sharing arrangement, show in column (d) the value of the goods, other assets, or services received:   **N/A**

| (a) Line no. | (b) Amount involved | (c) Name of noncharitable exempt organization | (d) Description of transfers, transactions, and sharing arrangements |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

**52 a** Is the organization directly or indirectly affiliated with, or related to, one or more tax-exempt organizations described in section 501(c) of the Code (other than section 501(c)(3)) or in section 527?   ▶ ☐ Yes  ☒ No

**b** If "Yes," complete the following schedule:   **N/A**

| (a) Name of organization | (b) Type of organization | (c) Description of relationship |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

423151
11-24-04

Schedule A (Form 990 or 990-EZ) 2004

16420707 745960 18186          2004.05060 ARMENIAN ASSEMBLY OF AMERIC 18186___1

2004 DEPRECIATION AND AMORTIZATION REPORT

FORM 990 PAGE 2

990

| Asset No | Description | Date Acquired | Method | Life | Line No | Unadjusted Cost Or Basis | Bus % Excl | Reduction In Basis | Basis For Depreciation | Accumulated Depreciation | Current Sec 179 | Amount Of Depreciation |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | | | | | | | | | | | | 0. |
| 2 | FURNITURE AND EQUIPMENT | VARIES | | 5.00 | 16 | 931,562. | | | 931,562. | 746,220. | | 37,724. |
| 3 | LEASEHOLD IMPROVEMENTS | VARIES | | 7.00 | 16 | 34,920. | | | 34,920. | 34,650. | | 0. |
| | * TOTAL 990 PAGE 2 DEPR | | | .000 | 16 | 966,482. | | 0. | 966,482. | 780,870. | 0. | 37,724. |

(D) - Asset disposed

* ITC, Section 179, Salvage, Bonus, Commercial Revitalization Deduction

15

428102
10-08-04

ARMENIAN ASSEMBLY OF AMERICA, INC.                          52-1614093

| FOOTNOTES | STATEMENT 1 |
|---|---|

PART VI, ITEM 79 - SUBSTANTIAL CONTRACTION

AT DECEMBER 31, 2004, THE ARMENIAN ASSEMBLY OF AMERICA, INC.
SPUN OFF ITS ARMENIAN GENOCIDE MUSEUM AND MEMORIAL PROJECT
THE ARMENIAN GENOCIDE MUSEUM AND MEMORIAL WILL COMMENCE
OPERATIONS AS A SEPARATE ENTITY WITH ITS OWN TAX EXEMPT
STATUS. THE  TRANSFER IS INCLUDED ON THE ACCOMPANYING
STATEMENT OF ACTIVITIES AND CHANGE IN NET ASSETS. THE ASSETS
AND LIABILITIES THAT WERE TRANSFERRED INCLUDED THE FOLLOWING

```
ASSETS:
    LAND                                           5,477,458.
    BUILDING                                       1,815,414.
    COLLECTION                                       125,000.
    INVESTMENTS                                      556,681.
                                                  _____

    TOTAL ASSETS                                   7,974,553.

LESS: LIABILITIES TRANSFERRED - NOTE PAYABLE       -500,000.

    NET ASSETS TRANSFERRED                         7,474,553.
                                                  _____
```

ARMENIAN ASSEMBLY OF AMERICA, INC.                                    52-1614093

---

FORM 990          GAIN (LOSS) FROM PUBLICLY TRADED SECURITIES          STATEMENT    2

| DESCRIPTION | GROSS SALES PRICE | COST OR OTHER BASIS | EXPENSE OF SALE | NET GAIN OR (LOSS) |
|---|---|---|---|---|
| SALE OF MARKETABLE SECURITES | 799,230. | 673,635. | 0. | 125,595. |
| TO FORM 990, PART I, LINE 8 | 799,230. | 673,635. | 0. | 125,595. |

---

FORM 990                    SPECIAL EVENTS AND ACTIVITIES                    STATEMENT    3

| DESCRIPTION OF EVENT | GROSS RECEIPTS | CONTRIBUT. INCLUDED | GROSS REVENUE | DIRECT EXPENSES | NET INCOME |
|---|---|---|---|---|---|
| GALA | 207,123. | | 207,123. | 207,123. | 0. |
| TO FM 990, PART I, LINE 9 | 207,123. | | 207,123. | 207,123. | 0. |

---

FORM 990          OTHER CHANGES IN NET ASSETS OR FUND BALANCES          STATEMENT    4

| DESCRIPTION | AMOUNT |
|---|---|
| UNREALIZED GAIN ON MARKETABLE SECURITIES | 169,248. |
| TRANSFER TO AMERICAN GENOCIDE MUSEUM AND MEMORIAL | -7,474,553. |
| TOTAL TO FORM 990, PART I, LINE 20 | -7,305,305. |

---

FORM 990                              OTHER EXPENSES                              STATEMENT    5

| DESCRIPTION | (A) TOTAL | (B) PROGRAM SERVICES | (C) MANAGEMENT AND GENERAL | (D) FUNDRAISING |
|---|---|---|---|---|
| INSURANCE | 25,877. | 4,106. | 21,771. | |
| MEALS AND ENTERTAINMENT | 204,398. | 103,534. | 12,225. | 88,639. |
| CONSULTING | 299,157. | 186,274. | 108,533. | 4,350. |
| COURIER AND FREIGHT | 10,531. | 4,198. | 4,166. | 2,167. |
| DUES AND SUBSCRIPTION | 54,557. | 14,218. | 36,421. | 3,918. |
| PUBLIC RELATIONS | 341. | 262. | 79. | |
| BANK CHARGES | 14,075. | 8,155. | 5,920. | |

---

ARMENIAN ASSEMBLY OF AMERICA, INC.                                        52-1614093

| | | | |
|---|---|---|---|
| COMPUTER EXPENSES | 57,659. | 29,879. | 20,231. | 7,549. |
| DUPLICATING BOOKS AND PAMPHLETS | 116,536. | 74,893. | 15,014. | 26,629. |
| HOUSING-INTERNS AND EX-PATRIOTS | 71,371. | 71,371. | | |
| MISCELLANEOUS | 61,607. | 49,702. | 10,107. | 1,798. |
| CONGRESSIONAL CONTACT | 624. | 550. | 74. | |
| CREDIT CARD CHARGES | 10,986. | 266. | 10,720. | |
| EQUIPMENT RENTAL | 195,090. | 173,111. | 21,979. | |
| FUEL | 21,581. | 18,427. | 3,154. | |
| GOODS AND SERVICES | 1,224. | 1,214. | 10. | |
| PAYROLL SERVICES | 3,067. | 764. | 2,303. | |
| PHOTOGRAPHS AND FILM | 9,318. | 8,821. | 283. | 214. |
| RECOGNITION | 2,258. | 1,885. | 248. | 125. |
| REPAIR AND MAINTENANCE | 9,259. | 601. | 8,658. | |
| SMALL SUPPLIES-TREES | 32,205. | 32,205. | | |
| TAXES,LICENSES AND REGULATIONS | 1,085. | 250. | 835. | |
| TRAINING | 6,502. | 6,502. | | |
| TRANSLATION SERVICES | 798. | 816. | -18. | |
| TRUSTEE EVENTS | 22,717. | | 12,040. | 10,677. |
| UTILITIES | 5,163. | 5,163. | | |
| VIDEOS AND RELATED SERVICES | 187. | 39. | 20. | 128. |
| WEBSITE MANAGEMENT | 1,400. | 550. | 850. | |
| OVERHEAD RECOVERY | 0. | 381,878. | -414,664. | 32,786. |
| FUNDRAISING | 47,628. | | | 47,628. |
| TOTAL TO FM 990, LN 43 | 1,287,201. | 1,179,634. | -119,041. | 226,608. |

FORM 990     STATEMENT OF ORGANIZATION'S PRIMARY EXEMPT PURPOSE     STATEMENT     6
                                    PART III

EXPLANATION
----------

PROVIDES AID, RELIEF AND HUMANITARIAN ASSISTANCE TO ARMENIA AND PROMOTES THE
STUDY AND DISSEMINATION OF INFORMATION REGARDING ARMENIAN CULTURE, RELIGIOUS
HISTORICAL AND EDUCATIONAL LIFE FOR THE BENIFIT OF THE GENERAL PUBLIC.

ARMENIAN ASSEMBLY OF AMERICA, INC.                                    52-161409

---

FORM 990          STATEMENT OF PROGRAM SERVICE ACCOMPLISHMENTS          STATEMENT

---

DESCRIPTION OF PROGRAM SERVICE THREE

---

NON-GOVERNMENTAL ORGANIZATION DATA PROCESSING SUPPORTS
THE GROWTH AND DEVELOPMENT OF ARMENIA'S NON-PROFIT SECTOR.
THE NGOC PROVIDES CAPACITY BUILDING SUPPORT TO NGOS
DELIVERING SOCIAL AND HEALTH CARE SERVICES.

|                                     | GRANTS | EXPENSES |
|-------------------------------------|--------|----------|
| TO FORM 990, PART III, LINE C       |        | 643,316  |

---

FORM 990                     CASH GRANTS AND ALLOCATIONS                 STATEMENT

---

| CLASSIFICATION | DONEE'S NAME | DONEE'S ADDRESS | DONEE'S RELATIONSHIP | AMOUNT |
|----------------|--------------|-----------------|----------------------|--------|
|                | AMERICAN GENOCIDE MUSEUM | AVAILABLE UPON REQUEST | NONE | 250,000 |
|                | NGO- DATA PROCESSING GRANTS | AVAILABLE UPON REQUEST | NONE | 293,502 |

| TOTAL INCLUDED ON FORM 990, PART II, LINE 22 | 543,502 |
|----------------------------------------------|---------|

---

FORM 990                       OTHER PROGRAM SERVICES                    STATEMENT

---

| DESCRIPTION | GRANTS AND ALLOCATIONS | EXPENSES |
|-------------|------------------------|----------|
| GOVERNMENT  |                        | 261,492  |
| GRASS ROOTS |                        | 154,830  |
| LOBBYING AND COMMUNITY AFFAIRS |         | 42,342  |
| STUDENT ACADEMIC AND INTERNAL AFFAIRS |  | 62,346  |
| ARMENIAN TRIP |                        | 150,812  |
| NAGORNO KARABAKH STEPANAKERT |          | 90,752  |
| TOTAL TO FORM 990, PART III, LINE E |    | 762,574  |

ARMENIAN ASSEMBLY OF AMERICA, INC.                                    52-1614093

---

| FORM 990 | | NON-GOVERNMENT SECURITIES | | | STATEMENT  10 |
|---|---|---|---|---|---|
| SECURITY DESCRIPTION | COST/FMV | CORPORATE STOCKS | CORPORATE BONDS | OTHER PUBLICLY TRADED SECURITIES | TOTAL NON-GOV'T SECURITIES |
| CORPORATE STOCKS | FMV | 11,741,228. | | | 11,741,228. |
| INVESTMENT HELD FOR | FMV | | | | |
| ANI & AGMM | | | | 961,330. | 961,330. |
| TO FORM 990, LINE 54, COL B | | 11,741,228. | | 961,330. | 12,702,558. |

---

| FORM 990 | | GOVERNMENT SECURITIES | | STATEMENT  11 |
|---|---|---|---|---|
| DESCRIPTION | COST/FMV | U.S. GOVERNMENT | STATE AND LOCAL GOV'T | TOTAL GOV'T SECURITIES |
| GOVERNMENT BONDS | FMV | 4,285,726. | | 4,285,726. |
| TOTAL TO FORM 990, LINE 54, COL B | | 4,285,726. | | 4,285,726. |

---

| FORM 990 | DEPRECIATION OF ASSETS NOT HELD FOR INVESTMENT | | STATEMENT  12 |
|---|---|---|---|
| DESCRIPTION | COST OR OTHER BASIS | ACCUMULATED DEPRECIATION | BOOK VALUE |
| FURNITURE AND EQUIPMENT | 931,562. | 783,944. | 147,618. |
| LEASEHOLD IMPROVEMENTS | 34,920. | 34,650. | 270. |
| TOTAL TO FORM 990, PART IV, LN 57 | 966,482. | 818,594. | 147,888. |

---

| FORM 990 | OTHER ASSETS | STATEMENT  13 |
|---|---|---|
| DESCRIPTION | | AMOUNT |
| DEPOSITS | | 15,813. |
| DUE FROM ARMENIAN NATIONAL INSTITUTE | | 12,599. |
| ADVANCES | | 98,381. |
| TOTAL TO FORM 990, PART IV, LINE 58, COLUMN B | | 126,793. |

---

ARMENIAN ASSEMBLY OF AMERICA, INC.                          52-1614093

---

FORM 990                OTHER LIABILITIES                STATEMENT  14

| DESCRIPTION | AMOUNT |
|---|---|
| DUE TO ANI & AGMM | 961,330. |
| REFUNDABLE ADVANCES | 105,017. |
| TOTAL TO FORM 990, PART IV, LINE 65, COLUMN B | 1,066,347. |

---

FORM 990        PART V - LIST OF OFFICERS, DIRECTORS,        STATEMENT  15
                TRUSTEES AND KEY EMPLOYEES

| NAME AND ADDRESS | TITLE AND AVRG HRS/WK | COMPEN-SATION | EMPLOYEE BEN PLAN CONTRIB | EXPENSE ACCOUNT |
|---|---|---|---|---|
| ROSS VARTIAN C/O ORGANIZATION FOR ALL LISTED WASHINGTON, DC 20036 | EXECUTIVE DIRECTOR 40 | 149,746. | 0. | 0. |
| ANTHONY BARSAMIAN | CHAIRMAN 8 | 0. | 0. | 0. |
| LISA ESAYIAN | VICE CHAIRMAN 4 | 0. | 0. | 0. |
| DANIEL AJAMIAN | VICE CHAIRMAN 2.5 | 0. | 0. | 0. |
| ANNIE TOTAH | VICE CHAIRMAN 2.5 | 0. | 0. | 0. |
| BERGE AYVAZIAN | TREASURER 5 | 0. | 0. | 0. |
| BRYAN ARDOUNY | MEMBER 2.5 | 0. | 0. | 0. |
| CHARLES BARSAM | MEMBER .5 | 0. | 0. | 0. |

ARMENIAN ASSEMBLY OF AMERICA, INC.

52-1614093

| | | | | |
|---|---|---|---|---|
| ARDA HARATUNIAN | MEMBER 1 | 0. | 0. | 0. |
| CORINNE HEDITSIAN | MEMBER .5 | 0. | 0. | 0. |
| EDELE HOVNANIAN | MEMBER 1 | 0. | 0. | 0. |
| LISA KALUSTIAN | MEMBER .5 | 0. | 0. | 0. |
| VAN KRIKORIAN | MEMBER 1.5 | 0. | 0. | 0. |
| RICHARD MUSHEGAIN | MEMBER .5 | 0. | 0. | 0. |
| GAIL O'REILLY | MEMBER .5 | 0. | 0. | 0. |
| RALPH TUFENKIAN | MEMBER .5 | 0. | 0. | 0. |
| PETER VOSBIKIAN | MEMBER .5 | 0. | 0. | 0. |
| MURAT ACEMOGLU | MEMBER 1 | 0. | 0. | 0. |
| TOTALS INCLUDED ON FORM 990, PART V | | 149,746. | 0. | 0. |

ARMENIAN ASSEMBLY OF AMERICA, INC.                              52-1614093

---

| SCHEDULE A | OTHER INCOME | | | STATEMENT 16 |
|---|---|---|---|---|

| DESCRIPTION | 2003 AMOUNT | 2002 AMOUNT | 2001 AMOUNT | 2000 AMOUNT |
|---|---|---|---|---|
| MISCELLANEOUS | 15,536. | 0. | 0. | 0. |
| TOTAL TO SCHEDULE A, LINE 22 | 15,536. | 0. | 0. | 0. |

Form **8868**
(Rev. December 2004)

Department of the Treasury
Internal Revenue Service

## Application for Extension of Time To File an Exempt Organization Return

▶ File a separate application for each return

OMB No. 1545-1709

- If you are filing for an **Automatic 3-Month Extension,** complete only Part I and check this box                    ▶ ☒
- If you are filing for an **Additional (not automatic) 3-Month Extension,** complete only Part II (on page 2 of this form).

**Do not complete Part II unless** you have already been granted an automatic 3-month extension on a previously filed Form 8868

| **Part I** | **Automatic 3-Month Extension of Time** - Only submit original (no copies needed) |
| --- | --- |

**Form 990-T corporations** requesting an automatic 6-month extension - check this box and complete Part I only        ▶ ☐

*All other corporations (including Form 990-C filers) must use Form 7004 to request an extension of time to file income tax returns. Partnerships, REMICs, and trusts must use Form 8736 to request an extension of time to file Form 1065, 1066, or 1041.*

**Electronic Filing (e-file).** Form 8868 can be filed electronically if you want a 3-month automatic extension of time to file one of the returns noted below (6 months for corporate Form 990-T filers) However, you cannot file it electronically if you want the additional (not automatic) 3-month extension, instead you must submit the fully completed signed page 2 (Part II) of Form 8868 For more details on the electronic filing of this form, visit *www.irs.gov/efile*

| **Type or print** | Name of Exempt Organization | **Employer identification number** |
| --- | --- | --- |
| | ARMENIAN ASSEMBLY OF AMERICA, INC. | 52-1614093 |
| **File by the due date for filing your return See instructions** | Number, street, and room or suite no If a P O box, see instructions | |
| | 1140 19TH STREET, NW, NO. 600 | |
| | City, town or post office, state, and ZIP code For a foreign address, see instructions | |
| | WASHINGTON, DC 20036 | |

**Check type of return to be filed** (file a separate application for each return)

| | | |
| --- | --- | --- |
| ☒ Form 990 | ☐ Form 990-T (corporation) | ☐ Form 4720 |
| ☐ Form 990-BL | ☐ Form 990-T (sec 401(a) or 408(a) trust) | ☐ Form 5227 |
| ☐ Form 990-EZ | ☐ Form 990-T (trust other than above) | ☐ Form 6069 |
| ☐ Form 990-PF | ☐ Form 1041-A | ☐ Form 8870 |

- The books are in the care of ▶ THE ORGANIZATION
  Telephone No ▶ 202-393-3434                           FAX No ▶
- If the organization does **not** have an office or place of business in the United States, check this box                    ▶ ☐
- If this is for a **Group Return,** enter the organization's four digit Group Exemption Number (GEN) _____ . If this is for the **whole group,** check this box ▶ ☐ If it is for part of the group, check this box ▶ ☐ and attach a list with the names and EINs of all members the extension will cover.

