# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE ARMENIAN ASSEMBLY OF AMERICA, INC. and THE ARMENIAN GENOCIDE MUSEUM AND MEMORIAL, INC., <br><br>                 Plaintiffs, <br><br> v. <br><br> GERARD L. CAFESJIAN *et al.*, <br><br>                 Defendants. | Civil File No. 08-255 (CKK) |
| GERARD L. CAFESJIAN, JOHN J. WATERS, JR., THE CAFESJIAN FAMILY FOUNDATION, INC., and THE TOMKAT LIMITED PARTNERSHIP, <br><br>                 Counterclaim Plaintiffs, <br><br> v. <br><br> THE ARMENIAN ASSEMBLY OF AMERICA, INC., THE ARMENIAN GENOCIDE MUSEUM AND MEMORIAL, INC., and HIRAIR HOVNANIAN, <br><br>                 Counterclaim Defendants. | |

## THE ARMENIAN ASSEMBLY OF AMERICA, INC. AND THE ARMENIAN GENOCIDE MUSEUM AND MEMORIAL, INC'S  ANSWER TO COUNTERCLAIM OF GERARD L. CAFESJIAN, JOHN J. WATERS, JR., THE CAFESJIAN FAMILY FOUNDATION, INC., and THE TOMKAT LIMITED PARTNERSHIP

The Armenian Assembly of America, Inc. ("Assembly") and the Armenian Genocide Museum and Memorial, Inc. ("AGM&M") (collectively, "Plaintiffs"), by and through their counsel, reply to the Counterclaim of Gerard L. Cafesjian, John J. Waters, Jr., The Cafesjian Family Foundation, Inc. and the Tomkat Limited Parntership (collectively, "Defendants") (the "Counterclaim") as follows:

## PARTIES

1.      Plaintiffs admit the allegations of paragraph 1 of the Counterclaim.

2.      Plaintiffs admit that CFF is a Florida private foundation.  Plaintiffs are without knowledge or information sufficient to form a belief as to the truth or validity of the remaining allegations set forth in paragraph 2 of the Counterclaim and, therefore, deny the same.

3.      Plaintiffs admit the allegations of paragraph 3 of the Counterclaim.

4.      Plaintiffs admit only that the TomKat Limited Partnership is a South Dakota limited partnership, with a business address of 15 S. 5th Street #900, Minneapolis, MN. Plaintiffs are without knowledge or information sufficient to form a belief as to the truth or validity of the remaining allegations set forth in paragraph 4 of the Counterclaim and, therefore, deny the same.

5.      Plaintiffs admit the allegations of paragraph 5 of the Counterclaim.

6.      Plaintiffs admit the allegations of paragraph 6 of the Counterclaim.

7.      Plaintiffs admit the allegations of paragraph 7 of the Counterclaim.

## JURISDICTION AND VENUE

8.      To the extent the statements set forth in paragraph 8 of the Counterclaim are legal conclusions, no response is required.  Plaintiffs admit that citizenship is diverse and that the amount in controversy exceeds $75,000.

9.      The statements set forth in paragraph 9 of the Counterclaim are legal conclusions, to which no response is required.

## FACTUAL BACKGROUND

10.     Plaintiffs admit that, in October 2003, AGM&M was incorporated as an independent entity pursuant to the District of Columbia Nonprofit Corporation Act.  Plaintiffs deny the remaining allegations in paragraph 10 of the Counterclaim in the form stated.

11.     Plaintiffs respond that the AGM&M Articles of Incorporation speak for themselves, and Plaintiffs deny any allegations set forth in Paragraph 11 of the Counterclaim that are inconsistent with or contrary to the terms of the AGM&M Articles of Incorporation.