**1** I request an automatic 3-month (6-months for a **Form 990-T corporation**) extension of time until   AUGUST 15, 2005
to file the exempt organization return for the organization named above The extension is for the organization's return for:
  ▶ ☒ calendar year 2004 or
  ▶ ☐ tax year beginning _____ , and ending _____

**2** If this tax year is for less than 12 months, check reason      ☐ Initial return      ☐ Final return      ☐ Change in accounting period

**3a** If this application is for Form 990-BL, 990-PF, 990-T, 4720, or 6069, enter the tentative tax, less any
nonrefundable credits. See instructions                                                    $

**b** If this application is for Form 990-PF or 990-T, enter any refundable credits and estimated
tax payments made. Include any prior year overpayment allowed as a credit                   $

**c** **Balance Due.** Subtract line 3b from line 3a Include your payment with this form, or, if required, deposit with FTD
coupon or, if required, by using EFTPS (Electronic Federal Tax Payment System) See instructions    $    N/A

**Caution.** If you are going to make an electronic fund withdrawal with this Form 8868, see Form 8453-EO and Form 8879-EO for payment instructions.

LHA    **For Privacy Act and Paperwork Reduction Act Notice, see instructions.**                Form **8868** (Rev. 12-2004)

423831
01-10-05

16420707 745960 18186        2004.05060 ARMENIAN ASSEMBLY OF AMERIC 18186__1

Form **990**

Department of the Treasury
Internal Revenue Service

## Return of Organization Exempt From Income Tax

Under section 501(c), 527, or 4947(a)(1) of the Internal Revenue Code (except black lung benefit trust or private foundation)

▶ The organization may have to use a copy of this return to satisfy state reporting requirements.

OMB No. 1545-0047

**2003**

Open to Public Inspection

**A** For the 2003 calendar year, or tax year beginning **OCT 29, 2003** and ending **DEC 31, 2003**

| B Check if applicable | | C Name of organization | D Employer identification number |
|---|---|---|---|
| ☐ Address change | Please use IRS label or print or type. See Specific Instructions. | **ARMENIAN GENOCIDE MUSEUM AND MEMORIAL, INC.** | **20-0344096** |
| ☐ Name change | | Number and street (or P.O. box if mail is not delivered to street address) — Room/suite | E Telephone number |
| ☒ Initial return | | **122 C STREET NW** — **350** | **612-359-8991** |
| ☐ Final return | | City or town, state or country, and ZIP + 4 | F Accounting method: ☐ Cash ☒ Accrual |
| ☐ Amended return | | **WASHINGTON, DC 20001** | ☐ Other (specify) ▶ |
| ☐ Application pending | | | |

● Section 501(c)(3) organizations and 4947(a)(1) nonexempt charitable trusts must attach a completed Schedule A (Form 990 or 990-EZ).

**G** Website: ▶ **WWW.AGMM.ORG**

**J** Organization type (check only one) ▶ ☒ 501(c) ( **3** ) ◀ (insert no.) ☐ 4947(a)(1) or ☐ 527

**K** Check here ▶ ☐ if the organization's gross receipts are normally not more than $25,000. The organization need not file a return with the IRS; but if the organization received a Form 990 Package in the mail, it should file a return without financial data. Some states require a complete return.

**H and I are not applicable to section 527 organizations.**

**H(a)** Is this a group return for affiliates?  ☐ Yes  ☒ No
**H(b)** If "Yes," enter number of affiliates ▶ _____
**H(c)** Are all affiliates included?  **N/A**  ☐ Yes  ☐ No
(If "No," attach a list.)
**H(d)** Is this a separate return filed by an organization covered by a group ruling?  ☐ Yes  ☒ No

**I** Group Exemption Number ▶ _____

**M** Check ▶ ☐ if the organization is **not** required to attach Sch. B (Form 990, 990-EZ, or 990-PF).

**L** Gross receipts: Add lines 6b, 8b, 9b, and 10b to line 12 ▶ **20,343,036.**

### Part I  Revenue, Expenses, and Changes in Net Assets or Fund Balances

| | | | | |
|---|---|---|---|---|
| 1 | Contributions, gifts, grants, and similar amounts received: | | | |
| a | Direct public support | 1a | 20,342,881. | |
| b | Indirect public support | 1b | | |
| c | Government contributions (grants) | 1c | | |
| d | Total (add lines 1a through 1c) (cash $ **12,968,813.** noncash $ **7,374,068.** ) | | | 1d | 20,342,881. |
| 2 | Program service revenue including government fees and contracts (from Part VII, line 93) | | | 2 | |
| 3 | Membership dues and assessments | | | 3 | |
| 4 | Interest on savings and temporary cash investments | | | 4 | 155. |
| 5 | Dividends and interest from securities | | | 5 | |
| 6 a | Gross rents | 6a | | | |
| b | Less: rental expenses | 6b | | | |
| c | Net rental income or (loss) (subtract line 6b from line 6a) | | | 6c | |
| 7 | Other investment income (describe ▶ ) | | | 7 | |
| 8 a | Gross amount from sales of assets other than inventory | (A) Securities 8a | (B) Other | | |
| b | Less: cost or other basis and sales expenses | 8b | | | |
| c | Gain or (loss) (attach schedule) | 8c | | | |
| d | Net gain or (loss) (combine line 8c, columns (A) and (B)) | | | 8d | |
| 9 | Special events and activities (attach schedule). If any amount is from gaming, check here ▶ ☐ | | | | |
| a | Gross revenue (not including $ _____ of contributions reported on line 1a) | 9a | | | |
| b | Less: direct expenses other than fundraising expenses | 9b | | | |
| c | Net income or (loss) from special events (subtract line 9b from line 9a) | | | 9c | |
| 10 a | Gross sales of inventory, less returns and allowances | 10a | | | |
| b | Less: cost of goods sold | 10b | | | |
| c | Gross profit or (loss) from sales of inventory (attach schedule) (subtract line 10b from line 10a) | | | 10c | |
| 11 | Other revenue (from Part VII, line 103) | | | 11 | |
| 12 | **Total revenue** (add lines 1d, 2, 3, 4, 5, 6c, 7, 8d, 9c, 10c, and 11) | | | 12 | 20,343,036. |
| 13 | Program services (from line 44, column (B)) | | | 13 | |
| 14 | Management and general (from line 44, column (C)) | | | 14 | 11,085. |
| 15 | Fundraising (from line 44, column (D)) | | | 15 | |
| 16 | Payments to affiliates (attach schedule) | | | 16 | |
| 17 | **Total expenses** (add lines 16 and 44, column (A)) | | | 17 | 11,085. |
| 18 | Excess or (deficit) for the year (subtract line 17 from line 12) | | | 18 | 20,331,951. |
| 19 | Net assets or fund balances at beginning of year (from line 73, column (A)) | | | 19 | 0. |
| 20 | Other changes in net assets or fund balances (attach explanation) | | | 20 | 0. |
| 21 | Net assets or fund balances at end of year (combine lines 18, 19, and 20) | | | 21 | 20,331,951. |

*(Stamp:)* RECEIVED NOV 1 6 2004 IRS – OSC OGDEN, UT  493

*(Left margin:)* SCANNED  DEC 0 3 2004

323001
12-17-03  **LHA**  For Paperwork Reduction Act Notice, see the separate instructions.

**EXHIBIT 15**  3-13

Form 990 (2003)

ARMENIAN GENOCIDE MUSEUM AND
MEMORIAL, INC.                                    20-0344096

| Part II | Statement of Functional Expenses | | | | | |
|---|---|---|---|---|---|---|

All organizations must complete column (A). Columns (B), (C), and (D) are required for section 501(c)(3) and (4) organizations and section 4947(a)(1) nonexempt charitable trusts but optional for others.    Page 2

| Do not include amounts reported on line 6b, 8b, 9b, 10b, or 16 of Part I | | (A) Total | (B) Program services | (C) Management and general | (D) Fundraising |
|---|---|---|---|---|---|
| 22 Grants and allocations (attach schedule) | 22 | | | | |
| cash $ _____ noncash $ _____ | | | | | |
| 23 Specific assistance to individuals (attach schedule) | 23 | | | | |
| 24 Benefits paid to or for members (attach schedule) | 24 | | | | |
| 25 Compensation of officers, directors, etc. | 25 | 0. | 0. | 0. | 0. |
| 26 Other salaries and wages | 26 | | | | |
| 27 Pension plan contributions | 27 | | | | |
| 28 Other employee benefits | 28 | | | | |
| 29 Payroll taxes | 29 | | | | |
| 30 Professional fundraising fees | 30 | | | | |
| 31 Accounting fees | 31 | | | | |
| 32 Legal fees | 32 | 6,653. | | 6,653. | |
| 33 Supplies | 33 | 66. | | 66. | |
| 34 Telephone | 34 | 109. | | 109. | |
| 35 Postage and shipping | 35 | 8. | | 8. | |
| 36 Occupancy | 36 | | | | |
| 37 Equipment rental and maintenance | 37 | | | | |
| 38 Printing and publications | 38 | 4,217. | | 4,217. | |
| 39 Travel | 39 | | | | |
| 40 Conferences, conventions, and meetings | 40 | | | | |
| 41 Interest | 41 | | | | |
| 42 Depreciation, depletion, etc. (attach schedule) | 42 | | | | |
| 43 Other expenses not covered above (itemize): | | | | | |
| a MISC. EXPENSES | 43a | 32. | | 32. | |
| b | 43b | | | | |
| c | 43c | | | | |
| d | 43d | | | | |
| e | 43e | | | | |
| 44 Total functional expenses (add lines 22 through 43). Organizations completing columns (B)-(D), carry these totals to lines 13-15 | 44 | 11,085. | 0. | 11,085. | 0. |

Joint Costs. Check ▶ ☐ if you are following SOP 98-2.

Are any joint costs from a combined educational campaign and fundraising solicitation reported in (B) Program services?    ▶ ☐ Yes  ☒ No

If "Yes," enter (i) the aggregate amount of these joint costs $ _____ ; (ii) the amount allocated to Program services $ _____ ;

(iii) the amount allocated to Management and general $ _____ ; and (iv) the amount allocated to Fundraising $ _____

| Part III | Statement of Program Service Accomplishments | |
|---|---|---|

What is the organization's primary exempt purpose? ▶ _____

SEE STATEMENT 1

All organizations must describe their exempt purpose achievements in a clear and concise manner. State the number of clients served, publications issued, etc. Discuss achievements that are not measurable. (Section 501(c)(3) and (4) organizations and 4947(a)(1) nonexempt charitable trusts must also enter the amount of grants and allocations to others.)

Program Service Expenses
(Required for 501(c)(3) and (4) orgs., and 4947(a)(1) trusts; but optional for others.)

a SEE STATEMENT 1

_____
_____
_____
(Grants and allocations $  0.)    0.

b _____
_____
_____
(Grants and allocations $  )

c _____
_____
_____
(Grants and allocations $  )

d _____
_____
_____
(Grants and allocations $  )

e Other program services (attach schedule)    (Grants and allocations $  )
f Total of Program Service Expenses (should equal line 44, column (B), Program services)    ▶    0.

Form 990 (2003)

Form 990 (2003)

ARMENIAN GENOCIDE MUSEUM AND
MEMORIAL, INC.                                          20-0344096    Page 3

### Part IV | Balance Sheets

Note: *Where required, attached schedules and amounts within the description column should be for end-of-year amounts only*

| | | | | (A) Beginning of year | | (B) End of year |
|---|---|---|---|---|---|---|
| **Assets** | 45 | Cash - non-interest-bearing | | | 45 | 864,349. |
| | 46 | Savings and temporary cash investments | | | 46 | |
| | 47 a | Accounts receivable | 47a | 5,200. | | |
| | b | Less: allowance for doubtful accounts | 47b | | 47c | 5,200. |
| | 48 a | Pledges receivable | 48a | 3,342,838. | | |
| | b | Less: allowance for doubtful accounts | 48b | 1,119,976. | 48c | 2,222,862. |
| | 49 | Grants receivable | | | 49 | |
| | 50 | Receivables from officers, directors, trustees, and key employees | | | 50 | |
| | 51 a | Other notes and loans receivable | 51a | | | |
| | b | Less: allowance for doubtful accounts | 51b | | 51c | |
| | 52 | Inventories for sale or use | | | 52 | |
| | 53 | Prepaid expenses and deferred charges | | | 53 | |
| | 54 | Investments - securities ▶ ☐ Cost ☐ FMV | | | 54 | |
| | 55 a | Investments - land, buildings, and equipment basis | 55a | | | |
| | b | Less: accumulated depreciation | 55b | | 55c | |
| | 56 | Investments - other | | | 56 | |
| | 57 a | Land, buildings, and equipment: basis | 57a | 19,934,540. | | |
| | b | Less: accumulated depreciation | 57b | | 57c | 19,934,540. |
| | 58 | Other assets (describe ▶ _____ ) | | | 58 | 0. |
| | 59 | **Total assets (add lines 45 through 58) (must equal line 74)** | | 0. | 59 | 23,026,951. |
| **Liabilities** | 60 | Accounts payable and accrued expenses | | | 60 | 764,976. |
| | 61 | Grants payable | | | 61 | |
| | 62 | Deferred revenue | | | 62 | |
| | 63 | Loans from officers, directors, trustees, and key employees   STMT 3 | | | 63 | 500,000. |
| | 64 a | Tax-exempt bond liabilities | | | 64a | |
| | b | Mortgages and other notes payable | | | 64b | 1,430,024. |
| | 65 | Other liabilities (describe ▶ _____ ) | | | 65 | 0. |
| | 66 | **Total liabilities (add lines 60 through 65)** | | 0. | 66 | 2,695,000. |
| **Net Assets or Fund Balances** | | Organizations that follow SFAS 117, check here ▶ ☒ and complete lines 67 through 69 and lines 73 and 74. | | | | |
| | 67 | Unrestricted | | | 67 | 822,893. |
| | 68 | Temporarily restricted | | | 68 | 19,499,058. |
| | 69 | Permanently restricted | | | 69 | 10,000. |
| | | Organizations that do not follow SFAS 117, check here ▶ ☐ and complete lines 70 through 74. | | | | |
| | 70 | Capital stock, trust principal, or current funds | | | 70 | |
| | 71 | Paid-in or capital surplus, or land, building, and equipment fund | | | 71 | |
| | 72 | Retained earnings, endowment, accumulated income, or other funds | | | 72 | |
| | 73 | **Total net assets or fund balances** (add lines 67 through 69 or lines 70 through 72; column (A) must equal line 19; column (B) must equal line 21) | | 0. | 73 | 20,331,951. |
| | 74 | **Total liabilities and net assets / fund balances** (add lines 66 and 73) | | 0. | 74 | 23,026,951. |

Form 990 is available for public inspection and, for some people, serves as the primary or sole source of information about a particular organization. How the public perceives an organization in such cases may be determined by the information presented on its return. Therefore, please make sure the return is complete and accurate and fully describes, in Part III, the organization's programs and accomplishments.

323021
12-17-03

ARMENIAN GENOCIDE MUSEUM AND
MEMORIAL, INC.