12.     Plaintiffs admit the allegations of paragraph 12 of the Counterclaim.

13.     Plaintiffs admit the allegations of paragraph 13 of the Counterclaim.

14.     Plaintiffs deny the allegations set forth in paragraph 14 of the Counterclaims in the form stated.  Plaintiffs further state that, pursuant to the AGM&M By-Laws, each Initial Trustee (as identified in a contemporaneously executed Consent) is entitled to exercise one Trustee vote.  For each additional $5,000,000.00 contributed to the AGM&M, initial or subsequent Donors are entitled to elect additional Trustees, or to confer additional votes to their existing Trustees.  However, under the By-Laws, the election of additional Trustees (or votes for Trustees) is contingent upon each $5,000,000.00 contribution being accepted by the Board of Trustees on behalf of AGM&M by an 80 percent affirmative vote of the Trustees present at a meeting where a quorum is present.  Absent a ratification of a purported contribution, none of the initial Trustees are entitled to have more than one vote.

15.     Plaintiffs deny the allegations set forth in paragraph 15 of the Counterclaims.

16.     Plaintiffs admit that Mr. Waters is the current CFF-appointed Trustee, subject to a conflict of interest and other breaches of fiduciary duty.  Plaintiffs deny the remaining allegations set forth at paragraph 16 of the Counterclaims.

17.     Plaintiffs admit that Mr. Hovnanian is a Trustee of AGM&M and controls one vote, and further admit that Mr. Hovnanian has pledged $5,000,000 to AGM&M and contributed at least $5,000,000 to AGM&M.  Plaintiffs further state that the term "charter documents" is undefined and therefore legally unintelligible and Plaintiffs therefore deny the remaining allegations of paragraph 17 of the Counterclaim in the form stated.  To the extent that the "charter documents" consist of the Articles of Incorporation, By-Laws, and Consent for AGM&M, Plaintiffs state that the charter documents speak for themselves.

18.     Plaintiffs admit that Ms. Mathevosian is a Trustee of AGM&M and controls one vote, and that she made early contributions to AGM&M.  Plaintiffs further state that the term "charter documents" is undefined and therefore legally unintelligible and Plaintiffs therefore deny the remaining allegations of paragraph 18 of the Counterclaim in the form stated.  To the extent that the "charter documents" consist of the Articles of Incorporation, By-Laws, and Consent for AGM&M, Plaintiffs state that the charter documents speak for themselves.

19.     Plaintiffs admit that the Assembly is a Trustee of AGM&M and controls one vote. Plaintiffs further state that the term "charter documents" is undefined and therefore legally unintelligible and Plaintiffs therefore deny the remaining allegations of paragraph 19 of the Counterclaim in the form stated.  To the extent that the "charter documents" consist of the Articles of Incorporation, By-Laws, and Consent for AGM&M, Plaintiffs state that the charter documents speak for themselves.

20.     Plaintiffs admit the allegations of paragraph 20 of the Counterclaim.

21.     Plaintiffs respond that the AGM&M By-Laws speak for themselves, and Plaintiffs deny any allegations set forth in Paragraph 21 of the Counterclaim that are inconsistent with or contrary to the terms of the AGM&M By-Laws.

22.     Plaintiffs respond that the AGM&M By-Laws speak for themselves, and Plaintiffs deny any allegations set forth in Paragraph 22 of the Counterclaim that are inconsistent with or contrary to the terms of the AGM&M By-Laws.

23.     Plaintiffs admit that on or around August 31, 2007, AGM&M announced that phase I contracts had been awarded to two design firms for the construction and development of the museum.   Plaintiffs further admit that, consistent with its obligations under the Articles of Incorporation and By-Laws, the AGM&M has proceeded with the planning, design, and development of a museum "to commemorate, remember, study, and interpret the particular and universal lessons of the Armenian Genocide and related issues."  Plaintiffs deny the remaining allegations set forth in paragraph 23 in the form stated.

24.     Plaintiffs state that in 2000, two Cafesjian-run charitable corporations, CFF and the Vanguard Charitable Endowment Program-Cafesjian Family Foundation Charitable Trust, provided the Assembly with a $3,500,000 grant and a $500,000 loan to be used, along with $3,500,000 previously pledged by Ms. Mathevosian, to purchase the land located at 14th and G Streets, N.W., Washington, D.C., known as the National Bank of Washington Building. Plaintiffs further state that the $500,000 loan was subsequently memorialized via a Promissory Note to CFF issued by the Assembly on March 17, 2000 ("the Note").