Form 990 (2003)                                           20-0344096        Page 4

| Part IV-A | Reconciliation of Revenue per Audited Financial Statements with Revenue per Return | | Part IV-B | Reconciliation of Expenses per Audited Financial Statements with Expenses per Return | |
|---|---|---|---|---|---|
| a | Total revenue, gains, and other support per audited financial statements ▶ | a  N/A | a | Total expenses and losses per audited financial statements ▶ | a  N/A |
| b | Amounts included on line a but not on line 12, Form 990: | | b | Amounts included on line a but not on line 17, Form 990: | |
| (1) | Net unrealized gains on investments  $_____ | | (1) | Donated services and use of facilities  $_____ | |
| (2) | Donated services and use of facilities  $_____ | | (2) | Prior year adjustments reported on line 20, Form 990  $_____ | |
| (3) | Recoveries of prior year grants  $_____ | | (3) | Losses reported on line 20, Form 990  $_____ | |
| (4) | Other (specify): _____ $_____ | | (4) | Other (specify): _____ $_____ | |
| | Add amounts on lines (1) through (4) ▶ | b | | Add amounts on lines (1) through (4) ▶ | b |
| c | Line a minus line b ▶ | c | c | Line a minus line b ▶ | c |
| d | Amounts included on line 12, Form 990 but not on line a: | | d | Amounts included on line 17, Form 990 but not on line a: | |
| (1) | Investment expenses not included on line 6b, Form 990  $_____ | | (1) | Investment expenses not included on line 6b, Form 990  $_____ | |
| (2) | Other (specify): _____ $_____ | | (2) | Other (specify): _____ $_____ | |
| | Add amounts on lines (1) and (2) ▶ | d | | Add amounts on lines (1) and (2) ▶ | d |
| e | Total revenue per line 12, Form 990 (line c plus line d) ▶ | e | e | Total expenses per line 17, Form 990 (line c plus line d) ▶ | e |

| Part V | List of Officers, Directors, Trustees, and Key Employees (List each one even if not compensated.) | | | | |
|---|---|---|---|---|---|
| | (A) Name and address | (B) Title and average hours per week devoted to position | (C) Compensation (If not paid, enter -0-.) | (D) Contributions to employee benefit plans & deferred compensation | (E) Expense account and other allowances |
| | GERARD L. CAFESJIAN 122 C STREET, SUITE 360 WASHINGTON, DC 20001 | CHAIRMAN/PRESIDENT AS NEEDED | 0. | 0. | 0. |
| | HIRAIR S. HOVNANIAN 122 C STREET, SUITE 360 WASHINGTON, DC 20001 | VICE CHAIRMAN AS NEEDED | 0. | 0. | 0. |
| | ANOUSH MATHEVOSIAN 122 C STREET, SUITE 360 WASHINGTON, DC 20001 | TRUSTEE AS NEEDED | 0. | 0. | 0. |
| | ROBERT A. KALOOSDIAN 122 C STREET, SUITE 360 WASHINGTON, DC 20001 | TRUSTEE AS NEEDED | 0. | 0. | 0. |
| | PETER VOSBIKIAN 122 C STREET, SUITE 360 WASHINGTON, DC 20001 | TRUSTEE AS NEEDED | 0. | 0. | 0. |
| | JOHN WATERS JR. 122 C STREET, SUITE 360 WASHINGTON, DC 20001 | SECRETARY/TREASURER AS NEEDED | 0. | 0. | 0. |
| | | | | | |

**75**  Did any officer, director, trustee, or key employee receive aggregate compensation of more than $100,000 from your organization and all related organizations, of which more than $10,000 was provided by the related organizations? If "Yes," attach schedule. ▶ ☐ Yes ☒ No

323031  12-17-03                                              Form 990 (2003)

ARMENIAN GENOCIDE MUSEUM AND
MEMORIAL, INC.

Form 990 (2003)    20-0344096    Page 5

| Part VI | Other Information | | Yes | No |
|---|---|---|---|---|

| | | | Yes | No |
|---|---|---|---|---|
| 76 | Did the organization engage in any activity not previously reported to the IRS? If "Yes," attach a detailed description of each activity | 76 | | X |
| 77 | Were any changes made in the organizing or governing documents but not reported to the IRS? | 77 | | X |
| | If "Yes," attach a conformed copy of the changes. | | | |
| 78 a | Did the organization have unrelated business gross income of $1,000 or more during the year covered by this return? | 78a | | X |
| b | If "Yes," has it filed a tax return on Form 990-T for this year?    N/A | 78b | | |
| 79 | Was there a liquidation, dissolution, termination, or substantial contraction during the year? | 79 | | X |
| | If "Yes," attach a statement | | | |
| 80 a | Is the organization related (other than by association with a statewide or nationwide organization) through common membership, governing bodies, trustees, officers, etc., to any other exempt or nonexempt organization? | 80a | X | |
| b | If "Yes," enter the name of the organization ▶ ARMENIAN NATIONAL INSTITUTE, INC. | | | |
| | and check whether it is [X] exempt or [ ] nonexempt. | | | |
| 81 a | Enter direct or indirect political expenditures. See line 81 instructions | 81a | 0. | |
| b | Did the organization file Form 1120-POL for this year? | 81b | | X |
| 82 a | Did the organization receive donated services or the use of materials, equipment, or facilities at no charge or at substantially less than fair rental value? | 82a | | X |
| b | If "Yes," you may indicate the value of these items here. Do not include this amount as revenue in Part I or as an expense in Part II. (See instructions in Part III.)    82b    N/A | | | |
| 83 a | Did the organization comply with the public inspection requirements for returns and exemption applications? | 83a | X | |
| b | Did the organization comply with the disclosure requirements relating to quid pro quo contributions? | 83b | X | |
| 84 a | Did the organization solicit any contributions or gifts that were not tax deductible? | 84a | | X |
| b | If "Yes," did the organization include with every solicitation an express statement that such contributions or gifts were not tax deductible?    N/A | 84b | | |
| 85 | 501(c)(4), (5), or (6) organizations. a Were substantially all dues nondeductible by members?    N/A | 85a | | |
| b | Did the organization make only in-house lobbying expenditures of $2,000 or less?    N/A | 85b | | |
| | If "Yes" was answered to either 85a or 85b, do not complete 85c through 85h below unless the organization received a waiver for proxy tax owed for the prior year. | | | |
| c | Dues, assessments, and similar amounts from members    85c    N/A | | | |
| d | Section 162(e) lobbying and political expenditures    85d    N/A | | | |
| e | Aggregate nondeductible amount of section 6033(e)(1)(A) dues notices    85e    N/A | | | |
| f | Taxable amount of lobbying and political expenditures (line 85d less 85e)    85f    N/A | | | |
| g | Does the organization elect to pay the section 6033(e) tax on the amount on line 85f?    N/A | 85g | | |
| h | If section 6033(e)(1)(A) dues notices were sent, does the organization agree to add the amount on line 85f to its reasonable estimate of dues allocable to nondeductible lobbying and political expenditures for the following tax year?    N/A | 85h | | |
| 86 | 501(c)(7) organizations. Enter: a Initiation fees and capital contributions included on line 12    86a    N/A | | | |
| b | Gross receipts, included on line 12, for public use of club facilities    86b    N/A | | | |
| 87 | 501(c)(12) organizations. Enter: a Gross income from members or shareholders    87a    N/A | | | |
| b | Gross income from other sources. (Do not net amounts due or paid to other sources against amounts due or received from them.)    87b    N/A | | | |
| 88 | At any time during the year, did the organization own a 50% or greater interest in a taxable corporation or partnership, or an entity disregarded as separate from the organization under Regulations sections 301.7701-2 and 301.7701-3? If "Yes," complete Part IX | 88 | | X |
| 89 a | 501(c)(3) organizations. Enter: Amount of tax imposed on the organization during the year under: section 4911 ▶ 0. ; section 4912 ▶ 0. ; section 4955 ▶ 0. | | | |
| b | 501(c)(3) and 501(c)(4) organizations. Did the organization engage in any section 4958 excess benefit transaction during the year or did it become aware of an excess benefit transaction from a prior year? If "Yes," attach a statement explaining each transaction | 89b | | X |
| c | Enter: Amount of tax imposed on the organization managers or disqualified persons during the year under sections 4912, 4955, and 4958    ▶ 0. | | | |
| d | Enter: Amount of tax on line 89c, above, reimbursed by the organization    ▶ 0. | | | |
| 90 a | List the states with which a copy of this return is filed ▶ WASHINGTON, D.C. | | | |
| b | Number of employees employed in the pay period that includes March 12, 2003    90b | | | 0 |
| 91 | The books are in care of ▶ JOHN WATERS JR.    Telephone no. ▶ 612-359-8991 | | | |
| | Located at ▶ 15 SOUTH FIFTH STREET, STE 900, MINNEAPOLIS, MN    ZIP + 4 ▶ 55402 | | | |
| 92 | Section 4947(a)(1) nonexempt charitable trusts filing Form 990 in lieu of Form 1041 - Check here    ▶ [ ] | | | |
| | and enter the amount of tax-exempt interest received or accrued during the tax year    ▶ 92    N/A | | | |

323041
12-17-03

Form 990 (2003)

ARMENIAN GENOCIDE MUSEUM AND
MEMORIAL, INC.

Form 990 (2003)　　　　　　　　　　　　　　　　　　　　　　　　　20-0344096　　Page 6

## Part VII | Analysis of Income-Producing Activities (See page 33 of the instructions.)

Note: Enter gross amounts unless otherwise indicated.

| | | Unrelated business income | | Excluded by section 512, 513, or 514 | | (E)<br>Related or exempt<br>function income |
|---|---|---|---|---|---|---|
| | | (A)<br>Business<br>code | (B)<br>Amount | (C)<br>Exclu-<br>sion<br>code | (D)<br>Amount | |
| 93 Program service revenue: | | | | | | |
| a | | | | | | |
| b | | | | | | |
| c | | | | | | |
| d | | | | | | |
| e | | | | | | |
| f Medicare/Medicaid payments | | | | | | |
| g Fees and contracts from government agencies | | | | | | |
| 94 Membership dues and assessments | | | | | | |
| 95 Interest on savings and temporary cash investments | | | | 14 | 155. | |
| 96 Dividends and interest from securities | | | | | | |
| 97 Net rental income or (loss) from real estate: | | | | | | |
| a debt-financed property | | | | | | |
| b not debt-financed property | | | | | | |
| 98 Net rental income or (loss) from personal property | | | | | | |
| 99 Other investment income | | | | | | |
| 100 Gain or (loss) from sales of assets other than inventory | | | | | | |
| 101 Net income or (loss) from special events | | | | | | |
| 102 Gross profit or (loss) from sales of inventory | | | | | | |
| 103 Other revenue: | | | | | | |
| a | | | | | | |
| b | | | | | | |
| c | | | | | | |
| d | | | | | | |
| e | | | | | | |
| 104 Subtotal (add columns (B), (D), and (E)) | | | 0. | | 155. | 0. |
| 105 Total (add line 104, columns (B), (D), and (E)) | | | | | ▶ | 155. |

Note: Line 105 plus line 1d, Part I, should equal the amount on line 12, Part I.

## Part VIII | Relationship of Activities to the Accomplishment of Exempt Purposes (See page 34 of the instructions.)

| Line No.<br>▼ | Explain how each activity for which income is reported in column (E) of Part VII contributed importantly to the accomplishment of the organization's exempt purposes (other than by providing funds for such purposes). |
|---|---|
| | N/A |
| | |
| | |

## Part IX | Information Regarding Taxable Subsidiaries and Disregarded Entities (See page 34 of the instructions.)

| (A)<br>Name, address, and EIN of corporation,<br>partnership, or disregarded entity | (B)<br>Percentage of<br>ownership interest | (C)<br>Nature of activities | (D)<br>Total income | (E)<br>End-of-year<br>assets |
|---|---|---|---|---|
| | % | | | |
| N/A | % | | | |
| | % | | | |
| | % | | | |

## Part X | Information Regarding Transfers Associated with Personal Benefit Contracts (See page 34 of the instructions.)

(a) Did the organization, during the year, receive any funds, directly or indirectly, to pay premiums on a personal benefit contract? ☐ Yes ☒ No

(b) Did the organization, during the year, pay premiums, directly or indirectly, on a personal benefit contract? ☐ Yes ☒ No

Note: If "Yes" to (b), file Form 8870 and Form 4720 (see instructions).

| Please<br>Sign<br>Here | Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than officer) is based on all information of which preparer has any knowledge | | |
|---|---|---|---|
| | ▶ Signature of officer | 11/9/04<br>Date | ▶ JOHN J. WATERS, JR  SECRETARY<br>Type or print name and title. |

| Paid<br>Preparer's<br>Use Only | Preparer's<br>signature ▶ Sara Metho | Date<br>11/9/04 | Check if<br>self-<br>employed ▶ ☐ | Preparer's SSN or PTIN<br>P00374952 |
|---|---|---|---|---|
| | Firm's name (or<br>yours if<br>self-employed),<br>address, and<br>ZIP + 4 | DELOITTE TAX LLP<br>120 SOUTH SIXTH STREET, SUITE 400<br>MINNEAPOLIS, MN 55402 | EIN ▶ 86-1065772 | |
| 323161<br>12-17-03 | | | Phone no. ▶ 612-397-4000 | |

Form 990 (2003)

**SCHEDULE A**
(Form 990 or 990-EZ)

Department of the Treasury
Internal Revenue Service

# Organization Exempt Under Section 501(c)(3)

(Except Private Foundation) and Section 501(e), 501(f), 501(k),
501(n), or Section 4947(a)(1) Nonexempt Charitable Trust
**Supplementary Information-(See separate instructions.)**
► MUST be completed by the above organizations and attached to their Form 990 or 990-EZ

OMB No 1545-0047

## 2003

| Name of the organization | Employer identification number |
|---|---|
| ARMENIAN GENOCIDE MUSEUM AND MEMORIAL, INC. | 20 0344096 |

**Part I** Compensation of the Five Highest Paid Employees Other Than Officers, Directors, and Trustees

(See page 1 of the instructions. List each one. If there are none, enter "None.")

| (a) Name and address of each employee paid more than $50,000 | (b) Title and average hours per week devoted to position | (c) Compensation | (d) Contributions to employee benefit plans & deferred compensation | (e) Expense account and other allowances |
|---|---|---|---|---|
| NONE | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

Total number of other employees paid over $50,000 ► 0

**Part II** Compensation of the Five Highest Paid Independent Contractors for Professional Services

(See page 2 of the instructions. List each one (whether individuals or firms). If there are none, enter "None.")

| (a) Name and address of each independent contractor paid more than $50,000 | (b) Type of service | (c) Compensation |
|---|---|---|
| NONE | | |
| | | |
| | | |
| | | |
| | | |

Total number of others receiving over $50,000 for professional services ► 0

323101/12-05-03    LHA    **For Paperwork Reduction Act Notice, see the Instructions for Form 990 and Form 990-EZ**    Schedule A (Form 990 or 990-EZ) 2003

ARMENIAN GENOCIDE MUSEUM AND

Schedule A (Form 990 or 990-EZ) 2003 **MEMORIAL, INC.**                                    20-0344096  Page 2

| **Part III** | **Statements About Activities** (See page 2 of the instructions.) | | Yes | No |
|---|---|---|---|---|

1  During the year, has the organization attempted to influence national, state, or local legislation, including any attempt to influence public opinion on a legislative matter or referendum? If "Yes," enter the total expenses paid or incurred in connection with the lobbying activities ▶ $ _____      $ _____ (Must equal amounts on line 38, Part VI-A, or line i of Part VI-B.)

| | | 1 | | X |
|---|---|---|---|---|

  Organizations that made an election under section 501(h) by filing Form 5768 must complete Part VI-A. Other organizations checking "Yes," must complete Part VI-B AND attach a statement giving a detailed description of the lobbying activities.

2  During the year, has the organization, either directly or indirectly, engaged in any of the following acts with any substantial contributors, trustees, directors, officers, creators, key employees, or members of their families, or with any taxable organization with which any such person is affiliated as an officer, director, trustee, majority owner, or principal beneficiary? *(If the answer to any question is "Yes," attach a detailed statement explaining the transactions.)*

a  Sale, exchange, or leasing of property?                    STMT 2

| | | 2a | X | |
|---|---|---|---|---|

b  Lending of money or other extension of credit?

| | | 2b | | X |

c  Furnishing of goods, services, or facilities?

| | | 2c | | X |

d  Payment of compensation (or payment or reimbursement of expenses if more than $1,000)?

| | | 2d | | X |

e  Transfer of any part of its income or assets?

| | | 2e | | X |

3 a  Do you make grants for scholarships, fellowships, student loans, etc.? (If "Yes," attach an explanation of how you determine that recipients qualify to receive payments.)

| | | 3a | | X |

b  Do you have a section 403(b) annuity plan for your employees?

| | | 3b | | X |

4  Did you maintain any separate account for participating donors where donors have the right to provide advice on the use or distribution of funds?

| | | 4 | | X |

| **Part IV** | **Reason for Non-Private Foundation Status** (See pages 3 through 6 of the instructions.) |
|---|---|

The organization is not a private foundation because it is: (Please check only ONE applicable box.)

5  ☐  A church, convention of churches, or association of churches. Section 170(b)(1)(A)(i).

6  ☐  A school. Section 170(b)(1)(A)(ii). (Also complete Part V.)

7  ☐  A hospital or a cooperative hospital service organization. Section 170(b)(1)(A)(iii).

8  ☐  A Federal, state, or local government or governmental unit. Section 170(b)(1)(A)(v).

9  ☐  A medical research organization operated in conjunction with a hospital. Section 170(b)(1)(A)(iii). Enter the hospital's name, city, and state ▶ _____

10  ☐  An organization operated for the benefit of a college or university owned or operated by a governmental unit. Section 170(b)(1)(A)(iv). (Also complete the **Support Schedule** in Part IV-A.)

11a  ☒  An organization that normally receives a substantial part of its support from a governmental unit or from the general public. Section 170(b)(1)(A)(vi). (Also complete the **Support Schedule** in Part IV-A.)

11b  ☐  A community trust. Section 170(b)(1)(A)(vi). (Also complete the **Support Schedule** in Part IV-A.)

12  ☐  An organization that normally receives: (1) more than 33 1/3% of its support from contributions, membership fees, and gross receipts from activities related to its charitable, etc., functions - subject to certain exceptions, and (2) no more than 33 1/3% of its support from gross investment income and unrelated business taxable income (less section 511 tax) from businesses acquired by the organization after June 30, 1975. See section 509(a)(2). (Also complete the **Support Schedule** in Part IV-A.)

13  ☐  An organization that is not controlled by any disqualified persons (other than foundation managers) and supports organizations described in: (1) lines 5 through 12 above; or (2) section 501(c)(4), (5), or (6), if they meet the test of section 509(a)(2). (See section 509(a)(3).)

Provide the following information about the supported organizations. (See page 5 of the instructions.)

| **(a)** Name(s) of supported organization(s) | **(b)** Line number from above |
|---|---|
| | |
| | |
| | |

14  ☐  An organization organized and operated to test for public safety. Section 509(a)(4). (See page 6 of the instructions.)

**Schedule A (Form 990 or 990-EZ) 2003**

ARMENIAN GENOCIDE MUSEUM AND
MEMORIAL, INC.