25.     Plaintiffs state that in 2003, Mr. Cafesjian and CFF contributed funds to the Assembly, which the Assembly transferred to AGM&M to be used for the purpose of purchasing four parcels of real estate adjacent to the National Bank site and located at 1334-36, 1338, 1340, and 1342 G Street, N.W., Washington, D.C.   Plaintiffs deny that the amount was $12,850,000 and deny the remaining allegations set forth in paragraph 25 of the Counterclaims.

26.     Plaintiffs respond that the Grant Agreement speaks for itself, and Plaintiffs deny any allegations set forth in Paragraph 26 of the Counterclaim that are inconsistent with or contrary to the terms of the Grant Agreement.

27.     Plaintiffs refer to their Answer set forth in response to paragraph 24 of the Counterclaims, and state that the Note speaks for itself.

28.     Plaintiffs deny the allegations set forth in Paragraph 28 of the Counterclaims in the form stated.  Plaintiffs further state that, based on conversations between Assembly leaders and CFF, the Assembly came to the understanding that this Note was forgiven

29.     Plaintiffs admit the allegations of Paragraph 29 of the Counterclaim.

30.     Plaintiffs respond that the Grant Agreement speaks for itself, and Plaintiffs deny any allegations set forth in Paragraph 30 of the Counterclaim that are inconsistent with or contrary to the terms of the Grant Agreement.

31.     Plaintiffs respond that the Grant Agreement speaks for itself, and Plaintiffs deny any allegations set forth in Paragraph 31 of the Counterclaim that are inconsistent with or contrary to the terms of the Grant Agreement.

32.     Plaintiffs deny the allegations of paragraph 32 of the Counterclaim, and further state that, with respect to the rights and obligations set forth therein, the Grant Agreement speaks for itself.

33.     Plaintiffs deny the allegations of paragraph 33 of the Counterclaim in the form stated.  Plaintiffs further state that, to the extent any obligation as described in Paragraph 33 of the Counterclaim existed, the Defendants/Counterclaim Plaintiffs assented to and agreed to the

transfer of the Promissory Note to AGM&M,[1] that Plaintiffs reported such transfer to the Internal Revenue Service on behalf of both CFF and the AGM&M, and that, as President and Acting Secretary-Treasurer of AGM&M prior to December 31, 2005, Cafesjian and Waters were charged with addressing any obligation to issue a replacement promissory note, to the extent such obligation existed.

34.     Plaintiffs admit the allegations of paragraph 34 of the Counterclaim.

35.     Plaintiffs respond that the Transfer Agreement speaks for itself, and Plaintiffs deny any allegations set forth in Paragraph 35 of the Counterclaim that are inconsistent with or contrary to the terms of the Transfer Agreement.

36.     Plaintiffs admit that AGM&M utilized funds donated by the Assembly to acquire the four parcels of real estate referred to in the Grant Agreement as the "Second Grant Property" including funds donated by Cafesjian and CFF to the Assembly for that purpose.  Plaintiffs further state that AGM&M acquired three of the four parcels from TomKat LP, and a fourth parcel from a third-party.  Plaintiffs deny the remaining allegations in paragraph 36 of the Counterclaims in the form stated.

37.     Plaintiffs respond that the Transfer Agreement speaks for itself, and Plaintiffs deny any allegations set forth in Paragraph 37 of the Counterclaim that are inconsistent with or contrary to the terms of the Transfer Agreement.  Plaintiffs admit that, consistent with the terms set forth in the Transfer Agreement, the Assembly contributed its rights, title, and interest in the museum project, as well as all cash pledges, real property, tangible property, intangible property,

---

[1] At paragraph 38 of the Counterclaims, Counterclaim Plaintiffs concede that, as part of the transfer of assets to AGM&M, the Assembly assigned to AGM&M its obligation to issue a promissory note that was due December 31, 2005.

and other assets acquired for the purposes of constructing and developing the museum, to AGM&M.