Schedule A (Form 990 or 990-EZ) 2003    20-0344096    Page 3

| **Part IV-A** | Support Schedule (Complete only if you checked a box on line 10, 11, or 12.) Use cash method of accounting. |
| --- | --- |
| | Note: *You may use the worksheet in the instructions for converting from the accrual to the cash method of accounting.* |

| Calendar year (or fiscal year beginning in) ▶ | (a) 2002 | (b) 2001 | (c) 2000 | (d) 1999 | (e) Total |
| --- | --- | --- | --- | --- | --- |
| 15  Gifts, grants, and contributions received. (Do not include unusual grants. See line 28.) | | | | | |
| 16  Membership fees received | | | | | |
| 17  Gross receipts from admissions, merchandise sold or services performed, or furnishing of facilities in any activity that is related to the organization's charitable, etc., purpose | | INITIAL YEAR | | | |
| 18  Gross income from interest, dividends, amounts received from payments on securities loans (section 512(a)(5)), rents, royalties, and unrelated business taxable income (less section 511 taxes) from businesses acquired by the organization after June 30, 1975 | | | | | |
| 19  Net income from unrelated business activities not included in line 18 | | | | | |
| 20  Tax revenues levied for the organization's benefit and either paid to it or expended on its behalf | | | | | |
| 21  The value of services or facilities furnished to the organization by a governmental unit without charge. Do not include the value of services or facilities generally furnished to the public without charge | | | | | |
| 22  Other income. Attach a schedule. Do not include gain or (loss) from sale of capital assets | | | | | |
| 23  Total of lines 15 through 22 | 0. | 0. | 0. | 0. | 0. |
| 24  Line 23 minus line 17 | | | | | |
| 25  Enter 1% of line 23 | | | | | |

| 26 | Organizations described on lines 10 or 11:  a  Enter 2% of amount in column (e), line 24 | ▶ | 26a | |
| --- | --- | --- | --- | --- |
| b | Prepare a list for your records to show the name of and amount contributed by each person (other than a governmental unit or publicly supported organization) whose total gifts for 1999 through 2002 exceeded the amount shown in line 26a. Do not file this list with your return. Enter the total of all these excess amounts | ▶ | 26b | 0. |
| c | Total support for section 509(a)(1) test. Enter line 24, column (e) | ▶ | 26c | |
| d | Add: Amounts from column (e) for lines:    18 _____    19 _____    22 _____    26b _____ | ▶ | 26d | |
| e | Public support (line 26c minus line 26d total) | ▶ | 26e | |
| f | Public support percentage (line 26e (numerator) divided by line 26c (denominator)) | ▶ | 26f | % |

27  Organizations described on line 12: a For amounts included in lines 15, 16, and 17 that were received from a "disqualified person," prepare a list for your records to show the name of, and total amounts received in each year from, each "disqualified person." **Do not file this list with your return.** Enter the sum of such amounts for each year:    **N/A**

(2002)        (2001)        (2000)        (1999)

b  For any amount included in line 17 that was received from each person (other than "disqualified persons"), prepare a list for your records to show the name of, and amount received for each year, that was more than the **larger** of **(1)** the amount on line 25 for the year or **(2)** $5,000. (Include in the list organizations described in lines 5 through 11, as well as individuals.) **Do not file this list with your return.** After computing the difference between the amount received and the larger amount described in **(1)** or **(2)**, enter the sum of these differences (the excess amounts) for each year:    **N/A**

(2002)        (2001)        (2000)        (1999)

| c | Add: Amounts from column (e) for lines:    15 _____    16 _____    17 _____    20 _____    21 _____ | ▶ | 27c | N/A |
| --- | --- | --- | --- | --- |
| d | Add: Line 27a total _____    and line 27b total _____ | ▶ | 27d | N/A |
| e | Public support (line 27c total minus line 27d total) | ▶ | 27e | N/A |
| f | Total support for section 509(a)(2) test: Enter amount on line 23, column (e)    ▶  27f    N/A | | | |
| g | Public support percentage (line 27e (numerator) divided by line 27f (denominator)) | ▶ | 27g | N/A % |
| h | Investment income percentage (line 18, column (e) (numerator) divided by line 27f (denominator)) | ▶ | 27h | N/A % |

28  **Unusual Grants:** For an organization described in line 10, 11, or 12 that received any unusual grants during 1999 through 2002, prepare a list for your records to show, for each year, the name of the contributor, the date and amount of the grant, and a brief description of the nature of the grant. **Do not file this list with your return. Do not include these grants in line 15.**

323121 12-05-03                    NONE                    Schedule A (Form 990 or 990-EZ) 2003

ARMENIAN GENOCIDE MUSEUM AND

Schedule A (Form 990 or 990-EZ) 2003 MEMORIAL, INC.                                    20-0344096  Page 4

| **Part V** | **Private School Questionnaire** (See page 7 of the instructions.) | N/A |

**(To be completed ONLY by schools that checked the box on line 6 in Part IV)**

| | | | Yes | No |
|---|---|---|---|---|
| 29 | Does the organization have a racially nondiscriminatory policy toward students by statement in its charter, bylaws, other governing instrument, or in a resolution of its governing body? | 29 | | |
| 30 | Does the organization include a statement of its racially nondiscriminatory policy toward students in all its brochures, catalogues, and other written communications with the public dealing with student admissions, programs, and scholarships? | 30 | | |
| 31 | Has the organization publicized its racially nondiscriminatory policy through newspaper or broadcast media during the period of solicitation for students, or during the registration period if it has no solicitation program, in a way that makes the policy known to all parts of the general community it serves? If "Yes," please describe; if "No," please explain. (If you need more space, attach a separate statement.) | 31 | | |
| 32 | Does the organization maintain the following: | | | |
| a | Records indicating the racial composition of the student body, faculty, and administrative staff? | 32a | | |
| b | Records documenting that scholarships and other financial assistance are awarded on a racially nondiscriminatory basis? | 32b | | |
| c | Copies of all catalogues, brochures, announcements, and other written communications to the public dealing with student admissions, programs, and scholarships? | 32c | | |
| d | Copies of all material used by the organization or on its behalf to solicit contributions? If you answered "No" to any of the above, please explain. (If you need more space, attach a separate statement.) | 32d | | |
| 33 | Does the organization discriminate by race in any way with respect to: | | | |
| a | Students' rights or privileges? | 33a | | |
| b | Admissions policies? | 33b | | |
| c | Employment of faculty or administrative staff? | 33c | | |
| d | Scholarships or other financial assistance? | 33d | | |
| e | Educational policies? | 33e | | |
| f | Use of facilities? | 33f | | |
| g | Athletic programs? | 33g | | |
| h | Other extracurricular activities? If you answered "Yes" to any of the above, please explain. (If you need more space, attach a separate statement.) | 33h | | |
| 34 a | Does the organization receive any financial aid or assistance from a governmental agency? | 34a | | |
| b | Has the organization's right to such aid ever been revoked or suspended? If you answered "Yes" to either 34a or b, please explain using an attached statement. | 34b | | |
| 35 | Does the organization certify that it has complied with the applicable requirements of sections 4.01 through 4.05 of Rev. Proc. 75-50, 1975-2 C.B. 587, covering racial nondiscrimination? If "No," attach an explanation | 35 | | |

Schedule A (Form 990 or 990-EZ) 2003

323131
12-05-03

ARMENIAN GENOCIDE MUSEUM AND

Schedule A (Form 990 or 990-EZ) 2003 MEMORIAL, INC.          20-0344096   Page 5

**Part VI-A** - **Lobbying Expenditures by Electing Public Charities** (See page 9 of the instructions.)
(To be completed **ONLY** by an eligible organization that filed Form 5768)

Check ▶ a ☐ if the organization belongs to an affiliated group.    Check ▶ b ☐ if you checked "a" and "limited control" provisions apply.

| | | (a) Affiliated group totals | (b) To be completed for ALL electing organizations |
|---|---|---|---|
| **Limits on Lobbying Expenditures** (The term "expenditures" means amounts paid or incurred.) | | | |
| 36  Total lobbying expenditures to influence public opinion (grassroots lobbying) | 36 | | |
| 37  Total lobbying expenditures to influence a legislative body (direct lobbying) | 37 | | |
| 38  Total lobbying expenditures (add lines 36 and 37) | 38 | | |
| 39  Other exempt purpose expenditures | 39 | | 11,085. |
| 40  Total exempt purpose expenditures (add lines 38 and 39) | 40 | | 11,085. |
| 41  Lobbying nontaxable amount. Enter the amount from the following table - | | | |

| If the amount on line 40 is - | The lobbying nontaxable amount is - | | | |
|---|---|---|---|---|
| Not over $500,000 | 20% of the amount on line 40 | | | |
| Over $500,000 but not over $1,000,000 | $100,000 plus 15% of the excess over $500,000 | | | |
| Over $1,000,000 but not over $1,500,000 | $175,000 plus 10% of the excess over $1,000,000 | 41 | | 2,217. |
| Over $1,500,000 but not over $17,000,000 | $225,000 plus 5% of the excess over $1,500,000 | | | |
| Over $17,000,000 | $1,000,000 | | | |

| | | | |
|---|---|---|---|
| 42  Grassroots nontaxable amount (enter 25% of line 41) | 42 | | 554. |
| 43  Subtract line 42 from line 36. Enter -0- if line 42 is more than line 36 | 43 | | |
| 44  Subtract line 41 from line 38. Enter -0- if line 41 is more than line 38 | 44 | | |

**Caution:** *If there is an amount on either line 43 or line 44, you must file Form 4720*

### 4-Year Averaging Period Under Section 501(h)
(Some organizations that made a section 501(h) election do not have to complete all of the five columns below. See the instructions for lines 45 through 50 on page 11 of the instructions.)

| Calendar year (or fiscal year beginning in) ▶ | Lobbying Expenditures During 4-Year Averaging Period | | | | |
|---|---|---|---|---|---|
| | (a) 2003 | (b) 2002 | (c) 2001 | (d) 2000 | (e) Total |
| 45  Lobbying nontaxable amount | 2,217. | | | | 2,217. |
| 46  Lobbying ceiling amount (150% of line 45(e)) | | | | | 3,326. |
| 47  Total lobbying expenditures | | | | | 0. |
| 48  Grassroots nontaxable amount | 554. | | | | 554. |
| 49  Grassroots ceiling amount (150% of line 48(e)) | | | | | 831. |
| 50  Grassroots lobbying expenditures | | | | | 0. |

**Part VI-B**  **Lobbying Activity by Nonelecting Public Charities**
(For reporting only by organizations that did not complete Part VI-A) (See page 12 of the instructions.)    **N/A**

| During the year, did the organization attempt to influence national, state or local legislation, including any attempt to influence public opinion on a legislative matter or referendum, through the use of: | Yes | No | Amount |
|---|---|---|---|
| a  Volunteers | | | |
| b  Paid staff or management (Include compensation in expenses reported on lines c through h.) | | | |
| c  Media advertisements | | | |
| d  Mailings to members, legislators, or the public | | | |
| e  Publications, or published or broadcast statements | | | |
| f  Grants to other organizations for lobbying purposes | | | |
| g  Direct contact with legislators, their staffs, government officials, or a legislative body | | | |
| h  Rallies, demonstrations, seminars, conventions, speeches, lectures, or any other means | | | |
| i  Total lobbying expenditures (Add lines c through h.) | | | 0. |
| If "Yes" to any of the above, also attach a statement giving a detailed description of the lobbying activities. | | | |

323141
12-05-03

Schedule A (Form 990 or 990-EZ) 2003

ARMENIAN GENOCIDE MUSEUM AND

Schedule A (Form 990 or 990-EZ) 2003  MEMORIAL, INC.                                    20-0344096   Page 6

| Part VII | Information Regarding Transfers To and Transactions and Relationships With Noncharitable Exempt Organizations (See page 12 of the instructions.) |

51    Did the reporting organization directly or indirectly engage in any of the following with any other organization described in section
      501(c) of the Code (other than section 501(c)(3) organizations) or in section 527, relating to political organizations?

|   |   | Yes | No |
|---|---|---|---|
| a  Transfers from the reporting organization to a noncharitable exempt organization of: | | | |
| (i) Cash | 51a(i) | | X |
| (ii) Other assets | a(ii) | | X |
| b  Other transactions: | | | |
| (i) Sales or exchanges of assets with a noncharitable exempt organization | b(i) | | X |
| (ii) Purchases of assets from a noncharitable exempt organization | b(ii) | | X |
| (iii) Rental of facilities, equipment, or other assets | b(iii) | | X |
| (iv) Reimbursement arrangements | b(iv) | | X |
| (v) Loans or loan guarantees | b(v) | | X |
| (vi) Performance of services or membership or fundraising solicitations | b(vi) | | X |
| c  Sharing of facilities, equipment, mailing lists, other assets, or paid employees | c | | X |

d    If the answer to any of the above is "Yes," complete the following schedule. Column (b) should always show the fair market value of the
     goods, other assets, or services given by the reporting organization. If the organization received less than fair market value in any
     transaction or sharing arrangement, show in column (d) the value of the goods, other assets, or services received:                N/A

| (a) Line no. | (b) Amount involved | (c) Name of noncharitable exempt organization | (d) Description of transfers, transactions, and sharing arrangements |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

52 a   Is the organization directly or indirectly affiliated with, or related to, one or more tax-exempt organizations described in section 501(c) of the
       Code (other than section 501(c)(3)) or in section 527?                                                        ▶ ☐ Yes  ☒ No
   b   If "Yes," complete the following schedule:                N/A

| (a) Name of organization | (b) Type of organization | (c) Description of relationship |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

323151
12-05-03

**ARMENIAN GENOCIDE MUSEUM AND MEMORIAL, INC.**
**EIN: 20-0344096**
**YEAR ENDED 12/31/2003**

## STATEMENT OF PROGRAM SERVICE ACCOMPLISHMENTS

Armenian Genocide Museum and Memorial , Inc. ("AGMM") was formed to own, operate, and maintain a permanent museum and memorial to the victims and survivors of the Armenian Genocide; to commemorate, remember, study, and interpret the particular and universal lessons of the Armenian Genocide and related issues, including those of contemporary significance; to secure universal affirmation of the Armenian Genocide; to support the prevention of genocide; and to present permanent, rotating, and traveling exhibits, as well as memorial and public programs, in furtherance of these programs.

**ARMENIAN GENOCIDE MUSEUM AND MEMORIAL, INC.**
**EIN: 20-0344096**
**YEAR ENDED 12/31/2003**

Form 990, Schedule A, Part III – Sale, exchange, or leasing of property

The Armenian Genocide Museum and Memorial, Inc. ("AGMM") purchased several
buildings from Tomkat, LP, which is owned in part by Mr. Cafesjian, a substantial
contributor. In addition to purchasing several buildings, AGMM assumed liabilities
associated with those buildings. The sales transaction was completed at cost and without
profit to Mr. Cafesjian.

Statement 2

**ARMENIAN GENOCIDE MUSEUM AND MEMORIAL, INC.**
**EIN: 20-0344096**
**YEAR ENDED 12/31/2003**

Form 990, Part IV, Line 63 – Loans from officers, directors, trustees, and key employees

On November 1, 2003, Mr. Cafesjian, a board member of the Armenian Genocide
Museum and Memorial, Inc. ("AGMM"), advanced funds to AGMM for its
establishment and organization.  The original amount of the note was $500,000.
$500,000 is still outstanding, and will be paid back with 0% interest.

Statement 3

Form 8868 (12-2000)                                                                                                    Page **2**

- If you are filing for an **Additional (not automatic) 3-Month Extension,** complete only Part II and check this box . . . . . . ▶ ☒
- **Note:** *Only complete Part II if you have already been granted an automatic 3-month extension on a previously filed Form 8868.*
- If you are filing for an **Automatic 3-Month Extension,** complete only Part I (on page 1).

| **Part II** | **Additional (not automatic) 3-Month Extension of Time — Must File Original and One Copy.** | |
|---|---|---|
| **Type or print** | Name of Exempt Organization | **Employer identification number** |
| **File by the extended due date for filing the return See Instructions** | ARMENIAN GENOCIDE MUSEUM AND MEMORIAL, INC. | 20-0344096 |
| | Number, street, and room or suite no. If a P.O. box, see instructions. | For IRS use only |
| | 122 C STREET NW | |
| | City, town or post office, state, and ZIP code. For a foreign address, see instructions. | |
| | WASHINGTON, DC 20001 | |

**Check type of return to be filed (File a separate application for each return):**

☒ Form 990      ☐ Form 990-EZ      ☐ Form 990-T (sec. 401(a) or 408(a) trust)      ☐ Form 1041-A      ☐ Form 5227      ☐ Form 8870
☐ Form 990-BL      ☐ Form 990-PF      ☐ Form 990-T (trust other than above)      ☐ Form 4720      ☐ Form 6069

**STOP:** Do not complete Part II if you were not already granted an automatic 3-month extension on a previously filed Form 8868.

- If the organization does not have an office or place of business in the United States, check this box . . . . . . . . . . . . . . . . ▶ ☐
- If this is for a **Group Return,** enter the organization's four digit Group Exemption Number (GEN) _____ . If this is for the **whole group,** check this box ▶ ☐ . If it is for **part of the group,** check this box ▶ ☐ and attach a list with the names and EINs of all members the extension is for.