38.    Plaintiffs respond that the Transfer Agreement speaks for itself, and Plaintiffs deny any allegations set forth in Paragraph 38 of the Counterclaim that are inconsistent with or contrary to the terms of the Transfer Agreement.[2]

39.    Plaintiffs deny the allegations of paragraph 39 of the Counterclaim in the form stated.  Plaintiffs further state that, as President/Chairman and Acting Secretary-Treasurer, respectively, of AGM&M prior to December 31, 2005, Cafesjian and Waters were charged with addressing any obligation to issue a replacement promissory note, to the extent such obligation existed.

40.    Plaintiffs respond that the Transfer Agreement and the Grant Agreement speak for themselves, and Plaintiffs deny any allegations set forth in Paragraph 40 of the Counterclaim that are inconsistent with or contrary to the terms of the Transfer Agreement and the Grant Agreement.

41.    Plaintiffs respond that the Transfer Agreement speaks for itself, and Plaintiffs deny any allegations set forth in Paragraph 41 of the Counterclaim that are inconsistent with or contrary to the terms of the Transfer Agreement.   See also footnote 2 at Plaintiffs' Answer to paragraph 38 of the Counterclaims.

42.    Plaintiffs deny the allegations of paragraph 42 of the Counterclaim.

---

[2] Plaintiffs state that in a prior proceeding in the United States District Court for the District of Minnesota (Docket No. 07-4212), Defendants asserted that they "were not parties to the Transfer Agreement" and that the "have no rights or obligations under the Transfer Agreement" in an attempt to evade their obligation to arbitrate these disputes.  As is apparent from Defendants' Counterclaims, Defendants now assert that they have rights under the Transfer Agreement. Defendants earlier denial of their rights and obligations under the Transfer Agreement constitutes a breach of contract, and voids any rights that Defendants seek to assert under the Transfer Agreement.

43.     Plaintiffs admit that, on May 7, 2007, AGM&M's Board of Trustees organized and appointed a Building and Operations Committee to oversee the development of the museum and memorial, but deny all remaining allegations in paragraph 43 of the Counterclaim.

44.     Plaintiffs deny the allegations in paragraph 44 of the Counterclaim.  Plaintiffs further state that CFF's representative participated in the meeting at which the planning and design of the museum and memorial, among other things, was authorized, but voluntarily elected to leave the meeting prior to its conclusion.

45.     Plaintiffs deny the allegations of paragraph 45 of the Counterclaim.

46.     Plaintiffs respond that the July 18, 2007 letter speaks for itself, and Plaintiffs deny any allegations set forth in Paragraph 46 of the Counterclaim that are inconsistent with or contrary to the terms of the July 18, 2007 letter.  Plaintiffs further state that the July 18, 2007 letter was signed by Mr. Hovnanian in his capacity as Chairman of the Assembly, and Ms. Carolyn Mugar (not named as a Counterclaim Defendant in this action) in her capacity as President of the Assembly.  Plaintiffs deny that the statements set forth in the July 18, 2007 letter are false or defamatory.

47.     Plaintiffs respond that the October 4, 2007 AGM&M press release speaks for itself, and Plaintiffs deny any allegations set forth in Paragraph 47 of the Counterclaim that are inconsistent with or contrary to the terms of the October 4, 2007 AGM&M press release.  Plaintiffs deny that the statements set forth in the October 4, 2007 AGM&M press release are false or defamatory.

48.     Plaintiffs respond that the October 31, 2007 AGM&M press release speaks for itself, and Plaintiffs deny any allegations set forth in Paragraph 48 of the Counterclaim that are inconsistent with or contrary to the terms of the October 31, 2007 AGM&M press release.

Plaintiffs deny that the statements set forth in the October 31, 2007 AGM&M press release are false or defamatory.