4   I request an additional 3-month extension of time until _____ NOVEMBER 15 _____ , 20 04 .
5   For calendar year _____ , or other tax year beginning __ OCTOBER 29 __ , 20 03 , and ending __ DECEMBER 31 __ , 20 03 .
6   If this tax year is for less than 12 months, check reason:    ☒ Initial return    ☐ Final return    ☐ Change in accounting period
7   State in detail why you need the extension __ADDITIONAL TIME IS NECESSARY IN ORDER TO GATHER__
    __THE INFORMATION FOR A COMPLETE AND ACCURATE RETURN.   THEREFORE, AN__
    __EXTENSION OF TIME TO FILE IS RESPECTFULLY REQUESTED.__

8a   If this application is for Form 990-BL, 990-PF, 990-T, 4720, or 6069, enter the tentative tax, less any
     nonrefundable credits. See instructions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $     NONE

 b   If this application is for Form 990-PF, 990-T, 4720, or 6069, enter any refundable credits and estimated
     tax payments made. Include any prior year overpayment allowed as a credit and any amount paid
     previously with Form 8868 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $     NONE

 c   **Balance Due.** Subtract line 8b from line 8a. Include your payment with this form, or, if required, deposit
     with FTD coupon or, if required, by using EFTPS (Electronic Federal Tax Payment System). See
     instructions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $     NONE

### Signature and Verification

Under penalties of perjury, I declare that I have examined this form, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete, and that I am authorized to prepare this form

Signature ▶ *Kristin K. Grubb*        Title ▶ CPA        Date ▶ 8/16/04

### Notice to Applicant — To Be Completed by the IRS

☐   We have approved this application. Please attach this form to the organization's return.
☐   We have not approved this application. However, we have granted a 10-day grace period from the later of the date shown below or the due date of the
    organization's return (including any prior extensions). This grace period is considered to be a valid extension of time for elections otherwise required to be
    made on a timely return. Please attach this form to the organization's return.
☐   We have not approved this application. After considering the reasons stated in item 7, we cannot grant your request for an extension of time to file. We are
    not granting a 10-day grace period.
☐   We cannot consider this application because it was filed after the due date of the return for which an extension was requested.
☐   Other _____

By _____

Director _____        Date _____

**Alternate Mailing Address — Enter the address if you want the copy of this application for an additional 3-month extension**
returned to an address different than the one entered above.

| | Name    KRISTEN GRUBB |
|---|---|
| **Type or print** |        DELOITTE & TOUCHE LLP |
| | Number and street (Include suite, room, or apt. no.) Or a P.O. box number |
| |     120 SOUTH SIXTH STREET, SUITE 400 |
| | City or town, province or state, and country (Including postal or ZIP code) |
| |     MINNEAPOLIS, MN 55402 |

STF FED9056F.2                                                                                              Form **8868** (12-2000)

Form **8868**

(December 2000)

Department of the Treasury
Internal Revenue Service

## Application for Extension of Time To File an
## Exempt Organization Return

▶ File a separate application for each return.

OMB No 1545-1709

- If you are filing for an **Automatic 3-Month Extension**, complete only Part I and check this box ................... ▶ ☒
- If you are filing for an **Additional (not automatic) 3-Month Extension**, complete only Part II (on page 2 of this form).

**Note:** *Do not complete Part II unless you have already been granted an automatic 3-month extension on a previously filed Form 8868.*

**Part I**    Automatic 3-Month Extension of Time — Only submit original (no copies needed)

**Note:** *Form 990-T corporations requesting an automatic 6-month extension — check this box and complete Part I only* .... ▶ ☐
*All other corporations (including Form 990-C filers) must use Form 7004 to request an extension of time to file income tax returns.*
*Partnerships, REMICs and trusts must use Form 8736 to request an extension of time to file Form 1065, 1066, or 1041.*

| Type or print | Name of Exempt Organization<br>ARMENIAN GENOCIDE MUSEUM AND MEMORIAL, INC. | Employer Identification number<br>20-0344096 |
|---|---|---|
| File by the due date for filing your return. See instructions. | Number, street, and room or suite no. If a P.O. box, see instructions.<br>122 C STREET NW | |
| | City, town or post office, state, and ZIP code. For a foreign address, see instructions.<br>WASHINGTON, DC 20001 | |

Check type of return to be filed (file a separate application for each return):

| | | |
|---|---|---|
| ☒ Form 990 | ☐ Form 990-T (corporation) | ☐ Form 4720 |
| ☐ Form 990-BL | ☐ Form 990-T (sec. 401(a) or 408(a) trust) | ☐ Form 5227 |
| ☐ Form 990-EZ | ☐ Form 990-T (trust other than above) | ☐ Form 6069 |
| ☐ Form 990-PF | ☐ Form 1041-A | ☐ Form 8870 |

- If the organization does not have an office or place of business in the United States, check this box ................. ▶ ☐
- If this is for a Group Return, enter the organization's four digit Group Exemption Number (GEN) _____ . If this is for the whole group, check this box ▶ ☐. If it is for part of the group, check this box ▶ ☐ and attach a list with the names and EINs of all members the extension will cover.

**1**   I request an automatic 3-month (6-month, for 990-T corporation) extension of time until ___AUGUST 16___ , 20 04 , to file the exempt organization return for the organization named above. The extension is for the organization's return for:

     ▶ ☐ calendar year 20 ___ or

     ▶ ☒ tax year beginning ___OCTOBER 29___ , 20 03 , and ending ___DECEMBER 31___ , 20 03 .

**2**   If this tax year is for less than 12 months, check reason:   ☒ Initial return   ☐ Final return   ☐ Change in accounting period

**3a** If this application is for Form 990-BL, 990-PF, 990-T, 4720, or 6069, enter the tentative tax, less any nonrefundable credits. See instructions ................................................. $    **NONE**

  **b** If this application is for Form 990-PF or 990-T, enter any refundable credits and estimated tax payments made. Include any prior year overpayment allowed as a credit ................................... $    **NONE**

  **c** **Balance Due.** Subtract line 3b from line 3a. Include your payment with this form, or, if required, deposit with FTD coupon or, if required, by using EFTPS (Electronic Federal Tax Payment System). See instructions ....................................................................... $    **NONE**

### Signature and Verification

Under penalties of perjury, I declare that I have examined this form, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete, and that I am authorized to prepare this form.

Signature ▶ _(signature)_    Title ▶ CPA    Date ▶ 5/17/04

For Paperwork Reduction Act Notice, see Instruction    Form **8868** (12-2000)

ISA
STF FED9056F.1

Form **990**

Department of the Treasury
Internal Revenue Service

### Return of Organization Exempt From Income Tax

Under section 501(c), 527, or 4947(a)(1) of the Internal Revenue Code (except black lung benefit trust or private foundation)

▶ The organization may have to use a copy of this return to satisfy state reporting requirements.

OMB No 1545-0047

**2004**

Open to Public Inspection

**A** For the 2004 calendar year, or tax year beginning _____ and ending _____

| **B** Check if applicable | | **C** Name of organization | **D** Employer identification number |
|---|---|---|---|
| ☐ Address change | Use IRS label or print or type. See Specific Instructions. | ARMENIAN GENOCIDE MUSEUM AND MEMORIAL, INC. | 20-0344096 |
| ☐ Name change | | Number and street (or P.O. box if mail is not delivered to street address)   Room/suite | **E** Telephone number |
| ☐ Initial return | | 122 C STREET NW                                    350 | 612-359-8991 |
| ☐ Final return | | City or town, state or country, and ZIP + 4 | **F** Accounting method ☐ Cash ☒ Accrual |
| ☐ Amended return | | WASHINGTON, DC 20001 | ☐ Other (specify) ▶ |
| ☐ Application pending | | ● Section 501(c)(3) organizations and 4947(a)(1) nonexempt charitable trusts must attach a completed Schedule A (Form 990 or 990-EZ). | |

**H** and **I** are not applicable to section 527 organizations.

**H(a)** Is this a group return for affiliates?  ☐ Yes  ☒ No

**G** Website: ▶ WWW.AGMM.ORG

**H(b)** If "Yes," enter number of affiliates ▶

**J** Organization type (check only one) ▶ ☒ 501(c) ( 3 ) ◀ (insert no )  ☐ 4947(a)(1) or  ☐ 527

**H(c)** Are all affiliates included?  N/A  ☐ Yes  ☐ No
(If "No," attach a list.)

**K** Check here ▶ ☐ if the organization's gross receipts are normally not more than $25,000. The organization need not file a return with the IRS; but if the organization received a Form 990 Package in the mail, it should file a return without financial data. Some states require a complete return.

**H(d)** Is this a separate return filed by an organization covered by a group ruling?  ☐ Yes  ☒ No

**I** Group Exemption Number ▶

**L** Gross receipts: Add lines 6b, 8b, 9b, and 10b to line 12 ▶   685,510.

**M** Check ▶ ☐ if the organization is **not** required to attach Sch. B (Form 990, 990-EZ, or 990-PF).

### Part I   Revenue, Expenses, and Changes in Net Assets or Fund Balances

| | | | | |
|---|---|---|---|---|
| **1** | Contributions, gifts, grants, and similar amounts received: | | | |
| | **a** Direct public support | **1a** | 181,985. | |
| | **b** Indirect public support | **1b** | | |
| | **c** Government contributions (grants) | **1c** | | |
| | **d** Total (add lines 1a through 1c) (cash $ 181,985. noncash $ _____ ) | | **1d** | 181,985. |
| **2** | Program service revenue including government fees and contracts (from Part VII, line 93) | | **2** | |
| **3** | Membership dues and assessments | | **3** | |
| **4** | Interest on savings and temporary cash investments | | **4** | 503,525. |
| **5** | Dividends and interest from securities | | **5** | |
| **6a** | Gross rents | **6a** | | |
| **b** | Less: rental expenses | **6b** | | |
| **c** | Net rental income or (loss) (subtract line 6b from line 6a) | | **6c** | |
| **7** | Other investment income (describe ▶ ) | | **7** | |
| **8a** | Gross amount from sales of assets other than inventory | (A) Securities | (B) Other | |
| | | **8a** | | |
| **b** | Less: cost or other basis and sales expenses | **8b** | | |
| **c** | Gain or (loss) (attach schedule) | **8c** | | |
| **d** | Net gain or (loss) (combine line 8c, columns (A) and (B)) | | **8d** | |
| **9** | Special events and activities (attach schedule). If any amount is from gaming, check here ▶ ☐ | | | |
| **a** | Gross revenue (not including $ _____ of contributions reported on line 1a) | **9a** | | |
| **b** | Less: direct expenses other than fundraising expenses | **9b** | | |
| **c** | Net income or (loss) from special events (subtract line 9b from line 9a) | | **9c** | |
| **10a** | Gross sales of inventory, less returns and allowances | **10a** | | |
| **b** | Less: cost of goods sold | **10b** | | |
| **c** | Gross profit or (loss) from sales of inventory (attach schedule) (subtract line 10b from line 10a) | | **10c** | |
| **11** | Other revenue (from Part VII, line 103) | | **11** | |
| **12** | Total revenue (add lines 1d, 2, 3, 4, 5, 6c, 7, 8d, 9c, 10c, and 11) | | **12** | 685,510. |

Expenses

| | | | |
|---|---|---|---|
| **13** | Program services (from line 44, column (B)) | **13** | |
| **14** | Management and general (from line 44, column (C)) | **14** | 325,106. |
| **15** | Fundraising (from line 44, column (D)) | **15** | |
| **16** | Payments to affiliates (attach schedule) | **16** | |
| **17** | Total expenses (add lines 16 and 44, column (A)) | **17** | 325,106. |

Net Assets

| | | | |
|---|---|---|---|
| **18** | Excess or (deficit) for the year (subtract line 17 from line 12) | **18** | 360,404. |
| **19** | Net assets or fund balances at beginning of year (from line 73, column (A)) | **19** | 20,331,951. |
| **20** | Other changes in net assets or fund balances (attach explanation) | **20** | 0. |
| **21** | Net assets or fund balances at end of year (combine lines 18, 19, and 20) | **21** | 20,692,355. |

423001
01-13-05   **LHA   For Privacy Act and Paperwork Reduction Act Notice, see the separate instructions.**

Form **990** (2004)

**EXHIBIT 16**

FOR SCANNED NOV 03 2005

OCT 19 2005

15

ARMENIAN GENOCIDE MUSEUM AND
MEMORIAL, INC.                                                20-0344096

| Part II | Statement of Functional Expenses | | | | |
|---|---|---|---|---|---|

All organizations must complete column (A). Columns (B), (C), and (D) are required for section 501(c)(3) and (4) organizations and section 4947(a)(1) nonexempt charitable trusts but optional for others.                    Page 2

| Do not include amounts reported on line 6b, 8b, 9b, 10b, or 16 of Part I | | (A) Total | (B) Program services | (C) Management and general | (D) Fundraising |
|---|---|---|---|---|---|
| 22 Grants and allocations (attach schedule) | 22 | | | | |
| (cash $_____ noncash $_____) | | | | | |
| 23 Specific assistance to individuals (attach schedule) | 23 | | | | |
| 24 Benefits paid to or for members (attach schedule) | 24 | | | | |
| 25 Compensation of officers, directors, etc. | 25 | 0. | 0. | 0. | 0. |
| 26 Other salaries and wages | 26 | | | | |
| 27 Pension plan contributions | 27 | | | | |
| 28 Other employee benefits | 28 | | | | |
| 29 Payroll taxes | 29 | | | | |
| 30 Professional fundraising fees | 30 | | | | |
| 31 Accounting fees | 31 | 15,255. | | 15,255. | |
| 32 Legal fees | 32 | 12,408. | | 12,408. | |
| 33 Supplies | 33 | 583. | | 583. | |
| 34 Telephone | 34 | 1,254. | | 1,254. | |
| 35 Postage and shipping | 35 | 80. | | 80. | |
| 36 Occupancy | 36 | | | | |
| 37 Equipment rental and maintenance | 37 | | | | |
| 38 Printing and publications | 38 | 57. | | 57. | |
| 39 Travel | 39 | | | | |
| 40 Conferences, conventions, and meetings | 40 | 660. | | 660. | |
| 41 Interest | 41 | | | | |
| 42 Depreciation, depletion, etc. (attach schedule) | 42 | | | | |
| 43 Other expenses not covered above (itemize): | | | | | |
| a _____ | 43a | | | | |
| b _____ | 43b | | | | |
| c _____ | 43c | | | | |
| d _____ | 43d | | | | |
| e  SEE STATEMENT 1 | 43e | 294,809. | | 294,809. | |
| 44 Total functional expenses (add lines 22 through 43). Organizations completing columns (B)-(D), carry these totals to lines 13-15 | 44 | 325,106. | 0. | 325,106. | 0. |

Joint Costs. Check ▶ ☐ if you are following SOP 98-2.
Are any joint costs from a combined educational campaign and fundraising solicitation reported in (B) Program services?    ▶ ☐ Yes  ☒ No
If "Yes," enter (i) the aggregate amount of these joint costs $_____ ; (ii) the amount allocated to Program services $_____ ;
(iii) the amount allocated to Management and general $_____ ; and (iv) the amount allocated to Fundraising $_____

| Part III | Statement of Program Service Accomplishments |
|---|---|

What is the organization's primary exempt purpose? ▶ _____

SEE STATEMENT 2

All organizations must describe their exempt purpose achievements in a clear and concise manner. State the number of clients served, publications issued, etc. Discuss achievements that are not measurable. (Section 501(c)(3) and (4) organizations and 4947(a)(1) nonexempt charitable trusts must also enter the amount of grants and allocations to others.)

Program Service Expenses
(Required for 501(c)(3) and (4) orgs., and 4947(a)(1) trusts, but optional for others.)

a  SEE STATEMENT 2
_____
_____
(Grants and allocations $              0.)                                    0.

b _____
_____
(Grants and allocations $                )

c _____
_____
(Grants and allocations $                )

d _____
_____
(Grants and allocations $                )

e  Other program services (attach schedule)        (Grants and allocations $                )
f  Total of Program Service Expenses (should equal line 44, column (B), Program services)    ▶              0.

423011
01-13-05                                                                   Form 990 (2004)

Form 990 (2004)

ARMENIAN GENOCIDE MUSEUM AND
MEMORIAL, INC.

20-0344096    Page 3

## Part IV | Balance Sheets

Note: *Where required, attached schedules and amounts within the description column should be for end-of-year amounts only.*

| | | | (A) Beginning of year | | (B) End of year |
|---|---|---|---|---|---|
| 45 | Cash - non-interest-bearing | | | 45 | |
| 46 | Savings and temporary cash investments | | 864,349. | 46 | 119,810. |
| 47 a | Accounts receivable | 47a 684,583. | | | |
| b | Less: allowance for doubtful accounts | 47b | 5,200. | 47c | 684,583. |
| 48 a | Pledges receivable | 48a 2,400,000. | | | |
| b | Less: allowance for doubtful accounts | 48b 636,301. | 2,222,862. | 48c | 1,763,699. |
| 49 | Grants receivable | | | 49 | |
| 50 | Receivables from officers, directors, trustees, and key employees | | | 50 | |
| 51 a | Other notes and loans receivable | 51a | | | |
| b | Less: allowance for doubtful accounts | 51b | | 51c | |
| 52 | Inventories for sale or use | | | 52 | |
| 53 | Prepaid expenses and deferred charges | | | 53 | |
| 54 | Investments - securities ▶ ☐ Cost ☐ FMV | | | 54 | |
| 55 a | Investments - land, buildings, and equipment: basis | 55a | | | |
| b | Less: accumulated depreciation | 55b | | 55c | |
| 56 | Investments - other | | | 56 | |
| 57 a | Land, buildings, and equipment: basis | 57a 20,421,671. | | | |
| b | Less: accumulated depreciation | 57b | 19,934,540. | 57c | 20,421,671. |
| 58 | Other assets (describe ▶ _____ ) | | | 58 | |
| 59 | Total assets (add lines 45 through 58) (must equal line 74) | | 23,026,951. | 59 | 22,989,763. |
| 60 | Accounts payable and accrued expenses | | 764,976. | 60 | 33,709. |
| 61 | Grants payable | | | 61 | |
| 62 | Deferred revenue | | | 62 | |
| 63 | Loans from officers, directors, trustees, and key employees    STMT 3 | | 500,000. | 63 | 500,000. |
| 64 a | Tax-exempt bond liabilities | | | 64a | |
| b | Mortgages and other notes payable | | 1,430,024. | 64b | 1,763,699. |
| 65 | Other liabilities (describe ▶ _____ ) | | | 65 | |
| 66 | Total liabilities (add lines 60 through 65) | | 2,695,000. | 66 | 2,297,408. |
| | Organizations that follow SFAS 117, check here ▶ ☒ and complete lines 67 through 69 and lines 73 and 74. | | | | |
| 67 | Unrestricted | | 822,893. | 67 | 697,893. |
| 68 | Temporarily restricted | | 19,499,058. | 68 | 19,984,462. |
| 69 | Permanently restricted | | 10,000. | 69 | 10,000. |
| | Organizations that do not follow SFAS 117, check here ▶ ☐ and complete lines 70 through 74. | | | | |
| 70 | Capital stock, trust principal, or current funds | | | 70 | |
| 71 | Paid-in or capital surplus, or land, building, and equipment fund | | | 71 | |
| 72 | Retained earnings, endowment, accumulated income, or other funds | | | 72 | |
| 73 | Total net assets or fund balances (add lines 67 through 69 or lines 70 through 72; column (A) must equal line 19; column (B) must equal line 21) | | 20,331,951. | 73 | 20,692,355. |
| 74 | Total liabilities and net assets / fund balances (add lines 66 and 73) | | 23,026,951. | 74 | 22,989,763. |

Assets — Liabilities — Net Assets or Fund Balances

Form 990 is available for public inspection and, for some people, serves as the primary or sole source of information about a particular organization. How the public perceives an organization in such cases may be determined by the information presented on its return. Therefore, please make sure the return is complete and accurate and fully describes, in Part III, the organization's programs and accomplishments.