49.    Plaintiffs respond that the April 11, 2008 AGM&M press release speaks for itself, and Plaintiffs deny any allegations set forth in Paragraph 49 of the Counterclaim that are inconsistent with or contrary to the terms of the April 11, 2008 AGM&M press release. Plaintiffs deny that the statements set forth in the April 11, 2008 AGM&M press release are false or defamatory.

## COUNT I

## BREACH OF CONTRACT

### (The Assembly)

50.    With respect to paragraph 50, Plaintiffs repeat and incorporate by reference each of their prior responses to paragraphs 1-49, as though fully set forth herein.

51.    The statements set forth in paragraph 51 of the Counterclaim are legal conclusions to which no response is required.  To the extent a further response is required, Plaintiffs state that the Grant Agreement speaks for itself.

52.    The statements set forth in paragraph 52 of the Counterclaim are legal conclusions to which no response is required.  To the extent a response is required, Plaintiffs deny those statements and call upon Counterclaim Plaintiffs to prove same.

53.    The statements set forth in paragraph 53 of the Counterclaim are legal conclusions to which no response is required.  To the extent a response is required, Plaintiffs deny those statements and call upon Counterclaim Plaintiffs to prove same.

54.     The statements set forth in paragraph 54 of the Counterclaim are legal conclusions to which no response is required.  To the extent a response is required, Plaintiffs deny those statements and call upon Counterclaim Plaintiffs to prove same.

## COUNT II

## BREACH OF CONTRACT

## (AGM & M)

55.     With respect to paragraph 55, Plaintiffs repeat and incorporate by reference each of their prior responses to paragraphs 1-54, as though fully set forth herein.

56.     The statements set forth in paragraph 56 of the Counterclaim are legal conclusions to which no response is required.  To the extent a further response is required, Plaintiffs state that the Transfer Agreement speaks for itself.

57.     The statements set forth in paragraph 57 of the Counterclaim are legal conclusions to which no response is required. To the extent a further response is required, Plaintiffs state that the Grant Agreement speaks for itself.

58.     The statements set forth in paragraph 58 of the Counterclaim are legal conclusions to which no response is required.  To the extent a response is required, Plaintiffs deny those statements and call upon Counterclaim Plaintiffs to prove same.

59.     The statements set forth in paragraph 59 of the Counterclaim are legal conclusions to which no response is required.  To the extent a response is required, Plaintiffs deny those statements and call upon Counterclaim Plaintiffs to prove same.

60.     The statements set forth in paragraph 60 of the Counterclaim are legal conclusions to which no response is required.  To the extent a response is required, Plaintiffs deny those statements and call upon Counterclaim Plaintiffs to prove same.

## COUNT III

## BREACH OF IMPLIED COVENANT OF GOOD FAIR AND FAIR DEALING

## (The Assembly)

61.    With respect to paragraph 61, Plaintiffs repeat and incorporate by reference each of their prior responses to paragraphs 1-60, as though fully set forth herein.

62.    The statements set forth in paragraph 62 of the Counterclaim are legal conclusions to which no response is required.  To the extent a response is required, Plaintiffs admit those statements.

63.    The statements set forth in paragraph 63 of the Counterclaim are legal conclusions to which no response is required.  To the extent a response is required, Plaintiffs deny those statements and call upon Counterclaim Plaintiffs to prove same.

64.    The statements set forth in paragraph 64 of the Counterclaim are legal conclusions to which no response is required.  To the extent a response is required, Plaintiffs deny those statements and call upon Counterclaim Plaintiffs to prove same.

65.    The statements set forth in paragraph 65 of the Counterclaim are legal conclusions to which no response is required.  To the extent a response is required, Plaintiffs deny those statements and call upon Counterclaim Plaintiffs to prove same.

## COUNT IV

## BREACH OF IMPLIED COVENANT OF GOOD FAIR AND FAIR DEALING

## (AGM&M)

66.    With respect to paragraph 66, Plaintiffs repeat and incorporate by reference each of their prior responses to paragraphs 1-65, as though fully set forth herein.