423021
01-13-05

ARMENIAN GENOCIDE MUSEUM AND
MEMORIAL, INC.

Form 990 (2004)    20-0344096    Page 4

| Part IV-A | Reconciliation of Revenue per Audited Financial Statements with Revenue per Return | | | Part IV-B | Reconciliation of Expenses per Audited Financial Statements with Expenses per Return | | |
|---|---|---|---|---|---|---|---|
| a | Total revenue, gains, and other support per audited financial statements ▶ | a | N/A | a | Total expenses and losses per audited financial statements ▶ | a | N/A |
| b | Amounts included on line a but not on line 12, Form 990: | | | b | Amounts included on line a but not on line 17, Form 990: | | |
| (1) | Net unrealized gains on investments  $_____ | | | (1) | Donated services and use of facilities  $_____ | | |
| (2) | Donated services and use of facilities  $_____ | | | (2) | Prior year adjustments reported on line 20, Form 990  $_____ | | |
| (3) | Recoveries of prior year grants  $_____ | | | (3) | Losses reported on line 20, Form 990  $_____ | | |
| (4) | Other (specify): _____  $_____ | | | (4) | Other (specify): _____  $_____ | | |
| | Add amounts on lines (1) through (4) ▶ | b | | | Add amounts on lines (1) through (4) ▶ | b | |
| c | Line a minus line b ▶ | c | | c | Line a minus line b ▶ | c | |
| d | Amounts included on line 12, Form 990 but not on line a: | | | d | Amounts included on line 17, Form 990 but not on line a: | | |
| (1) | Investment expenses not included on line 6b, Form 990  $_____ | | | (1) | Investment expenses not included on line 6b, Form 990  $_____ | | |
| (2) | Other (specify): _____  $_____ | | | (2) | Other (specify): _____  $_____ | | |
| | Add amounts on lines (1) and (2) ▶ | d | | | Add amounts on lines (1) and (2) ▶ | d | |
| e | Total revenue per line 12, Form 990 (line c plus line d) ▶ | e | | e | Total expenses per line 17, Form 990 (line c plus line d) ▶ | e | |

| Part V | List of Officers, Directors, Trustees, and Key Employees (List each one even if not compensated.) | | | | |
|---|---|---|---|---|---|
| (A) Name and address | (B) Title and average hours per week devoted to position | (C) Compensation (if not paid, enter -0-.) | (D) Contributions to employee benefit plans & deferred compensation | (E) Expense account and other allowances |
| GERARD L. CAFESJIAN 122 C STREET, SUITE 360 WASHINGTON, DC 20001 | CHAIRMAN/PRESIDENT 40 HRS/YR | 0. | 0. | 0. |
| HIRAIR S. HOVNANIAN 122 C STREET, SUITE 360 WASHINGTON, DC 20001 | VICE CHAIRMAN 40 HRS/YR | 0. | 0. | 0. |
| ANOUSH MATHEVOSIAN 122 C STREET, SUITE 360 WASHINGTON, DC 20001 | TRUSTEE 40 HRS/YR | 0. | 0. | 0. |
| ROBERT A. KALOOSDIAN 122 C STREET, SUITE 360 WASHINGTON, DC 20001 | TRUSTEE 40 HRS/YR | 0. | 0. | 0. |
| JOHN WATERS JR. 122 C STREET, SUITE 360 WASHINGTON, DC 20001 | SECRETARY/TREASURER 200 HRS/YR | 0. | 0. | 0. |
| | | | | |

75   Did any officer, director, trustee, or key employee receive aggregate compensation of more than $100,000 from your organization and all related organizations, of which more than $10,000 was provided by the related organizations? If "Yes," attach schedule. ▶ ☐ Yes ☒ No

423031 01-13-05    Form 990 (2004)

ARMENIAN GENOCIDE MUSEUM AND
MEMORIAL, INC.

Form 990 (2004)                                           20-0344096          Page 5

## Part VI | Other Information                                              | Yes | No

| | | | | Yes | No |
|---|---|---|---|---|---|
| 76 | Did the organization engage in any activity not previously reported to the IRS? If "Yes," attach a detailed description of each activity | | 76 | | X |
| 77 | Were any changes made in the organizing or governing documents but not reported to the IRS? | | 77 | | X |
| | If "Yes," attach a conformed copy of the changes. | | | | |
| 78 a | Did the organization have unrelated business gross income of $1,000 or more during the year covered by this return? | | 78a | | X |
| b | If "Yes," has it filed a tax return on Form 990-T for this year? | N/A | 78b | | |
| 79 | Was there a liquidation, dissolution, termination, or substantial contraction during the year? | | 79 | | X |
| | If "Yes," attach a statement | | | | |
| 80 a | Is the organization related (other than by association with a statewide or nationwide organization) through common membership, governing bodies, trustees, officers, etc., to any other exempt or nonexempt organization? | | 80a | X | |
| b | If "Yes," enter the name of the organization ▶ ARMENIAN NATIONAL INSTITUTE, INC. | | | | |

and check whether it is [X] exempt or [ ] nonexempt.

| | | | | | Yes | No |
|---|---|---|---|---|---|---|
| 81 a | Enter direct or indirect political expenditures. See line 81 instructions | 81a | 0. | | | |
| b | Did the organization file Form 1120-POL for this year? | | | | 81b | | X |
| 82 a | Did the organization receive donated services or the use of materials, equipment, or facilities at no charge or at substantially less than fair rental value? | | | | 82a | | X |
| b | If "Yes," you may indicate the value of these items here. Do not include this amount as revenue in Part I or as an expense in Part II. (See instructions in Part III.) | 82b | N/A | | | |
| 83 a | Did the organization comply with the public inspection requirements for returns and exemption applications? | | | | 83a | X | |
| b | Did the organization comply with the disclosure requirements relating to quid pro quo contributions? | | | | 83b | X | |
| 84 a | Did the organization solicit any contributions or gifts that were not tax deductible? | | | | 84a | | X |
| b | If "Yes," did the organization include with every solicitation an express statement that such contributions or gifts were not tax deductible? | | N/A | | 84b | | |
| 85 | 501(c)(4), (5), or (6) organizations. a Were substantially all dues nondeductible by members? | | N/A | | 85a | | |
| b | Did the organization make only in-house lobbying expenditures of $2,000 or less? | | N/A | | 85b | | |
| | If "Yes" was answered to either 85a or 85b, do not complete 85c through 85h below unless the organization received a waiver for proxy tax owed for the prior year. | | | | | | |
| c | Dues, assessments, and similar amounts from members | 85c | N/A | | | |
| d | Section 162(e) lobbying and political expenditures | 85d | N/A | | | |
| e | Aggregate nondeductible amount of section 6033(e)(1)(A) dues notices | 85e | N/A | | | |
| f | Taxable amount of lobbying and political expenditures (line 85d less 85e) | 85f | N/A | | | |
| g | Does the organization elect to pay the section 6033(e) tax on the amount on line 85f? | | N/A | | 85g | | |
| h | If section 6033(e)(1)(A) dues notices were sent, does the organization agree to add the amount on line 85f to its reasonable estimate of dues allocable to nondeductible lobbying and political expenditures for the following tax year? | | N/A | | 85h | | |
| 86 | 501(c)(7) organizations. Enter: a Initiation fees and capital contributions included on line 12 | 86a | N/A | | | |
| b | Gross receipts, included on line 12, for public use of club facilities | 86b | N/A | | | |
| 87 | 501(c)(12) organizations. Enter: a Gross income from members or shareholders | 87a | N/A | | | |
| b | Gross income from other sources. (Do not net amounts due or paid to other sources against amounts due or received from them.) | 87b | N/A | | | |
| 88 | At any time during the year, did the organization own a 50% or greater interest in a taxable corporation or partnership, or an entity disregarded as separate from the organization under Regulations sections 301.7701-2 and 301.7701-3? | | | | 88 | | X |
| | If "Yes," complete Part IX | | | | | | |
| 89 a | 501(c)(3) organizations. Enter: Amount of tax imposed on the organization during the year under: section 4911 ▶ 0.; section 4912 ▶ 0.; section 4955 ▶ 0. | | | | | | |
| b | 501(c)(3) and 501(c)(4) organizations. Did the organization engage in any section 4958 excess benefit transaction during the year or did it become aware of an excess benefit transaction from a prior year? | | | | 89b | | X |
| | If "Yes," attach a statement explaining each transaction | | | | | | |
| c | Enter: Amount of tax imposed on the organization managers or disqualified persons during the year under sections 4912, 4955, and 4958 | | ▶ | 0. | | | |
| d | Enter: Amount of tax on line 89c, above, reimbursed by the organization | | ▶ | 0. | | | |
| 90 a | List the states with which a copy of this return is filed ▶ WASHINGTON, D.C. | | | | | | |
| b | Number of employees employed in the pay period that includes March 12, 2004 | 90b | | 0 | | | |
| 91 | The books are in care of ▶ JOHN WATERS JR. | Telephone no. ▶ 612-359-8991 | | | | | |

Located at ▶ 15 SOUTH FIFTH STREET, STE 900, MINNEAPOLIS, MN    ZIP + 4 ▶ 55402

| 92 | Section 4947(a)(1) nonexempt charitable trusts filing Form 990 in lieu of Form 1041- Check here | | ▶ [ ] |
|---|---|---|---|
| | and enter the amount of tax-exempt interest received or accrued during the tax year | ▶ | 92 | N/A |

423041
01-13-05

Form 990 (2004)

Form 990 (2004)

ARMENIAN GENOCIDE MUSEUM AND
MEMORIAL, INC.

20-0344096    Page 6

## Part VII | Analysis of Income-Producing Activities (See page 33 of the instructions.)

Note: *Enter gross amounts unless otherwise indicated.*

| | Unrelated business income | | Excluded by section 512, 513, or 514 | | (E) Related or exempt function income |
|---|---|---|---|---|---|
| | (A) Business code | (B) Amount | (C) Exclusion code | (D) Amount | |
| 93 Program service revenue: | | | | | |
| a _____ | | | | | |
| b _____ | | | | | |
| c _____ | | · | | | |
| d _____ | | | | | |
| e _____ | | | | | |
| f Medicare/Medicaid payments | | | | | |
| g Fees and contracts from government agencies | | | | | |
| 94 Membership dues and assessments | | | | | |
| 95 Interest on savings and temporary cash investments | | | 14 | 503,525. | |
| 96 Dividends and interest from securities | | | | | |
| 97 Net rental income or (loss) from real estate: | | | | | |
| a debt-financed property | | | | | |
| b not debt-financed property | | | | | |
| 98 Net rental income or (loss) from personal property | | | | | |
| 99 Other investment income | | | | | |
| 100 Gain or (loss) from sales of assets other than inventory | | | | | |
| 101 Net income or (loss) from special events | | | | | |
| 102 Gross profit or (loss) from sales of inventory | | | | | |
| 103 Other revenue: | | | | | |
| a _____ | | | | | |
| b _____ | | | | | |
| c _____ | | | | | |
| d _____ | | | | | |
| e _____ | | | | | |
| 104 Subtotal (add columns (B), (D), and (E)) | | 0. | | 503,525. | 0. |

105 Total (add line 104, columns (B), (D), and (E))    ▶    503,525.

Note: *Line 105 plus line 1d, Part I, should equal the amount on line 12, Part I.*

## Part VIII | Relationship of Activities to the Accomplishment of Exempt Purposes (See page 34 of the instructions.)

| Line No. ▼ | Explain how each activity for which income is reported in column (E) of Part VII contributed importantly to the accomplishment of the organization's exempt purposes (other than by providing funds for such purposes). |
|---|---|
| | |
| | |
| | |

## Part IX | Information Regarding Taxable Subsidiaries and Disregarded Entities (See page 34 of the instructions.)

| (A) Name, address, and EIN of corporation, partnership, or disregarded entity | (B) Percentage of ownership interest | (C) Nature of activities | (D) Total income | (E) End-of-year assets |
|---|---|---|---|---|
| | % | | | |
| N/A | % | | | |
| | % | | | |
| | % | | | |

## Part X | Information Regarding Transfers Associated with Personal Benefit Contracts (See page 34 of the instructions.)

(a) Did the organization, during the year, receive any funds, directly or indirectly, to pay premiums on a personal benefit contract?    ☐ Yes  ☒ No

(b) Did the organization, during the year, pay premiums, directly or indirectly, on a personal benefit contract?    ☐ Yes  ☒ No

Note: *If "Yes" to (b), file Form 8870 and Form 4720 (see instructions).*

Please Sign Here — Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than officer) is based on all information of which preparer has any knowledge.

▶ Signature of officer    Date 9/30/05    ▶ JOHN J. WATERS, JR   SEC/TREAS
Type or print name and title.

| Paid Preparer's Use Only | Preparer's signature ▶ Kristen K. Grubb, CPA | Date 9/23/05 | Check if self-employed ☐ | Preparer's SSN or PTIN P00318533 |
|---|---|---|---|---|
| | Firm's name (or yours if self-employed), address, and ZIP + 4 ▶ | DELOITTE TAX LLP 120 SOUTH SIXTH STREET, SUITE 400 MINNEAPOLIS, MN 55402 | EIN ▶ 86-1065772 | |
| | | | Phone no. ▶ 612-397-4000 | |

423161
01-13-05

Form 990 (2004)

| SCHEDULE A (Form 990 or 990-EZ) | Organization Exempt Under Section 501(c)(3) | OMB No 1545-0047 |
|---|---|---|
| Department of the Treasury Internal Revenue Service | (Except Private Foundation) and Section 501(e), 501(f), 501(k), 501(n), or Section 4947(a)(1) Nonexempt Charitable Trust **Supplementary Information—(See separate instructions.)** ▶ MUST be completed by the above organizations and attached to their Form 990 or 990-EZ | **2004** |

Name of the organization: **ARMENIAN GENOCIDE MUSEUM AND MEMORIAL, INC.**

Employer identification number: **20 0344096**

### Part I  Compensation of the Five Highest Paid Employees Other Than Officers, Directors, and Trustees
(See page 1 of the instructions. List each one. If there are none, enter "None.")

| (a) Name and address of each employee paid more than $50,000 | (b) Title and average hours per week devoted to position | (c) Compensation | (d) Contributions to employee benefit plans & deferred compensation | (e) Expense account and other allowances |
|---|---|---|---|---|
| NONE | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

Total number of other employees paid over $50,000 ▶ | 0

### Part II  Compensation of the Five Highest Paid Independent Contractors for Professional Services
(See page 2 of the instructions. List each one (whether individuals or firms). If there are none, enter "None.")

| (a) Name and address of each independent contractor paid more than $50,000 | (b) Type of service | (c) Compensation |
|---|---|---|
| NONE | | |
| | | |
| | | |
| | | |
| | | |

Total number of others receiving over $50,000 for professional services ▶ | 0

423101/11-24-04    LHA    For Paperwork Reduction Act Notice, see the Instructions for Form 990 and Form 990-EZ.    Schedule A (Form 990 or 990-EZ) 2004

ARMENIAN GENOCIDE MUSEUM AND

Schedule A (Form 990 or 990-EZ) 2004  MEMORIAL, INC.                                      20-0344096    Page 2

| **Part III** | **Statements About Activities** (See page 2 of the instructions.) | | Yes | No |
|---|---|---|---|---|

**1** During the year, has the organization attempted to influence national, state, or local legislation, including any attempt to influence public opinion on a legislative matter or referendum? If "Yes," enter the total expenses paid or incurred in connection with the lobbying activities ▶ $ _____ $ _____ (Must equal amounts on line 38, Part VI-A, or line i of Part VI-B.)