67.     The statements set forth in paragraph 67 of the Counterclaim are legal conclusions to which no response is required.  To the extent a response is required, Plaintiffs admit those statements.

68.     The statements set forth in paragraph 68 of the Counterclaim are legal conclusions to which no response is required.  To the extent a response is required, Plaintiffs state that the Transfer Agreement speaks for itself.

69.     The statements set forth in paragraph 69 of the Counterclaim are legal conclusions to which no response is required.  To the extent a further response is required, Plaintiffs state that the Grant Agreement speaks for itself, and that, to the extent all or portions of the Grant Agreement constitute a valid and binding contract, such contract includes an obligation of good faith and fair dealing.

70.     The statements set forth in paragraph 70 of the Counterclaim are legal conclusions to which no response is required.  To the extent a further response is required, Plaintiffs state that the Transfer Agreement speaks for itself.

71.     The statements set forth in paragraph 71 of the Counterclaim are legal conclusions to which no response is required.  To the extent a response is required, Plaintiffs deny those statements and call upon Counterclaim Plaintiffs to prove same.

72.     The statements set forth in paragraph 72 of the Counterclaim are legal conclusions to which no response is required.  To the extent a response is required, Plaintiffs deny those statements and call upon Counterclaim Plaintiffs to prove same.

73.     The statements set forth in paragraph 73 of the Counterclaim are legal conclusions to which no response is required.  To the extent a response is required, Plaintiffs deny those statements and call upon Counterclaim Plaintiffs to prove same.

## COUNT V

## THIRD PARTY BENEFICIARY

## (AGM&M)

74.    With respect to paragraph 74, Plaintiffs repeat and incorporate by reference each of their prior responses to paragraphs 1-73, as though fully set forth herein.

75.    Plaintiffs respond that the Transfer Agreement speaks for itself, and Plaintiffs deny any allegations set forth in Paragraph 75 of the Counterclaim that are inconsistent with or contrary to the terms of the Transfer Agreement.

76.    The statements set forth in paragraph 76 of the Counterclaim are legal conclusions to which no response is required.  To the extent a response is required, Plaintiffs deny those statements and call upon Counterclaim Plaintiffs to prove same.

77.    The statements set forth in paragraph 77 of the Counterclaim are legal conclusions to which no response is required.  To the extent a response is required, Plaintiffs deny those statements and call upon Counterclaim Plaintiffs to prove same.

## COUNT VI

## UNJUST ENRICHMENT

## (The Assembly and AGM&M)

78.    With respect to paragraph 78, Plaintiffs repeat and incorporate by reference each of their prior responses to paragraphs 1-77, as though fully set forth herein.

79.    Plaintiffs deny the allegations set forth in Paragraph 78 in the form stated. Plaintiffs further state that, to the extent Counterclaim Plaintiffs have donated money to either the Assembly or AGM&M, such donations were understood to be made solely for charitable purposes and pursuant to express contracts.

80.     The statements set forth in paragraph 80 of the Counterclaim are legal conclusions to which no response is required.  To the extent a response is required, Plaintiffs deny those statements and call upon Counterclaim Plaintiffs to prove same.

81.     The statements set forth in paragraph 81 of the Counterclaim are legal conclusions and requests for relief to which no response is required.  To the extent a response is required, Plaintiffs deny those statements, deny that Counterclaim Plaintiffs are entitled to the relief requested, and call upon Counterclaim Plaintiffs to prove same.

## COUNT VII

## IMPOSITION OF CONSTRUCTIVE TRUST

## (AGM&M)

82.     With respect to paragraph 82, Plaintiffs repeat and incorporate by reference each of their prior responses to paragraphs 1-81, as though fully set forth herein.

83.     The statements set forth in paragraph 83 of the Counterclaim are legal conclusions to which no response is required.  To the extent a response is required, Plaintiffs deny those statements.