Organizations that made an election under section 501(h) by filing Form 5768 must complete Part VI-A. Other organizations checking "Yes," must complete Part VI-B AND attach a statement giving a detailed description of the lobbying activities.

| | | | | |
|---|---|---|---|---|
| | | **1** | | X |

**2** During the year, has the organization, either directly or indirectly, engaged in any of the following acts with any substantial contributors, trustees, directors, officers, creators, key employees, or members of their families, or with any taxable organization with which any such person is affiliated as an officer, director, trustee, majority owner, or principal beneficiary? *(If the answer to any question is "Yes," attach a detailed statement explaining the transactions.)*

| | | | | |
|---|---|---|---|---|
| **a** Sale, exchange, or leasing of property? | | **2a** | | X |
| **b** Lending of money or other extension of credit? | | **2b** | | X |
| **c** Furnishing of goods, services, or facilities?        STMT 4 | | **2c** | X | |
| **d** Payment of compensation (or payment or reimbursement of expenses if more than $1,000)? | | **2d** | | X |
| **e** Transfer of any part of its income or assets? | | **2e** | | X |
| **3 a** Do you make grants for scholarships, fellowships, student loans, etc.? (If "Yes," attach an explanation of how you determine that recipients qualify to receive payments.) | | **3a** | | X |
| **b** Do you have a section 403(b) annuity plan for your employees? | | **3b** | | X |
| **4** Did you maintain any separate account for participating donors where donors have the right to provide advice on the use or distribution of funds? | | **4a** | | X |
| **b** Do you provide credit counseling, debt management, credit repair, or debt negotiation services? | | **4b** | | X |

| **Part IV** | **Reason for Non-Private Foundation Status** (See pages 3 through 6 of the instructions.) |
|---|---|

The organization is not a private foundation because it is: (Please check only ONE applicable box.)

**5** ☐ A church, convention of churches, or association of churches. Section 170(b)(1)(A)(i).

**6** ☐ A school. Section 170(b)(1)(A)(ii). (Also complete Part V.)

**7** ☐ A hospital or a cooperative hospital service organization. Section 170(b)(1)(A)(iii).

**8** ☐ A Federal, state, or local government or governmental unit. Section 170(b)(1)(A)(v).

**9** ☐ A medical research organization operated in conjunction with a hospital. Section 170(b)(1)(A)(iii). **Enter the hospital's name, city, and state** ▶ _____

**10** ☐ An organization operated for the benefit of a college or university owned or operated by a governmental unit. Section 170(b)(1)(A)(iv). (Also complete the Support Schedule in Part IV-A.)

**11a** ☒ An organization that normally receives a substantial part of its support from a governmental unit or from the general public. Section 170(b)(1)(A)(vi). (Also complete the Support Schedule in Part IV-A.)

**11b** ☐ A community trust. Section 170(b)(1)(A)(vi). (Also complete the Support Schedule in Part IV-A.)

**12** ☐ An organization that normally receives: **(1)** more than 33 1/3% of its support from contributions, membership fees, and gross receipts from activities related to its charitable, etc., functions - subject to certain exceptions, and **(2)** no more than 33 1/3% of its support from gross investment income and unrelated business taxable income (less section 511 tax) from businesses acquired by the organization after June 30, 1975. See section 509(a)(2). (Also complete the Support Schedule in Part IV-A.)

**13** ☐ An organization that is not controlled by any disqualified persons (other than foundation managers) and supports organizations described in: **(1)** lines 5 through 12 above; or **(2)** section 501(c)(4), (5), or (6), if they meet the test of section 509(a)(3). (See section 509(a)(3).)

Provide the following information about the supported organizations. (See page 5 of the instructions.)

| (a) Name(s) of supported organization(s) | (b) Line number from above |
|---|---|
| | |
| | |
| | |

**14** ☐ An organization organized and operated to test for public safety. Section 509(a)(4). (See page 5 of the instructions.)

423111
12-03-04

Schedule A (Form 990 or 990-EZ) 2004

ARMENIAN GENOCIDE MUSEUM AND

Schedule A (Form 990 or 990-EZ) 2004 MEMORIAL, INC.    20-0344096    Page 3

| Part IV-A | Support Schedule (Complete only if you checked a box on line 10, 11, or 12.) **Use cash method of accounting.**<br>**Note:** *You may use the worksheet in the instructions for converting from the accrual to the cash method of accounting* |
|---|---|

| Calendar year (or fiscal year<br>beginning in) ▶ | (a) 2003 | (b) 2002 | (c) 2001 | (d) 2000 | (e) Total |
|---|---|---|---|---|---|
| **15** Gifts, grants, and contributions received. (Do not include unusual grants. See line 28.) | 20342881. | | | | 20,342,881. |
| **16** Membership fees received | | | | | |
| **17** Gross receipts from admissions, merchandise sold or services performed, or furnishing of facilities in any activity that is related to the organization's charitable, etc., purpose | | | | | |
| **18** Gross income from interest, dividends, amounts received from payments on securities loans (section 512(a)(5)), rents, royalties, and unrelated business taxable income (less section 511 taxes) from businesses acquired by the organization after June 30, 1975 | 155. | | | | 155. |
| **19** Net income from unrelated business activities not included in line 18 | | | | | |
| **20** Tax revenues levied for the organization's benefit and either paid to it or expended on its behalf | | | | | |
| **21** The value of services or facilities furnished to the organization by a governmental unit without charge. Do not include the value of services or facilities generally furnished to the public without charge | | | | | |
| **22** Other income. Attach a schedule. Do not include gain or (loss) from sale of capital assets | | | | | |
| **23** Total of lines 15 through 22 | 20343036. | 0. | 0. | 0. | 20,343,036. |
| **24** Line 23 minus line 17 | 20343036. | | | | 20,343,036. |
| **25** Enter 1% of line 23 | 203,430. | | | | |

| | | | |
|---|---|---|---|
| **26** Organizations described on lines 10 or 11: **a** Enter 2% of amount in column (e), line 24 | ▶ | **26a** | 406,861. |
| **b** Prepare a list for your records to show the name of and amount contributed by each person (other than a governmental unit or publicly supported organization) whose total gifts for 2000 through 2003 exceeded the amount shown in line 26a.<br>Do not file this list with your return. Enter the total of all these excess amounts | ▶ | **26b** | 19529159. |
| **c** Total support for section 509(a)(1) test: Enter line 24, column (e) | ▶ | **26c** | 20,343,036. |
| **d** Add: Amounts from column (e) for lines: 18 ___155.___ 19 _____<br>22 _____ 26b _19,529,159._ | ▶ | **26d** | 19,529,314. |
| **e** Public support (line 26c minus line 26d total) | ▶ | **26e** | 813,722. |
| **f** Public support percentage (line 26e (numerator) divided by line 26c (denominator)) | ▶ | **26f** | 4.0000% |

**27** Organizations described on line 12: **a** For amounts included in lines 15, 16, and 17 that were received from a "disqualified person," prepare a list for your records to show the name of, and total amounts received in each year from, each "disqualified person." **Do not file this list with your return.** Enter the sum of such amounts for each year:    **N/A**

(2003)  . . . . . . .  (2002)  . . . . . . .  (2001)  . . . .  . . . .  (2000)  . . . . . . . . .

**b** For any amount included in line 17 that was received from each person (other than "disqualified persons"), prepare a list for your records to show the name of, and amount received for each year, that was more than the **larger of (1)** the amount on line 25 for the year or **(2)** $5,000. (Include in the list organizations described in lines 5 through 11, as well as individuals.) **Do not file this list with your return.** After computing the difference between the amount received and the larger amount described in (1) or (2), enter the sum of these differences (the excess amounts) for each year:    **N/A**

(2003)  . . . . . . .  (2002)  . . . . . . .  (2001)  . . . .  . . .  (2000)  . . . . ... . . . ...

| | | | |
|---|---|---|---|
| **c** Add: Amounts from column (e) for lines: 15 _____ 16 _____<br>17 _____ 20 _____ 21 _____ | ▶ | **27c** | N/A |
| **d** Add: Line 27a total _____ and line 27b total _____ | ▶ | **27d** | N/A |
| **e** Public support (line 27c total minus line 27d total) | ▶ | **27e** | N/A |
| **f** Total support for section 509(a)(2) test: Enter amount on line 23, column (e) ▶ | **27f** | N/A | |
| **g** Public support percentage (line 27e (numerator) divided by line 27f (denominator)) | ▶ | **27g** | N/A % |
| **h** Investment income percentage (line 18, column (e) (numerator) divided by line 27f (denominator)) | ▶ | **27h** | N/A % |

**28 Unusual Grants:** For an organization described in line 10, 11, or 12 that received any unusual grants during 2000 through 2003, prepare a list for your records to show, for each year, the name of the contributor, the date and amount of the grant, and a brief description of the nature of the grant. **Do not file this list with your return.** Do not include these grants in line 15.

423121  12-03-04    NONE    Schedule A (Form 990 or 990-EZ) 2004

ARMENIAN GENOCIDE MUSEUM AND

Schedule A (Form 990 or 990-EZ) 2004 MEMORIAL, INC.                                      20-0344096   Page 4

| Part V | Private School Questionnaire (See page 7 of the instructions.) | N/A |
|---|---|---|

**(To be completed ONLY by schools that checked the box on line 6 in Part IV)**

|  |  | | Yes | No |
|---|---|---|---|---|
| 29 | Does the organization have a racially nondiscriminatory policy toward students by statement in its charter, bylaws, other governing instrument, or in a resolution of its governing body? | 29 | | |
| 30 | Does the organization include a statement of its racially nondiscriminatory policy toward students in all its brochures, catalogues, and other written communications with the public dealing with student admissions, programs, and scholarships? | 30 | | |
| 31 | Has the organization publicized its racially nondiscriminatory policy through newspaper or broadcast media during the period of solicitation for students, or during the registration period if it has no solicitation program, in a way that makes the policy known to all parts of the general community it serves? If "Yes," please describe; if "No," please explain. (If you need more space, attach a separate statement.) | 31 | | |
| 32 | Does the organization maintain the following: | | | |
| a | Records indicating the racial composition of the student body, faculty, and administrative staff? | 32a | | |
| b | Records documenting that scholarships and other financial assistance are awarded on a racially nondiscriminatory basis? | 32b | | |
| c | Copies of all catalogues, brochures, announcements, and other written communications to the public dealing with student admissions, programs, and scholarships? | 32c | | |
| d | Copies of all material used by the organization or on its behalf to solicit contributions? If you answered "No" to any of the above, please explain. (If you need more space, attach a separate statement.) | 32d | | |
| 33 | Does the organization discriminate by race in any way with respect to: | | | |
| a | Students' rights or privileges? | 33a | | |
| b | Admissions policies? | 33b | | |
| c | Employment of faculty or administrative staff? | 33c | | |
| d | Scholarships or other financial assistance? | 33d | | |
| e | Educational policies? | 33e | | |
| f | Use of facilities? | 33f | | |
| g | Athletic programs? | 33g | | |
| h | Other extracurricular activities? If you answered "Yes" to any of the above, please explain. (If you need more space, attach a separate statement.) | 33h | | |
| 34 a | Does the organization receive any financial aid or assistance from a governmental agency? | 34a | | |
| b | Has the organization's right to such aid ever been revoked or suspended? If you answered "Yes" to either 34a or b, please explain using an attached statement. | 34b | | |
| 35 | Does the organization certify that it has complied with the applicable requirements of sections 4.01 through 4.05 of Rev. Proc. 75-50, 1975-2 C.B. 587, covering racial nondiscrimination? If "No," attach an explanation | 35 | | |

Schedule A (Form 990 or 990-EZ) 2004

423131
11-24-04

ARMENIAN GENOCIDE MUSEUM AND
Schedule A (Form 990 or 990-EZ) 2004  MEMORIAL, INC.                                      20-0344096      Page 5

| Part VI-A | Lobbying Expenditures by Electing Public Charities (See page 9 of the instructions.) |

(To be completed ONLY by an eligible organization that filed Form 5768)

Check ► a ☐ if the organization belongs to an affiliated group.      Check ► b ☐ if you checked "a" and "limited control" provisions apply.

| **Limits on Lobbying Expenditures**<br>(The term "expenditures" means amounts paid or incurred.) | | (a)<br>Affiliated group<br>totals | (b)<br>To be completed for ALL<br>electing organizations |
|---|---|---|---|
| 36 Total lobbying expenditures to influence public opinion (grassroots lobbying) | 36 | | |
| 37 Total lobbying expenditures to influence a legislative body (direct lobbying) | 37 | | |
| 38 Total lobbying expenditures (add lines 36 and 37) | 38 | | |
| 39 Other exempt purpose expenditures | 39 | | 325,106. |
| 40 Total exempt purpose expenditures (add lines 38 and 39) | 40 | | 325,106. |
| 41 Lobbying nontaxable amount. Enter the amount from the following table - | | | |

| If the amount on line 40 is - | The lobbying nontaxable amount is - | | |
|---|---|---|---|
| Not over $500,000 | 20% of the amount on line 40 | | |
| Over $500,000 but not over $1,000,000 | $100,000 plus 15% of the excess over $500,000 | | |
| Over $1,000,000 but not over $1,500,000 | $175,000 plus 10% of the excess over $1,000,000 | 41 | 65,021. |
| Over $1,500,000 but not over $17,000,000 | $225,000 plus 5% of the excess over $1,500,000 | | |
| Over $17,000,000 | $1,000,000 | | |

| 42 Grassroots nontaxable amount (enter 25% of line 41) | 42 | | 16,255. |
| 43 Subtract line 42 from line 36. Enter -0- if line 42 is more than line 36 | 43 | | |
| 44 Subtract line 41 from line 38. Enter -0- if line 41 is more than line 38 | 44 | | |

Caution:  If there is an amount on either line 43 or line 44, you must file Form 4720.

### 4-Year Averaging Period Under Section 501(h)

(Some organizations that made a section 501(h) election do not have to complete all of the five columns
below. See the instructions for lines 45 through 50 on page 11 of the instructions.)

| | Lobbying Expenditures During 4-Year Averaging Period | | | | |
|---|---|---|---|---|---|
| Calendar year (or<br>fiscal year beginning in) ► | (a)<br>2004 | (b)<br>2003 | (c)<br>2002 | (d)<br>2001 | (e)<br>Total |
| 45 Lobbying nontaxable<br>amount | 65,021. | 2,217. | | | 67,238. |
| 46 Lobbying ceiling amount<br>(150% of line 45(e)) | | | | | 100,857. |
| 47 Total lobbying<br>expenditures | | | | | 0. |
| 48 Grassroots nontaxable<br>amount | 16,255. | 554. | | | 16,809. |
| 49 Grassroots ceiling amount<br>(150% of line 48(e)) | | | | | 25,214. |
| 50 Grassroots lobbying<br>expenditures | | | | | 0. |

| Part VI-B | Lobbying Activity by Nonelecting Public Charities |

(For reporting only by organizations that did not complete Part VI-A) (See page 11 of the instructions.)                    N/A

| During the year, did the organization attempt to influence national, state or local legislation, including any attempt to<br>influence public opinion on a legislative matter or referendum, through the use of: | Yes | No | Amount |
|---|---|---|---|
| a  Volunteers | | | |
| b  Paid staff or management (Include compensation in expenses reported on lines c through h.) | | | |
| c  Media advertisements | | | |
| d  Mailings to members, legislators, or the public | | | |
| e  Publications, or published or broadcast statements | | | |
| f  Grants to other organizations for lobbying purposes | | | |
| g  Direct contact with legislators, their staffs, government officials, or a legislative body | | | |
| h  Rallies, demonstrations, seminars, conventions, speeches, lectures, or any other means | | | |
| i  Total lobbying expenditures (Add lines c through h.) | | | 0. |
| If "Yes" to any of the above, also attach a statement giving a detailed description of the lobbying activities. | | | |

423141
11-24-04                                                                        Schedule A (Form 990 or 990-EZ) 2004

ARMENIAN GENOCIDE MUSEUM AND
Schedule A (Form 990 or 990-EZ) 2004 MEMORIAL, INC.                                20-0344096    Page 6

| Part VII | Information Regarding Transfers To and Transactions and Relationships With Noncharitable Exempt Organizations (See page 11 of the instructions.) |

51   Did the reporting organization directly or indirectly engage in any of the following with any other organization described in section 501(c) of the Code (other than section 501(c)(3) organizations) or in section 527, relating to political organizations?

|   |   | Yes | No |
|---|---|---|---|
| a | Transfers from the reporting organization to a noncharitable exempt organization of: | | |
| (i) Cash | 51a(i) | | X |
| (ii) Other assets | a(ii) | | X |
| b | Other transactions: | | |
| (i) Sales or exchanges of assets with a noncharitable exempt organization | b(i) | | X |
| (ii) Purchases of assets from a noncharitable exempt organization | b(ii) | | X |
| (iii) Rental of facilities, equipment, or other assets | b(iii) | | X |
| (iv) Reimbursement arrangements | b(iv) | | X |
| (v) Loans or loan guarantees | b(v) | | X |
| (vi) Performance of services or membership or fundraising solicitations | b(vi) | | X |
| c | Sharing of facilities, equipment, mailing lists, other assets, or paid employees | c | | X |

d   If the answer to any of the above is "Yes," complete the following schedule. Column (b) should always show the fair market value of the goods, other assets, or services given by the reporting organization. If the organization received less than fair market value in any transaction or sharing arrangement, show in column (d) the value of the goods, other assets, or services received:      N/A

| (a) Line no. | (b) Amount involved | (c) Name of noncharitable exempt organization | (d) Description of transfers, transactions, and sharing arrangements |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

52 a   Is the organization directly or indirectly affiliated with, or related to, one or more tax-exempt organizations described in section 501(c) of the Code (other than section 501(c)(3)) or in section 527?      ▶ ☐ Yes   ☒ No

b   If "Yes," complete the following schedule:      N/A

| (a) Name of organization | (b) Type of organization | (c) Description of relationship |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

423151
11-24-04

ARMENIAN GENOCIDE MUSEUM AND MEMORIAL, I                     20-0344096

| FORM 990 | OTHER EXPENSES | | | STATEMENT 1 |
|---|---|---|---|---|
| DESCRIPTION | (A)<br>TOTAL | (B)<br>PROGRAM<br>SERVICES | (C)<br>MANAGEMENT<br>AND GENERAL | (D)<br>FUNDRAISING |
| MISC. EXPENSES | 457. | | 457. | |
| OTHER PROFESSIONAL<br>FEES | 2,932. | | 2,932. | |
| BOOKS & PUBLICATIONS | 352. | | 352. | |
| PARKING | 12. | | 12. | |
| SECURITY | 372. | | 372. | |
| MAINTENANCE &<br>REPAIRS | 1,724. | | 1,724. | |
| UTILITIES | 3,538. | | 3,538. | |
| REAL ESTATE TAXES | 242,042. | | 242,042. | |
| INSURANCE | 40,090. | | 40,090. | |
| DUES & MEMBERSHIPS | 40. | | 40. | |
| ADVERTISING | 2,837. | | 2,837. | |
| OTHER TAXES | 75. | | 75. | |
| ORGANIZATIONAL<br>EXPENSES | 338. | | 338. | |
| TOTAL TO FM 990, LN 43 | 294,809. | | 294,809. | |

**ARMENIAN GENOCIDE MUSEUM AND MEMORIAL, INC.**
**EIN: 20-0344096**
**YEAR ENDED 12/31/2004**

STATEMENT OF PROGRAM SERVICE ACCOMPLISHMENTS

Armenian Genocide Museum and Memorial , Inc. ("AGMM") was formed to own,
operate, and maintain a permanent museum and memorial to the victims and survivors of
the Armenian Genocide; to commemorate, remember, study, and interpret the particular
and universal lessons of the Armenian Genocide and related issues, including those of
contemporary significance; to secure universal affirmation of the Armenian Genocide; to
support the prevention of genocide; and to present permanent, rotating, and traveling
exhibits, as well as memorial and public programs, in furtherance of these programs.