## COUNT VIII

## DEFAMATION

## (Mr. Hovnanian and the Assembly)

84.     With respect to paragraph 84, Plaintiffs repeat and incorporate by reference each of their prior responses to paragraphs 1-83, as though fully set forth herein.

85.     Plaintiffs respond that the July 18, 2007 letter speaks for itself, and Plaintiffs deny any allegations set forth in Paragraph 85 of the Counterclaim that are inconsistent with or contrary to the terms of the July 18, 2007 letter.  Plaintiffs further state that the letter was signed

by Mr. Hovnanian in his capacity as Chairman of the Assembly, and Ms. Carolyn Mugar (not named as a Counterclaim Defendant in this action) in her capacity as President of the Assembly. Plaintiffs deny that the statements made in the July 18, 2007 letter are false.

86.     Plaintiffs state that Mr. Hovnanian and Ms. Mugar, on behalf of the Assembly, wrote the letter, but any third parties who published the facts from the letter did so on their own. The Plaintiffs therefore deny the allegations set forth in paragraph 86 of the Counterclaims.

87.     The statements set forth in paragraph 87 of the Counterclaim are legal conclusions to which no response is required.  To the extent a response is required, Plaintiffs deny that the statements are false or defamatory.

88.     To the extent the statements set forth in paragraph 88 of the Counterclaim are legal conclusions, no response is required.  To the extent a response is required, Plaintiffs deny those statements and call upon Counterclaim Plaintiffs to prove same.

89.     The statements set forth in paragraph 89 of the Counterclaim are legal conclusions to which no response is required.  To the extent a response is required, Plaintiffs deny those statements and call upon Counterclaim Plaintiffs to prove same.

90.     The statements set forth in paragraph 90 of the Counterclaim are legal conclusions to which no response is required.  To the extent a response is required, Plaintiffs are without knowledge or information sufficient to form a belief as to the truth or validity of the allegations set forth in paragraph 90 of the Counterclaim and, therefore, deny the same.

91.     The statements set forth in paragraph 91 of the Counterclaim are legal conclusions to which no response is required.  To the extent a response is required, Plaintiffs deny those statements.

## COUNT IX

## DEFAMATION

## (AGM&M)

92.     With respect to paragraph 92, Plaintiffs repeat and incorporate by reference each of their prior responses to paragraphs 1-91, as though fully set forth herein.

93.     Plaintiffs respond that the October 4, 2007 AGM&M press release in its entirety speaks for itself, and Plaintiffs deny any allegations set forth in Paragraph 47 of the Counterclaim that are inconsistent with or contrary to the terms of the October 4, 2007 AGM&M press release.  Plaintiffs deny that any statements set forth in the October 4, 2007 AGM&M press release are false.

94.     Plaintiffs respond that the October 31, 2007 AGM&M press release in its entirety speaks for itself, and Plaintiffs deny any allegations set forth in Paragraph 94 of the Counterclaim that are inconsistent with or contrary to the terms of the October 31, 2007 AGM&M press release.  Plaintiffs also deny that any statements set forth in the October 31, 2007 AGM&M press release are false.

95.     Plaintiffs respond that the April 11, 2008 AGM&M press release in its entirety speaks for itself, and Plaintiffs deny any allegations set forth in Paragraph 95 of the Counterclaim that are inconsistent with or contrary to the terms of the April 11, 2008 AGM&M press release.  Plaintiffs also deny that any statements set forth in the April 11, 2007 AGM&M press release are false.

96.     Plaintiffs admit that AGM&M issued the press releases attached at Exhibits 6, 7, and 8.  Plaintiffs further state that any third parties who published the facts from the press release, including without limitation Cafesjian and Waters, did so on their own.  Plaintiffs therefore deny the remaining allegations at Paragraph 96 of the Counterclaims in the form stated.

97.     The statements set forth in paragraph 97 of the Counterclaim are legal conclusions to which no response is required.  To the extent a response is required, Plaintiffs deny those statements.