STATEMENT 2

**ARMENIAN GENOCIDE MUSEUM AND MEMORIAL, INC.**
**EIN: 20-0344096**
**YEAR ENDED 12/31/2004**

Form 990, Part IV, Line 63 – Loans from officers, directors, trustees, and key employees

On November 1, 2003, Mr. Cafesjian, a board member of the Armenian Genocide Museum and Memorial, Inc. ("AGMM"), advanced funds to AGMM for its establishment and organization. The original amount of the note was $500,000. $500,000 is still outstanding, and will be paid back with 0% interest.

Statement 3

**ARMENIAN GENOCIDE MUSEUM AND MEMORIAL, INC.**
**EIN: 20-0344096**
**YEAR ENDED 12/31/2004**

<u>Form 990, Schedule A, Part III – Furnishing of goods, services, or facilities</u>

The Armenian Genocide Museum and Memorial, Inc. ("AGMM") receives accounting and management services at no charge from GLC Enterprises, a taxable entity with which Gerard Cafesjian, a substantial contributor and board member, is affiliated with.

Statement 4

Form **8868**
(Rev. December 2004)

Department of the Treasury
Internal Revenue Service

## Application for Extension of Time To File an Exempt Organization Return

▶ File a separate application for each return.

OMB No. 1545-1709

- If you are filing for an **Automatic 3-Month Extension**, complete only Part I and check this box . . . . . . . . . . . . . . . ▶ ☒
- If you are filing for an **Additional (not automatic) 3-Month Extension**, complete only Part II (on page 2 of this form).

*Do not complete Part II unless* you have already been granted an automatic 3-month extension on a previously filed Form 8868.

**Part I**   Automatic 3-Month Extension of Time—Only submit original (no copies needed)

**Form 990-T corporations** requesting an automatic 6-month extension—check this box and complete Part I only . . . . . . ▶ ☐

*All other corporations (including Form 990-C filers) must use Form 7004 to request an extension of time to file income tax returns.
Partnerships, REMICs, and trusts must use Form 8736 to request an extension of time to file Form 1065, 1066, or 1041.*

**Electronic Filing (e-file).** Form 8868 can be filed electronically if you want a 3-month automatic extension of time to file one of the returns noted below (6 months for corporate Form 990-T filers). However, you cannot file it electronically if you want the additional (not automatic) 3-month extension, instead you must submit the fully completed signed page 2 (Part II) of Form 8868. For more details on the electronic filing of this form, visit *www.irs.gov/efile*.

| Type or print | Name of Exempt Organization<br>ARMENIAN GENOCIDE MUSEUM AND MEMORIAL, INC. | Employer identification number<br>20-0344096 |
|---|---|---|
| File by the due date for filing your return. See instructions. | Number, street, and room or suite no. If a P.O. box, see instructions.<br>122 C STREET, NW | |
| | City, town or post office, state, and ZIP code. For a foreign address, see instructions.<br>WASHINGTON, DC   20001 | |

**Check type of return to be filed** (file a separate application for each return):

| | | |
|---|---|---|
| ☒ Form 990 | ☐ Form 990-T (corporation) | ☐ Form 4720 |
| ☐ Form 990-BL | ☐ Form 990-T (sec. 401(a) or 408(a) trust) | ☐ Form 5227 |
| ☐ Form 990-EZ | ☐ Form 990-T (trust other than above) | ☐ Form 6069 |
| ☐ Form 990-PF | ☐ Form 1041-A | ☐ Form 8870 |

- The books are in the care of ▶ JOHN WATERS JR.

  Telephone No. ▶ 612-359-8991                    FAX No. ▶
- If the organization does not have an office or place of business in the United States, check this box . . . . . . . . . . . . ▶ ☐
- If this is for a **Group Return**, enter the organization's four digit Group Exemption Number (GEN)_____ . If this is for the **whole** group, check this box ▶☐. If it is for part of the group, check this box ▶☐  and attach a list with the names and EINs of all members the extension will cover.

1   I request an automatic 3-month (6-months for a **Form 990-T corporation**) extension of time until __AUGUST 15__, 20_05_ to file the exempt organization return for the organization named above. The extension is for the organization's return for:
   ▶ ☒ calendar year 20 _04_ or
   ▶ ☐ tax year beginning _____, 20__, and ending _____, 20__.

2   If this tax year is for less than 12 months, check reason: ☐ Initial return  ☐ Final return ☐ Change in accounting period

3a   If this application is for Form 990-BL, 990-PF, 990-T, 4720, or 6069, enter the tentative tax, less any
    nonrefundable credits. See instructions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  $   NONE

b   If this application is for Form 990-PF or 990-T, enter any refundable credits and estimated tax payments
   made. Include any prior year overpayment allowed as a credit . . . . . . . . . . . . . . . . . . . . . . . . . . . .  $   NONE

c   **Balance Due.** Subtract line 3b from line 3a. Include your payment with this form, or, if required, deposit
   with FTD coupon or, if required, by using EFTPS (Electronic Federal Tax Payment System). See
   instructions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  $   NONE

**Caution.** If you are going to make an electronic fund withdrawal with this Form 8868, see Form 8453-EO and Form 8879-EO for payment instructions.

For Privacy Act and Paperwork Reduction Act Notice, see Instructions.                    Form **8868** (Rev. 12-2004)

Form 8868 (Rev. 12-2004)    Page **2**

- If you are filing for an **Additional (not automatic) 3-Month Extension,** complete only Part II and check this box . . . . ▶ ☒
  **Note.** Only complete Part II if you have already been granted an automatic 3-month extension on a previously filed Form 8868.
- If you are filing for an **Automatic 3-Month Extension,** complete only Part I (on page 1).

| **Part II** | **Additional (not automatic) 3-Month Extension of Time—Must File Original and One Copy.** |
|---|---|

| **Type or print** | Name of Exempt Organization | **Employer Identification number** |
|---|---|---|
| **File by the extended due date for filing the return See Instructions** | ARMENIAN GENOCIDE MUSEUM AND MEMORIAL, INC. | 20~0344096 |
| | Number, street, and room or suite no. If a P.O. box, see Instructions. | For IRS use only |
| | 122 C STREET, NW | |
| | City, town or post office, state, and ZIP code. For a foreign address, see Instructions. | |
| | WASHINGTON, DC 20001 | |

Check type of return to be filed (File a separate application for each return):

☒ Form 990          ☐ Form 990-T (sec. 401(a) or 408(a) trust)          ☐ Form 5227
☐ Form 990-BL       ☐ Form 990-T (trust other than above)               ☐ Form 6069
☐ Form 990-EZ       ☐ Form 1041-A                                        ☐ Form 8870
☐ Form 990-PF       ☐ Form 4720

**STOP: Do not complete Part II if you were not already granted an automatic 3-month extension on a previously filed Form 8868.**

- The books are in the care of ▶ JOHN WATERS JR.
  Telephone No. ▶  612-359-8991              FAX No. ▶
- If the organization does **not** have an office or place of business in the United States, check this box . . . . . . . . . . . . . . ▶ ☐
- If this is for a **Group Return,** enter the organization's four digit Group Exemption Number (GEN) _____ If this is for the **whole** group, check this box ▶ ☐ . If it is for **part** of the group, check this box ▶ ☐ and attach a list with the names and EINs of all members the extension is for.

4   I request an additional 3-month extension of time until _____NOVEMBER 15_____, 20 05.
5   For calendar year 2004, or other tax year beginning _____, 20___, and ending _____, 20___.
6   If this tax year is for less than 12 months, check reason: ☐ Initial return ☐ Final return ☐ Change in accounting period
7   State in detail why you need the extension  ADDITIONAL TIME IS NEEDED IN ORDER TO GATHER
    THE INFORMATION NECESSARY FOR A COMPLETE AND ACCURATE RETURN. THEREFORE, AN
    EXTENSION OF TIME TO FILE IS RESPECTFULLY REQUESTED.

8a  If this application is for Form 990-BL, 990-PF, 990-T, 4720, or 6069, enter the tentative tax, less any nonrefundable credits. See instructions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ | NONE
 b  If this application is for Form 990-PF, 990-T, 4720, or 6069, enter any refundable credits and estimated tax payments made. Include any prior year overpayment allowed as a credit and any amount paid previously with Form 8868 . . . . . . . . . 081.905 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ | NONE
 c  **Balance Due.** Subtract line 8b from line 8a. Include your payment with this form, or, if required, deposit with FTD coupon or, if required, by using EFTPS (Electronic Federal Tax Payment System). See instructions. $ | NONE

### Signature and Verification

Under penalties of perjury, I declare that I have examined this form, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete, and that I am authorized to prepare this form.

Signature ▶ *Kristen K. Grubb*    Title ▶ CPA    Date ▶ 8/15/05

### Notice to Applicant—To Be Completed by the IRS

☒ We have approved this application. Please attach this form to the organization's return.
☐ We have **not** approved this application. However, we have granted a 10-day grace period from the later of the date shown below or the due date of the organization's return (including any prior extensions). This grace period is considered to be a valid extension of time for elections otherwise required to be made on a timely return. Please attach this form to the organization's return.
☐ We have **not** approved this application. After considering the reasons stated in item 7, we cannot grant your request for an extension of time to file. We are not granting a 10-day grace period.
☐ We cannot consider this application because it was filed after the extended due date of the return for which an extension was requested.
☐ Other _____

_____ By _____
Director                                                              Date

**EXTENSION APPROVED**

**SEP 0 9 2005**

**Alternate Mailing Address —** Enter the address if you want the copy of this application for an additional 3-month extension returned to an address different than the one entered above.

| **Type or print** | Name  KRISTEN GRUBB
DELOITTE TAX LLP |
|---|---|
| | Number and street (Include suite, room, or apt. no.) or a P.O. box number |
| | 120 SOUTH SIXTH STREET, SUITE 400 |
| | City or town, province or state, and country (including postal or ZIP code) |
| | MINNEAPOLIS, MN 55402 |

. FIELD DIRECTOR,
SUB...SSION PROCESSING, OGDEN

Form **8868** (Rev 12-2004)

STF FED9056F 2

## Armenian Genocide Museum of America
### 1140 19th Street, NW, Suite 600, Washington, DC 20036
### Phone: 202-383-9009, Web: www.armeniangenocidemuseum.org

FOR IMMEDIATE RELEASE
March 28, 2008
CONTACT: Rouben Adalian
Phone: (202) 383-9009
E-mail: ani@agmm.org
Web: www.armeniangenocidemuseum.org

### DISTRICT OF COLUMBIA HISTORIC PRESERVATION REVIEW BOARD APPROVES
### ARMENIAN GENOCIDE MUSEUM OF AMERICA PROPOSAL
#### Planners complimented on imaginative use of historic building

In a public hearing convened on March 27, the Historic Preservation Review Board (HPRB), which is charged with responsibility for the protection, enhancement and perpetuation of properties of historical, cultural and aesthetic merit in the District of Columbia, in a unanimous vote gave concept approval for the Armenian Genocide Museum of America (AGMA). The plans call for restoring the exterior of the historical bank building, modifying the interior to accommodate the museum exhibits, and building a new glass structure next to the historic bank, which will be surfaced with native Armenian stone to complement the bank building.

HPRB Chairman Tersh Boasberg complimented AGMA and its team for their care in developing a project, "that's what historic preservation is all about," adding that AGMA's plans for the structure to deal with the Armenian Genocide were "exciting."

Van Krikorian, chairman of the museum building and operations committee, opened by thanking HPRB members for the interest they have taken in the project. He stated that AGMA is excited about the project, and is moving forward with special "sensitivity to the history of the building," and stressed that AGMA wanted to preserve the historical building in which it will be housed, especially considering our experience from the Genocide and Armenians' own sensitivity to preserving important historical structures. He thanked the HPRB and those who had contributed for their involvement and assistance.

Upon hearing principal architect Gary Martinez present in detail the proposed museum and the restoration plans for the former bank building located two blocks from the White House, HPRB also commended AGMA for the team assembled to create what it described as a "highly imaginative project." HPRB described the museum plans as "dramatic" use of the historically-designated building. Details of some sensitive interior issues remain to be worked out as the development progresses, and AGMA indicated its flexibility in working with the HPRB in that process. HPRB Commission members and staff had several questions and constructive comments.

Earlier in the week, the AGMA planning team made presentations to the DC Preservation League and the Advisory Neighborhood Committee's Community Development Committee (ANC-CDC). The DC Preservation League, a community-based organization, strongly endorsed the project and its representative Patrick Burkhardt called the proposal to locate a museum in the historic building a "textbook marriage." The ANC-CDC also endorsed the project.

Following the unanimous vote, Krikorian again thanked the HPRB, the AGMA staff, architects, exhibit planners, and project managers, adding "this is a great day for all of us committed to

**EXHIBIT 17**

opening a first class Armenian Genocide Museum in Washington." HPRB Chairman Boasberg closed the hearing by saying that the Armenian Genocide Museum project will "add to the kind of vitality that historic preservation can provide" in the heart of downtown Washington, with a benefit for the District of Columbia as well as national and international audiences.

The former National Bank of Washington has interior and exterior designations on the National Register of Historic Places.  Only a dozen privately-owned structures in the capital city have such a high level of historic designation.   The bank building is slated for complete restoration and renovation, as well as application as the exhibit space for AGMA.  HPRB concept approval and enlistment of local community support registered two certified milestones in opening the museum on schedule.

HPRB commissioners are appointed by the mayor of the District of Columbia.  The presentation they heard was prepared by the firm of Martinez & Johnson Architecture, whose talents and experience in rehabilitating especially ornate historic buildings was noted.  The architectural team was supported by representatives from Gallagher & Associates contracted by AGMA as its exhibit design firm, the Armenian National Institute serving as the research arm of the museum project, and by the project management firm of Regan Associates.

Martinez & Johnson Architecture and Gallagher & Associates have been working on the development of the museum project since mid-2007.  Regan Associates joined the planning team in February of this year.  Among several museum and other projects led by the firm, most recently Regan Associates completed the Orientation Center, Education Center, and Museum at Mount Vernon Estates, the home of President George Washington.

NR#2008-01







2200 IDS Center
80 South 8th Street
Minneapolis MN 55402-2157
tel 612.977.8400
fax 612.977.8650

February 14, 2008

**Molly M. Borg**
612.977.8726
mborg@briggs.com

**VIA EMAIL AND FAX**

Naoka E. Carey
Kirkpatrick & Lockhart Preston Gates Ellis LLP
State Street Financial Center
One Lincoln Street
Boston, MA 02111-2950

>       Re:    *Waters v. AGM&M*
>              **Court File Number: 07-4212 (JNE/SRN)**

Dear Naoka:

As I indicated yesterday, plaintiffs would stipulate to dismissal with prejudice if the Assembly and AGM&M agree to (1) stipulate that the disputes are not arbitrable and (2) compensate plaintiffs for the attorneys' fees and costs incurred to defend against the arbitration demand.

Regardless of any forthcoming motion to dismiss by defendants, the depositions, which have been noticed and confirmed by counsel, will proceed as scheduled. Plaintiffs expect to depose the Assembly's Rule 30(b)(6) deponent, Mr. Kaloosdian, on Friday, February 22, 2008 at 12:00 p.m. at your Boston offices. Plaintiffs will seek sanctions if Mr. Kaloosdian does not appear.

Please advise if defendants intend to continue with Mr. Vartian's deposition on February 25, 2008 as scheduled. If so, please let me know the time and location of the deposition.

Very truly yours,

Molly M. Borg

cc:    Tim Thornton
       Arnold Rosenfeld (via fax and email)

**EXHIBIT 18**

**Briggs and Morgan, Professional Association**
Minneapolis I St. Paul I www.briggs.com
Member - Lex Mundi, a Global Association of Independent Law Firms

2143816v1