98.     The statements set forth in paragraph 98 of the Counterclaim are legal conclusions to which no response is required.  To the extent a response is required, Plaintiffs deny those statements.

99.     The statements set forth in paragraph 99 of the Counterclaim are legal conclusions to which no response is required.  To the extent a response is required, Plaintiffs deny those statements.

100.     The statements set forth in paragraph 100 of the Counterclaim are legal conclusions to which no response is required.  To the extent a response is required, Plaintiffs are without knowledge or information sufficient to form a belief as to the truth or validity of the allegations set forth in paragraph 90 of the Counterclaim and, therefore, deny the same.

101.     The statements set forth in paragraph 101 of the Counterclaim are legal conclusions to which no response is required.  To the extent a response is required, Plaintiffs deny those statements.

102.     The statements following paragraph 101 of the Counterclaim are requests for relief to which no response is required.  To the extent a response is required, Plaintiffs deny that Defendants are entitled to the relief requested, and request that the Court dismiss the claims and award the Plaintiffs fees and costs incurred in having to defend against such claims.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

The Counterclaim fails to state a claim upon which relief can be granted.

## Second Affirmative Defense

Defendants' claims for relief are barred, in whole or in part, by the applicable statute of limitations.

## Third Affirmative Defense

Defendants' claims are barred, in whole or in part, under the doctrines of estoppel, laches and/or waiver.

## Fourth Affirmative Defense

Defendants' claims are barred, in whole or in part, because the Defendants have not suffered any damages as a result of Plaintiffs' acts or omissions.

## Fifth Affirmative Defense

The Defendants' claims are barred, in whole or in part, because they have failed to mitigate their damages, if any.

## Sixth Affirmative Defense

Defendants' claims are barred, in whole or in part, by the doctrine of unclean hands and by reason of the Defendants' own bad faith acts and claims.

## Seventh Affirmative Defense

Defendants' alleged damages are speculative, or otherwise unavailable as a matter of law.

## EighthAffirmative Defense

Plaintiffs' actions were reasonable, legitimate, and undertaken in good faith.

## Ninth Affirmative Defense

Some or all of Defendants' claims are barred, in whole or in part, by the doctrine of accord and satisfaction.

### Tenth Affirmative Defense

Defendants' claims are barred, in whole or in part, because Defendants would be unjustly enriched if allowed to recover on the Counterclaim.

### Eleventh Affirmative Defense

Defendants' claims are barred, in whole or in part, because Defendants' breaches of contracts excused Plaintiffs' performance.

### Twelfth Affirmative Defense

Defendants' claims are barred, in whole or in part, by the doctrine of ratification.

### Thirteenth Affirmative Defense

Defendants claims are barred, in whole or in part, on the grounds of privilege or immunity.

### Fourteenth Affirmative Defense

Defendants claims are barred, in whole or in part, because Defendants consented to or authorized the complained of conduct.

### Fifteenth Affirmative Defense

Plaintiffs intend to rely upon such other affirmative defenses as may become available or apparent during the course of discovery and thus reserve the right to amend this Answer to assert such defenses.

### JURY DEMAND

Plaintiffs, The Armenian Assembly of America, Inc. and The Armenian Genocide Museum and Memorial, Inc., respectfully requests a trial by jury of the issues raised in the Counterclaim.

Respectfully submitted,

Dated:  August 6**,** 2008

**K&L GATES LLP**

By:      _/s/ David T. Case_____
David T. Case (D.C. Bar No. 384062)
Bruce H. Nielson (D.C. Bar No. 414440)
1601 K Street, N.W.
Washington, D.C. 20006
Tel:  (202) 778-9000
Fax:  (202) 778-9100

AND

___/s/_____
Arnold R. Rosenfeld (MA Bar No. 428860)
Naoka E. Carey (MA Bar No. 655312)
One Lincoln Street
Boston, MA 02111
Tel: (617) 261-3155
Fax: (617) 261-3175

**COUNSEL FOR PLAINTIFFS**